**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| Jane Doe and John Doe, | |
| Plaintiffs, | No. 25-cv-04235 |
| v. | Judge Matthew F. Kennelly |
| Nienhouse Group, Inc., Nick Lindsey, Catherine Nienhouse-Lindsey and Robert Nienhouse, | ~~Magistrate Judge M. David Weisman~~ |
| Defendants. | |

**STIPULATION REGARDING (A) THE FORENSIC INSPECTION OF
DEFENDANT NICK LINDSEY'S ELECTRONIC DEVICES AND (B) THE
<u>PRODUCTION OF ELECTRONICALLY STORED INFORMATION</u>**

Pursuant to Fed. R. Civ. P. 26(f), Plaintiffs Jane Doe and John Doe and Defendants Nienhouse Group, Inc., Nick Lindsey, Catherine Nienhouse-Lindsey and Robert Nienhouse (collectively the "Parties"), have stipulated and agreed to the following with respect to the forensic inspection of Defendant Nick Lindsey's electronic devices ("Forensic Inspection") and the Parties' production of electronically stored information ("ESI") in this civil matter:

**I. PROVISIONS REGARDING THE FORENSIC INSPECTION**

1. Plaintiff Jane Doe alleges in her Complaint at Law that Defendant Nick Lindsey saved forwarded, screen captured or otherwise obtained and/or distributed certain Images and Videos from Plaintiff Jane Doe's iPhone when it was in his possession on January 27, 2025, from 3:00 p.m. to 5:00 p.m. CST. For purposes of this inspection protocol, the aforementioned allegations, date and time period is referred to herein as the "Time Period".

2. The Parties agree to the Forensic Inspection of Defendant Nick Lindsey's electronic devices solely to determine whether, when, and to what extent Defendant Lindsey allegedly saved,

<span style="color:red">**Exhibit A**</span>

forwarded, screen-captured, or otherwise obtained and/or distributed certain Images and Videos from Plaintiff Jane Doe's iPhone during the Time Period or thereafter.

3.      The proposed Forensic Inspection is limited to the following devices ~~owned~~ used by Defendant Nick Lindsey:

a. Apple iPhone (model number MT8U2LL/A, serial number G0NZKEZ7KPFP, current operating system 17.6.1);

b. Android phone (model number Pixel 8 Pro, serial number 355522573566332, current operating system 15); and

c. Samsung phone (model number mpi1.0 (2021, serial number 1C161FDEE0098B, current operating system AP41.240823.009).~~; andany computers (model number XXX, serial number XXX and current operating system XXX), tablets (model number XXX, serial number XXX and current operating system XXX), MacBooks (model number XXX, serial number XXX and current operating system XXX) and portable flash drives and backup storage hard drives (model numbers XXX, serial numbers XXX and current operating systems XXX).[1]~~

4.      By June 20, 2025, Defendant Nick Lindsey shall identify any other devices that he used from the Time Period to the present for the purposes of inclusion to the Forensic Inspection. If applicable, Defendant Nick Lindsey shall identify the device, model number, serial number, and/or current operating system for each device.

~~4.~~5.      On or before June 12~~0~~, 2025, counsel for Defendant Lindsey will cause the Devices identified in Paragraph 3 to be delivered to Innovative Driven (the "Vendor"), an individual or

---

[1] Hereafter the devices in Paragraphs 3 and 4 shall be referred to as the "Devices".

entity qualified by relevant knowledge, skill, experience, training, or education, consistent with standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), to conduct a forensic extraction and analysis of electronic data.

6.      If additional device(s) is/are identified pursuant to paragraph 4 above, then, on or before June 24, 2025, counsel for Defendant Lindsey will cause the additional device(s) to be delivered to the Vendor, to conduct a forensic extraction and analysis of electronic data.

~~5.~~7.     The Vendor will be asked to create copies of Defendant Lindsey's Devices identified in Paragraph~~s~~ 3 and 4 to perform a forensic data extraction. Defendant Lindsey's counsel will provide the Vendor with the passwords necessary to facilitate the extraction.

~~6.~~8.     The Vendor will be asked to perform a Full File System Extraction (FFSE) using Cellebrite forensic software, to examine data relevant to determining whether, when, and to what extent Defendant Lindsey allegedly saved, forwarded, screen-captured, or otherwise obtained and/or distributed certain Images and Videos from Plaintiff Jane Doe's iPhone.

~~7.~~9.     All software and hardware tools used by the Vendor will be asked to conform to industry-standard, peer-reviewed forensic methodologies and authentication standards as required under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

~~8.~~10.    Plaintiff Jane Doe's expert will be asked to assist the Vendor, as necessary, by identifying the specific Images and Videos from Jane Doe's iPhone 13, serial number CR93FNRYPX, operating system iOS version 18.2.1 that were allegedly accessed by Defendant Lindsey during the Time Period.

~~9.~~11.    The Vendor will be asked to determine if mobile or computer-based backups exist on Defendant Lindsey's Devices. If such backups exist, the Vendor will be asked to examine them to determine whether, when, and to what extent Defendant Lindsey allegedly saved, forwarded,

screen-captured, or otherwise obtained and/or distributed certain Images and Videos from Plaintiff Jane Doe's iPhone.

10.12.  The Vendor's analysis will be asked to focus solely on data from January 27, 2025, to the present.

11.13.  The Vendor will be asked to create a backup copy of all extracted data from Defendant Lindsey's Devices for redundancy and disaster recovery purposes.

12.14.  Plaintiff's counsel represents that, prior to the filing of the Complaint at Law that initiated this lawsuit, Jane Doe and her counsel retained Crowe LLP for the purpose of copying the contents of Plaintiff Jane Doe's iPhone for the purposes of discovering whether, when, and to what extent Defendant Lindsey allegedly saved, forwarded, screen captured, or otherwise obtained and/or distributed certain Image and Videos from Plaintiff's Jane Doe's iPhone during the Time Period.

13.15.  On the same day the Vendor's analysis is shared with counsel for the Parties, counsel for Plaintiffs will share forensic data obtained from Plaintiff Jane Doe's iPhone relevant to the Time Period.

14.16.  Specifically, the Vendor will be asked to examine Defendant Lindsey's applications (e.g., Meta Messenger, Instagram, Signal, etc.), photographic/video-based applications and photographic/video-based storage repositories (related to the Devices identified in Paragraphs 3 and 4) and text messages from identified telephone numbers to determine whether, when, and to what extent Defendant Lindsey allegedly saved, forwarded, screen-captured, or otherwise obtained and/or distributed Images and Videos from Plaintiff Jane Doe's iPhone.

15.17.  The Vendor will be asked to examine Defendant Lindsey's emails from nicklindsey507@gmail.com, to determine whether, when, and to what extent Defendant Lindsey

allegedly saved, forwarded, screen captured or otherwise obtained and/or distributed certain Images and Videos from Plaintiff Jane Doe's iPhone.

16.18.  Once the Vendor completes its analysis of the data extracted from Defendant Lindsey's Devices and his emails identified in Paragraph 1517, the Vendor's findings will be shared with all Parties within one (1) business day.

17.19.  The Parties agree this Stipulation regarding the forensic inspection is solely for discovery purposes. Issues of admissibility and evidentiary use will be handled separately under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and as ordered by the Court.

18.20.  Upon conclusion of this litigation, the Vendor will be asked, in writing, to return, delete, or destroy the extracted data and all backup copies.

19.21.  Data obtained through this forensic examination will be subject to the Confidentiality Order in this litigation (Dkt. 33), including the Acknowledgement and Agreement to be Bound attached thereto.

20.22.  The costs of data extraction and analysis of the Devices shall be divided equally among four parties/groups as follows:

> (1) Plaintiffs Jane Doe and John Doe;
>
> (2) Defendant Nienhouse Group, Inc.;
>
> (3) Defendant Nick Lindsey; and
>
> (4) Defendants Robert Nienhouse and Catherine Nienhouse-Lindsey.

18.     Any privileged documents inadvertently disclosed to the Vendor or any party shall not constitute a waiver of any applicable privilege.

19.     If concerns arise that privileged documents have been inadvertently located through the Vendor's analysis, Defendant Lindsey's counsel shall promptly inform all other Parties and

take immediate steps to remove or redact such privileged documents from the dataset shared with the Parties by the Vendor.

20.     If an inadvertent disclosure issue cannot be resolved by mutual agreement, the party seeking relief may move the Court for relief for good cause shown.

21.     The parties are continuing to meet and confer over the exact scope of Defendants' discovery objections, responses, collections and productions, including custodial devices, and all parties reserve their respective rights.

## II.     ESI STIPULATION

This ESI Stipulation is being entered into to facilitate the collection, processing, production and exchange of documents and information in the Matter by the Parties in the form of ESI.

1.      The Parties expressly recognize and agree that this ESI Stipulation is solely limited to this action and shall not govern any other future litigation between the Parties in this Court or any other forum.

2.      To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs.

3.      The terms of this ESI Stipulation should be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure and any orders by the Court.

4.      This ESI Stipulation may be changed by order of the Court or mutual agreement of the Parties, and is without prejudice to the rights of any Party to move for relief from any of its provisions, or to seek or agree to different or additional procedures or protections for any particular ESI materials or information.

5.      If the Parties are unable to resolve the issue by mutual agreement after such conference, the Party seeking relief may move the Court for relief for good cause shown.

## A.  Defined Terms, Procedures and Timing

6.     The term "**ESI**" includes, but is not limited to, emails and attachments, voicemail, instant messaging and other electronic communications, word processing documents, pdf based documents, text files, hard drives, spreadsheets, graphics, audio and video files, databases, calendars, telephone logs, transaction logs, phone text messages, Internet usage files, offline storage or information stored on removable media, information contained on laptops or other portable devices and network access information and backup materials, Native Files and the corresponding Metadata which is ordinarily maintained.

7.     As the term is used herein, ESI is not to be deemed "inaccessible" based solely on its source or type of storage media. Inaccessibility is based on the burden and expense of recovering and producing the ESI and the relative relevance and need for the data. However, the Parties shall not be required to preserve or search information in data sources that are not reasonably accessible, including, but not limited to, back-up tapes, disaster recovery systems, offline archives, and data sources that are not used for normal business operations and/or require unreasonable expense or burden to search and produce.

8.     The Parties shall make a reasonable inquiry to ascertain whether they possess or control discoverable information in the form of telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages. To the extent a Party reasonably believes discoverable information exists in telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages, the Party shall preserve the discoverable information.

9.     The Parties shall mutually exchange Key Word Searches by June 14, 2025, and exchange objections to any potentially objectionable Key Word Searches by June 21, 2025.

10.     The Parties agree that the Custodians for Key Word Searches are the Parties in this matter and that the time period of Key Word Searches will be from January 27, 2025 to the present.

11.     The Parities will work in good faith to resolve any issues before seeking court relief. The Parties will begin to search for Key Words by June 30, 2025 and complete their searches by July 14, 2025. The Parties will produce Key Word search results by July 21, 2025.

12.     The term "**Native File(s)**" means ESI in the electronic format of the application in which such ESI was created, viewed, stored and/or modified. Native Files are a subset of ESI.

13.     The term "**Metadata**" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, sent, received or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

14.     The term "**Static Image(s)**" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard litigation support software. The most common forms of Static Images used in litigation are ESI provided in either Tagged Image File Format (TIFF, or .TIF files) or Portable Document Format (PDF).

15.     The term "**OCR text**" means text that is generated by converting Static Images into searchable text format.

16.     The term "**Producing Party**" shall mean any Party to this action or any third-party, including its counsel, retained experts, directors, officers, employees, or agents, who produces any Discovery Material during discovery for this action.

17.     The term "**Receiving Party**" shall mean any Party to this action, including its counsel, retained experts, directors, officers, employees, or agents, who receives any Discovery Material from a Producing Party during this action.

18.     The term "**Discovery Material**" shall mean any document, material, item, testimony, or thing filed with or presented to the Matter's judge, jury, witnesses and/or experts or produced, served, exchanged, or generated during the discovery process.

19.     The term "**Load File(s)**" shall mean a standard Concordance DAT delimited load file containing production fields and metadata and an Opticon OPT formatted image[2] cross-reference files linking the image to the database file.

### B.  Production Formats

20.     ESI shall be produced in the form specified herein. No Producing Party may reformat, scrub or alter the ESI to intentionally downgrade the usability of the data.

21.     With the exception of the documents identified in Paragraph 21, the Parties shall produce all ESI in single-page TIFFs, in Group IV black and white format, with Load Files for all documents.

22.     The Parties shall produce a DAT file for each ESI document which include the following fields to the extent feasible, i.e., the data exists and is accessible:

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 1 | BEGDOC | The beginning bates number of this document | ABC00000001 |

---

[2] For clarity, an opticon (OPT or .opt) file marries the image (in this case the .tiff) to the metadata in the data file to ensure that, when data is loaded into a database, the correct metadata (to the extent it exists) goes to the correct image of the relevant document.

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 2 | ENDDOC | The last bates number of this document | ABC00000010 |
| 4 | BEGATTACH | The beginning bates number of the document family | ABC00000001 |
| 5 | ENDATTACH | The last bates number of the entire document family | ABC00000027 |
| 6 | CUSTODIAN | Custodian to which the data is associated with. | John Doe |
| 8 | RECORDTYPE | Type of electronic record: | Email, Attachments, eDoc |
| 9 | FROM | Author of the e-mail message | Mary.Smith@hotmail.com |
| 10 | TO | Main recipient(s) of the e- mail message, by email address. | JohnDoe@gmail.com |
| 11 | CC | Recipient(s) of "Carbon Copies of the e-mail message. | Michael123@yahoo.com |
| 12 | BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | helpdesk@omnivere.com |
| 13 | SUBJECT | Subject of the e-mail message. | Fw: Urgent |
| 14 | DATESENT | Date when the email was sent. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 15 | TIMESENT | Time when the email was sent. The time is formatted in US format: hh:mm:ss | 11:20:30 |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 16 | FILEEXT | File extension of native file. | .msg, .pst, .xls |
| 17 | AUTHOR | Author field from metadata of a native file. | Msmith |
| 18 | DATECREATED | Date when the file was created. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 19 | FILESIZE | Size of native file, in bytes | 2546683 |
| 20 | PAGECOUNT | Number of pages | 3 |
| 21 | FILENAME | Original filename of native file. Contains subject of e-mail message for e-mail records. | Real estate holdings.xlsx |
| 22 | MD5HASH | Unique identifier, similar to a fingerprint, extracted from all files. | D564668821C34200FF3E32C9BFDCCC8 0 |
| 23 | TEXTPATH | Path to the extracted text for the document, for mapping | Text\EFXAA00000001.txt |
| 24 | NATIVELINK | Path to the produced native file version (if applicable), for mapping | Natives\001\ABC00001.xls |

23.     The Parties shall provide extracted text for all files that originated in electronic form. When no extracted text is available for a file that originated in electronic format, OCR text shall be provided unless the production of OCR text for such document is not technologically feasible. Extracted or OCR text shall be provided with one text file per document. OCR text shall be provided for all documents that originated in hard copy, i.e., hard copy that was scanned for purposes of the production.

24.     The Parties shall provide Native Files for PPT, XLS, Audio, Video, and non-standard format documents. For any document produced as a Native File, the Parties shall also produce a TIFF placeholder with a sequential Bates number that corresponds with the Native File.

25.     All documents must be endorsed with sequential Bates numbers on the lower right-hand corner of all images.

26.     The Parties will make reasonable efforts to de-duplicate ESI documents globally prior to production.

27.     The Parties may produce ESI via FTP transmission, removable USB flash drives, CD/DVD, or other media as otherwise agreed, and shall identify the Bates range contained in the respective production.

28.     If a document is redacted, the Producing Party shall produce OCR text of the un-redacted portions of the document. No text from the redacted portion of the document will appear in the text file. Failure to withhold OCR text from a redacted portion of a document by a Producing Party shall not be deemed a waiver of any privilege associated with that document.

### C. No Waiver of Privilege Applicable Privileges

29.     Nothing herein shall be interpreted or deemed to waive any privilege recognized by law, including attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable, or shall be construed to imply that any documents produced under the terms of this ESI Stipulation are properly discoverable, relevant, or admissible in this Matter or in any other litigation or arbitration.

30.     Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of documents that a Producing Party believes in good faith are subject to a claim of attorney-client privilege or work-product immunity is not a waiver in the action or in any federal or state proceeding.

31.     Unless previously waived, the inadvertent disclosure of any privileged information shall not be deemed a waiver of that privilege or immunity as to any other documents, testimony, or evidence.

32.     If a Receiving Party finds information that the Producing Party produces or provides discovery that is subject to a claim of attorney-client privilege or work-product immunity, the Receiving Party shall return to the Producing Party all copies of such document and shall return or destroy all excerpts thereof within three (3) business days of finding the information.

33.     If the Producing Party becomes aware that it may have provided information subject to the attorney-client privilege, it may give written notice to the Receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the Producing Party.

34.     Upon receiving written notice, the Receiving Party shall return to the Producing Party all copies of such document and shall return or destroy all excerpts thereof within three (3) business days of receiving such written notice, provided that, if the attorney-client privileged or work product immunity is contested, a copy may be maintained by the Receiving Party and provided to the judge or magistrate judge in the Matter for an in camera review for determination whether the designation is proper.

35.     The Receiving Party will not review the contested discovery until the judge or magistrate judge renders his or her ruling, and will return or destroy the contested discovery if the judge or magistrate judge rules that it is protected by the attorney-client privilege, work product doctrine or any other privilege.

SO STIPULATED TO BY:

PLAINTIFFS                                          DEFENDANTS

/s/ James C. Vlahakis                               /s/ Jim W. Scales
James Vlahakis                                      Jim W. Scales
Counsel for Plaintiffs                              Counsel for Defendant Nick Lindsey

                                                    /s/ Jonathon J. Ibarra
                                                    Jonathon J. Ibarra
                                                    Counsel for Nienhouse Group, Inc.

                                                    /s/ Patrick J. Rubbery
                                                    Patrick J. Rubbery
                                                    Counsel for Catherine Nienhouse-Lindsey,
                                                    and Robert Nienhouse and Nienhouse Group,
                                                    Inc.

_____
Judge Matthew F. Kennelly


Dated: _____