**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Jane Doe and John Doe, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 25-cv-04235 |
| | ) | |
| Nienhouse Group, Inc., d/b/a Trac | ) | Judge Mathew F. Kennelly |
| Solutions, CAM Systems and Nick | ) | |
| Lindsey, | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR PRIVACY VIOLATIONS**[1]

NOW COMES the Plaintiffs Jane Doe and John Doe, by and through their attorney, James C. Vlahakis of Vlahakis Law Group, LLC, and submit the following First Amended Complaint For Privacy Violations:

## I. **Parties, Jurisdiction and Venue**

1.     Plaintiffs Jane Doe and John Doe are citizens of the State of Illinois, are domiciled within this Judicial District. John Doe is Jane Doe's boyfriend.

2.     Nienhouse Group Inc. ("Nienhouse Group") is an Illinois corporation that does business as CAM Systems and TRAC Solutions.

3.     Plaintiff Jane Doe is a customer service representative and small claims specialist for Nienhouse Group as has been employed there since June 1, 2025.

4.     Defendant Nick Lindsey ("Defendant Lindsey") is a citizen of the State of Illinois, is domiciled within this Judicial District, and performs IT services as an employee of Nienhouse Group.

5.     Pursuant to 15 U.S.C. § 6851(b)(3)(B) and 740 ILCS 190/20(a)(1), Plaintiffs seek to pursue this action using pseudonyms (and redactions of Plaintiff Jane Doe's named from certain emails) to maintain confidentiality of their identity.

1

6.     As detailed below, in performing work for Nienhouse Group, on January 27, 2025, Defendant Lindsey asked Jane Doe if he could use her personal iPhone to test a work-based application.

7.     Jane Doe entrusted Defendant Lindsey with her iPhone and provided him with her passcode, for the sole purpose of allowing Defendant Lindsey to use her iPhone to test a work-based application.

8.     In a gross violation of Jane Doe's trust, Defendant Lindsey accessed and downloaded private images and videos of Jane Doe engaging in sexual relations with Plaintiff John Doe (hereafter the "Private Images and Videos" or "Images and Videos").

9.     Catherine Nienhouse-Lindsey is a citizen of the State of Illinois, is domiciled within this Judicial District, is married to Defendant Lindsey, and is part of the Human Resources Department for Nienhouse Group.

10.    Robert Nienhouse (at times "Nienhouse") is a citizen of the State of Illinois, is domiciled within this District and is the CEO of Nienhouse Group. Nienhouse is also the father of Catherine Nienhouse-Lindsey and the father-in-law of Defendant Lindsey.

11.    This Court has subject matter jurisdiction of this cause pursuant to 28 U.S.C. § 1331 because this civil action arises under the federal law, specifically 18 U.S.C. § 1030, the Computer Fraud & Abuse Act ("CFAA"), and 15 U.S.C. § 6851.

12.    As explained below, Defendant Lindsey violated the CFAA by exceeding the scope of his permissible use of Jane Doe's iPhone and by using Jane Doe's password to download the Images and Videos from her iCloud account.

13.    15 U.S.C. § 6851 amended the Violence Against Women Reauthorization Act of 2022 to provide a private right of action to persons who are victims of the nonconsensual dissemination of sexual images and videos.

2

14.     In any civil action filed pursuant to 15 U.S.C. § 6851, "an individual may recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred[.]"15 U.S.C. § 6851(b)(3)(i).

15.     In any civil action filed pursuant to 15 U.S.C. § 6851, "the court may, in addition to any other relief available at law, order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction." 15 U.S.C. § 6851(b)(3)(ii). 15 U.S.C. § 6851(b)(3)(B) provides that "[i]n ordering relief under subparagraph (A), the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym."

16.     This Court has personal jurisdiction over each Individual Defendants, all of whom reside within this Judicial District.

17.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 as Plaintiff and all of the individual Defendants reside in this District, a substantial part of the events giving rise to the claims alleged herein occurred in this District, and Defendant Nienhouse Group conduct substantial business within this District.

18.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal claims asserted in this action that they form part of the same case or controversy.

19.     Additionally, the Court has personal jurisdiction over Julia Ross, who is an attorney who was hired by Defendant Nienhouse to perform an internal investigation into whether Defendant Lindsey improperly accessed Jane Doe's iPhone.

20.     It appears that Ms. Ross was just a pawn in Nienhouse's scheme to prevent Ms. Ross and Plaintiff Jane Doe from demonstrating that Defendant Lindsey violated Jane Doe's privacy rights.

21.     As part of Ms. Ross's investigation, she asked Jane Doe's counsel whether she would allow a third-party to make a forensic image of her iPhone to help to determine if Defendant Lindsey viewed and/or downloaded any of the Images and Videos while he was in possession of her iPhone between 3:00 p.m. and 5 p.m. on January 27, 2025.

22.     A true and accurate image of Ms. Ross' February 14, 2025, email is below:

On Feb 14, 2025, at 11:22 AM, Ross, Julia <jross@mcdonaldhopkins.com> wrote:


James,

I have interviewed both your client and Nick Lindsey as part of my investigation into your client's allegations. Mr. Lindsey has denied all allegations against him. My next step in the investigation is to forensically image your client's phone. You previously inquired about forensic imaging Mr. Lindsey's phone. However, forensically imaging your clients phone would show whether or not certain apps/metadata were accessed during the relevant timeframe as well as whether any videos/photos/communications were sent from her device to any other device. Please let me know as soon as possible if your client will agree to a forensic imaging of her phone (which can be done remotely).

Thank you,
Julia Ross
Attorney
she | her | hers

23.     According to Ms. Ross, while she instructed Defendant Lindsey to preserve his electronic devices by issuing a "litigation hold" to Defendant Lindsey, Ms. Ross *did not* ask Defendant Lindsey to consent to a forensic imaging of his electronic devices.

24.     Plaintiff Jane Doe agreed to have her iPhone forensically imaged and reviewed, where the review would be limited to the time-frame that her iPhone was in Defendant Lindsey's possession.

25.     On February 19, 2025, Ms. Ross provided additional information to Ms. Doe's counsel regarding the proposed imaging and *limited* review of the resulting data.

26.     A true and accurate image of Ms. Ross's February 19, 2025, email is depicted below, where Ms. Ross's provided confirmation as to the limited scope of the proposed forensic investigation in red font:



On Feb 19, 2025, at 8:24 AM, Ross, Julia <jross@mcdonaldhopkins.com> wrote:

Hi James,

I have a call scheduled tomorrow morning with the vendor to confirm the contents of this email and to emphasize the sensitivity of this matter. Subject to my call with the vendor, please see my responses below in red.

1.  The vendor will only access [client's] Hidden folder for the time period of 1/27/25 between the hours of 3:00 p.m. and 4:55 p.m. Correct (unless the vendor needs to round to 5:00pm for collection purposes – I will confirm).
2.  The vendor will determine whether any images or videos from within my client's Hidden folder were forwarded from her iPhone to any other computer, device or email. Correct.
3.  Only you and the vendor will have access to the images and videos found in my client's Hidden Folder. Correct.
4.  No Hidden images and/or Hidden videos will be provided to my client's employer, Nick, Robert and/or Catherine or any third party. Correct – only the information contained in my investigation report will be shared with the parties.
5.  The vendor will *not* retain any images or videos from the Hidden folder *other than* the images and videos which were viewed *when* the phone was in Nick's possession. Correct.
6.  The vendor will not share the images or videos outside of the individual or team that is working on the project. Correct.

It is possible that the vendor will need to access any additional parts of the iPhone in order to collect metadata. I plan on clarifying this on my call tomorrow.

Please let me know if you/your client agrees to the forensic imaging and I will follow up with you tomorrow with next steps/further information.

Thanks,

**Julia Ross**
Attorney
**she | her | hers**

27.     On February 21, 2025, Ms. Ross emailed Plaintiff Jane Doe's counsel to indicate that she was "waiting for approval from Mr. Nienhouse to proceed with the imaging."

28.     A true and accurate image of Ms. Ross's February 21, 2025, email is depicted on the following page:



**From:** Ross, Julia <jross@mcdonaldhopkins.com>
**Sent:** Friday, February 21, 2025 3:30 PM
**To:** James Vlahakis <jamesv@vlahakislaw.com>
**Subject:** RE: Forensic Imaging of ███ Phone

Hi James,

The only update at this time is that it sounds like the vendor would need to do a Full File System Extraction (i.e. a full image of your client's phone) to obtain the metadata/information associated with the hidden photos folder. However, they can limit their analysis/report just to the information relevant to the hidden photos folder. My understanding is that they image the entire phone but can/will limit their analysis to just the apps/folders and timeframe to which they are directed.

I am waiting for approval from Mr. Nienhouse to proceed with the imaging. Once I receive that approval, the vendor will send your client a package that contains the materials/system necessary for remote imaging. I believe your client will also be given video conference information to connect with the examiner to properly hook-up the phone. That is all that your client will need to do – the examiner will image it remotely and notify your client when she can disconnect her phone.

The examiner will then analyze the image based upon the parameters we discussed and will provide me with a report/summary of her findings.

Please let me know if you have any questions or concerns. Otherwise, have a nice weekend and we can touch base next week.

Thanks,

**Julia Ross**
Attorney
she | her | hers

T: 216.348.5711          600 Superior Avenue
jross@mcdonaldhopkins.com   Suite 2100
www.mcdonaldhopkins.com     Cleveland, OH 44114

29.     Plaintiff Jane Doe's counsel sent numerous emails to Ms. Ross seeking confirmation as to *when* the proposed forensic imaging and examination was to take place.

30.     On February 26, 2025, Ms. Ross ultimately wrote in an email that Nienhouse *declined* to hire a third-party company to pursue a forensic imaging and review of Plaintiff Jane Doe's iPhone.

31.  A true and accurate image of Ms. Ross's February 26, 2025, email is depicted below:



From: Ross, Julia <jross@mcdonaldhopkins.com>
Sent: Wednesday, February 26, 2025 3:43 PM
To: James Vlahakis <jamesv@vlahakislaw.com>
Subject: RE: Forensic Imaging of ▮▮▮▮ Phone

Hi James,

I heard moments ago that Mr. Nienhouse has chosen not to pursue forensic imaging. As such, I will proceed with drafting my report to finish out the investigation.

Thanks,

Julia Ross
Attorney
she | her | hers

T: 216.348.5711                     600 Superior Avenue
jross@mcdonaldhopkins.com           Suite 2100
www.mcdonaldhopkins.com             Cleveland,OH44114

McDonald Hopkins
A business advisory and advocacy law firm®

32.  Ultimately, Nienhouse decided to save between $7,000 and $10,000 in costs where Ms. Ross had written on March 26, 2025, that "I was told that the imaging and forensic analysis would cost between roughly $7,000-$10,000."

33.  As discussed below, Nienhouse, individually or in conjunction with Defendant Lindsey and/or Defendant's Lindsey's wife (who is employed as part Nienhouse Group's human resources department), declined to hire a forensic examiner as part of a plan to cause important forensic evidence to be overwritten by the passage of time.

34.  As an IT specialist, Defendant Lindsey would have advised Nienhouse (his father-in-law) that it would be advantageous for Nienhouse and Defendant Nienhouse Group to *drag out* his ultimate denial of a forensic examination under the assumption that important forensic evidence could be destroyed or overwritten with the passage of time.

35.     At the time that Nienhouse and Lindsey's wife Catherine were plotting with Defendant Lindsey, Dthey knew that Plaintiff Jane Doe had reported Defendant Lindsey's conduct to local law enforcement.

36.     As detailed below, Nienhouse and Defendant Nienhouse Group's actions ultimately caused Ms. Ross to conclude that she *could not* obtain sufficient information to determine whether Defendant Lindsey violated Plaintiff Jane Doe's privacy rights.

37.     In an email dated March 7, 2025, Ms. Ross wrote that "[b]ased on witness interviews and review of the Company's internal policies, I am unable to determine whether Lindsey improperly accessed [Jane Doe]'s personal cell phone, nor am I able to reach a conclusion as to whether Lindsey violated Company policies and procedures."

38.     A true and accurate image of Ms. Ross's March 7, 2025, email is below:



## II. <u>Background Fact Involving Nienhouse Group</u>

39.     Nienhouse Group does business as CAM Systems, where the website for CAM Systems describes itself as a "Court Appointed Monitoring Systems".

40.     The below image is a true and accurate screen capture of CAM System's website, where CAM Systems describes role in being "the trusted provider of alcohol and GPS monitoring systems" to government agencies:



See https://www.cam-sys.com/ (screenshot on 4/14/25, last viewed on 7/29/25).

41.     The website for CAM Systems promotes the following types of "Services":



See https://www.cam-sys.com/ (screenshot on 4/14/25, last viewed on 7/29/25).

42.     Nienhouse Group is listed on a federal government website, www.gsaadvantage.gov, where the General Services Administration's website describes itself as "the federal government's premier online shopping superstore giving you access

to millions of commercial products and services available through pre-negotiated Schedule contracts."[2]

43.     The image on the following page is a true and accurate screen capture of how the GSA describes Nienhouse Group's business:

**Nienhouse Group Inc. d/b/a TRAC Solutions and CAM Systems Company History**

Through two of its wholly owned divisions, CAM Systems and TRAC Solutions, each a d/b/a of the company, Nienhouse Group Inc. is one of the nation's largest full-service electronic monitoring companies.

The customers of Nienhouse Group Inc. are government agencies serving the criminal justice function. Nienhouse Group Inc. leases monitoring devices that either report the location of monitored persons or monitor the alcohol consumption of defendants court-ordered to abstain from alcohol. Providing the devices and the web portal access to the collected information in near real-time are the key elements of the services provided, but also maintaining and inventorying the devices, consultation on how to use the software, and providing services such as enrollment/removal, scheduling, zone set-up, and reporting are key elements we provide.

Nienhouse Group Inc. offers advanced technology; experienced onsite and field support; highly trained operations/customer service, accounting, and collections teams; and proven processes, methods, and reporting protocols. An Oracle Enterprise Resource Planning system, numerous data web portals, and proprietary technology protocols with comprehensive reporting and recording of all transactions and communications allow its teams to provide seamless support. Nienhouse Group Inc. uses leading-edge monitoring, operations, and accounting technologies to provide innovative and collaborative solutions to its electronic monitoring programs.

The CAM Systems Division of Nienhouse Group Inc. has the distinction as the only full-service monitoring company that is a distributor of all of the major monitoring technologies in the United States. No other company can provide this array of technological solutions. Under its TRAC Solutions Division, Nienhouse Group Inc. provides these services and in addition manufactures its own monitoring devices and develops software support systems. Nienhouse Group Inc. is recognized as a national leader in providing monitoring, support, and services in both offender pay and agency pay programs for adult and juvenile populations.

Nienhouse Group Inc. is committed to changing lives - the lives of the monitored participants, their families and friends, and the greater community they live in.

44.     According to the General Services Administration ("GSA"), "[t]hrough two of its wholly owned divisions, CAM Systems and TRAC Solutions, each a d/b/a of the

---

[2] https://www.gsaadvantage.gov/advantage/ws/information/page?keyName=SNL_AISLE (last viewed on 3/28/25).

company, Nienhouse Group Inc. is one of the nation's largest full-service electronic monitoring companies."[3]

45.     According to the GSA, Nienhouse Group's clients "are government agencies serving the criminal justice function." *Id.*

46.     CAM Systems' website claims "[w]e take pride in our commitment to excellence and our dedication to serving our communities" and Nienhouse Group claims to be "is committed to changing lives - the lives of the monitored participants, their families and friends, and the greater community they live in".

47.     In reality, both entities are blinded by nepotism where its CEO Robert Nienhouse has placed his son-in-law Nick Lindsey's well-being *above* the privacy of Jane Doe, a long-serving employee, where Mr. Nienhouse essentially gave his son-in-law a get-out-of-jail-free card after Jane Doe discovered that Mr. Lindsey had accessed and downloaded private Images and Videos of Jane Doe having sexual relations with her boyfriend Plaintiff John Doe.

48.     To make matters worse, Mr. Lindsey's wife, Catherine Nienhouse-Lindsey, is the head of Human Resources for Nienhouse Group, and it appears that Mr. Lindsey's wife plotted with her husband and her father to conduct a superficial investigation into Jane Doe's allegations.

49.     As described above and below, Robert Nienhouse purposefully dragged out and refused to conduct a forensic examination of Jane Doe's iPhone – with the intention of allowing activity logs to be overwritten – where they knew that the activity logs demonstrated that Mr. Lindsey had downloaded Jane Doe's Images and Videos from her iCloud account *without her consent* – in violation of Illinois and federal law.

---

[3] https://www.gsaadvantage.gov/ref_text/47QSWA21D008K/0WTCHP.3SJPGE_47QSWA21D008K_NIENHOUSECONTRACTPRICELISTAWARDINFORMATIONFINAL.PDF (last viewed and downloaded on 7/29/25).

50.     Defendant Lindsey and Robert Nienhouse conspired to cover up Mr. Lindsey's unlawful conduct, where they purposefully did not examine Defendant Lindsey's work-related and personal electronic devices in order to hide evidence of Mr. Lindsey's unlawful conduct – where Defendants Lindsey and Robert Nienhouse knew that Defendant Lindsey had no legitimate business purpose to ask to use Jane Doe's personal iPhone to test a workplace application – where Defendants Lindsey used an iPhone and MacBook that were purchased by Nienhouse Group. Given the existence of a work-issued iPhone and MacBook, there was no legitimate reason for Defendants Lindsey to ask to use Jane Doe's iPhone.

51.     Despite having access to a work-issued iPhone and MacBook, in an answer to an interrogatory, Defendant Lindsey has admitted to previously asking to use Jane Doe's iPhone to test a work-based application.

52.     Because Defendant Lindsey knew to look for intimate Images and Videos on Jane Doe's iPhone on January 27, 2025, it is plausible to assert that on prior occasions Defendant Lindsey viewed intimate Images and Videos on Jane Doe's iPhone without her consent.

53.     Further, data obtained from a forensic review of Jane Doe's iPhone demonstrates that Defendant Lindsey used Apple, Inc.'s AirDrop feature to forward one or more of the Images and Videos to himself using a means of interstate commerce after Mr. Lindsey inputted nicklindsey507@gmail.com into her iPhone at approximately 4:20 p.m. on January 27, 2025.

54.     As of the filing of this First Amended Complaint, Defendants Lindsey and Nienhouse Group have failed to turn over the raw data that was extracted from Defendant Lindsey's iPhone which has been identified in Paragraph 3 of Dkt. 43. Further, as of the filing of this First Amended Complaint, Defendants Lindsey and

Nienhouse Group have failed to cause Defendant Lindsey's MacBook to be forensically imaged and examined.

55.     Additionally, as documented below in Paragraphs XXX, when Defendant Lindsey misused Jane Doe's iPhone by viewing the Does' intimate Images and Videos, Defendant Lindsey caused numerous intimate Images and Videos to be downloaded from Jane Doe's iCloud account without her consent.

56.     By neglecting to conduct a forensic examination of Mr. Lindsey's electronic devices and his Gmail account, Robert Nienhouse, Catherine Nienhouse-Lindsey and Nick Lindsey conspired to *coverup* Mr. Lindsey's unlawful actions – where his actions violated civil and criminal statutes.

### III.    Defendant Lindsey Downloaded and Viewed the Private Sexually Explicit Images and Videos of Plaintiffs without Their Consent

57.     On January 27, 2025, at approximately 3:00 p.m., Defendant Lindsey asked Plaintiff Jane Doe if he could use her personal iPhone to test an application that was being utilized by Defendant Nienhouse Group.

58.     When Defendant Lindsey asked Plaintiff Jane Doe if he could use her personal iPhone to test an application that was being utilized by Defendant Nienhouse Group, Defendant Lindsey did not inform her that he would be searching her iPhone to review or download any of her personal photographs or videos.

59.     Plaintiff Jane Doe, *believing* that Defendant Lindsey had a legitimate business reason to use her iPhone to test an application that was being utilized by Defendant Nienhouse Group, provided Defendant Lindsey with her iPhone and her password for the sole purpose of having him test the workplace application.

60.     In providing Defendant Lindsey with her iPhone and password, Jane Doe did not provide Defendant Lindsey with permission to review and download any of her

personal content and did not provide Defendant Lindsey with permission to review or download any of her photographs or videos.

61.     After Defendant Lindsey utilized Plaintiff Jane Doe's password to access her iPhone, he told her that he was taking her iPhone into a conference room because it provided a better Wi-Fi connection.

62.     After Defendant Lindsey took Jane Doe's iPhone to the conference room, Plaintiff Jane Doe learned that Defendant Lindsey was reviewing her Images and Videos because her earbuds were still connected to her iPhone and could hear moaning sounds playing from her earbuds that she recognized as belonging to John Doe and herself.

63.     In particular, Plaintiff Jane Doe heard one video being repeatedly played by Defendant Lindsey where she recognized John Doe's voice.

64.     Horrified by what she was hearing, Plaintiff Jane Doe was too nervous to directly confront Defendant Lindsey.

65.     Instead, Plaintiff Jane Doe used her work-issued computer to send a series messages to her cousin and mother from a tablet-based device in the hope that Defendant Lindsey would stop accessing her Images and Videos after he saw her communicating in real time with third-parties. Further, Plaintiff Jane Doe also used her work computer's G-chat function to ask other employees if they knew where Defendant Lindsey had gone with her iPhone.

66.     A true and accurate screen capture of Jane Doe's G-chat messages is depicted below:



67.    Defendant Lindsey returned Jane Doe's iPhone to her at around 5:00 p.m.

68.    When Defendant Lindsey reappeared and returned Plaintiff Jane Doe's iPhone to her at around 5:00 p.m., he was unable to make eye-contact with her and his hands were shaking.

69.    Immediately after Defendant Lindsey returned Plaintiff Jane Doe's iPhone to her, she observed that her Hidden folder was opened, where she had previously closed out of all applications and folders on her iPhone before handing her iPhone to Jane Doe's iPhone to Defendant Lindsey.

70.    Plaintiff Jane Doe made a video screen recording to document the fact that her Hidden folder was opened when Defendant Lindsey had returned her iPhone to her.

71.    On January 28, 2025, Jane Doe emailed Robert Nienhouse and Catherine Nienhouse-Lindsey to complain about Defendant Lindsey's improper access of her Images and Videos on January 27, 2025.

72. A true and accurate image of this email is depicted on the following pages:

---

**Oak Brook- Incident Report of Privacy Violation 1/27/25**
1 message

<span style="background:red">▮▮▮▮▮</span>@cam-sys.net>                                                                Tue, Jan 28, 2025 at 9:11 AM
To: Bob Nienhouse <bn@tracmonitor.com>, David Torres <dt@tracmonitor.com>, Catherine Nienhouse <cn@tracmonitor.com>

Dear HR Department,

I am writing to formally report an incident that occurred on January 27, 2025, at the Oak Brook (700 Commerce Dr. Suite 500 Oak Brook, IL 60523) office involving Nick Lindsey. This incident has caused me great distress, I am still in shock, and I believe it is essential to document it, to ensure that appropriate action is taken.

At approximately 3:00 PM, Nick arrived at the Oak Brook office to assist me with packing two shipments for OSPS. During this time, he mentioned he needed to run tests on some watches and asked to use my phone to confirm if the device would sync. I provided my phone and shared my passcode (220055) so he could proceed with the tests. Initially, I had no concerns, as he was conducting the analysis in my presence.

A few minutes later, Nick informed me that he had to move to the conference room to continue testing due to the internet failing to connect from where we were. Since the conference room is close to my office, I did not see an issue with this. While he worked, I continued my tasks, listening to a podcast using my Beats Airpods.

However, I began to notice unusual sounds through my AirPods, which I initially dismissed as internet connection issues. Then, to my horror, I recognized moaning noises, followed by hearing my partner's voice in a personal video that was stored in the "hidden" folder of my phone's gallery (which you need a passcode for and he had it). It became evident and I realized that my headphones were intersecting and connecting to my phone which is how I was able to hear my personal content being replayed multiple times from my phone. It became very clear that Nick was going through my private photos and videos without my consent.

At this point, I was shaking and unsure of what to do. I tried to remain calm and sent several messages to my cousin from my laptop, hoping that frequent notifications would prompt Nick to stop going through my phone. By 4:40 PM, Nick was nowhere to be found, and I still had not received my phone back, so I sent Nick a message via Gmail chat:
"Hey, it's 4:40 PM. Did you want to send the shipment out? I need to leave at 5."

When he did not respond, I sent a group G-chat to my colleagues, stating:
"I am not sure where Nick is, but he was testing the watches in the office and don't know where he went to pack up the shipments. Tried chatting him. It's 4:50 PM. Still not back. Also do not have my phone as he was using it to test, so I do not believe I will be going to UPS to drop off the shipments for OSPS."

2/3/25, 4:23 PM                                   CAM Systems Mail - Oak Brook- Incident Report of Privacy Violation 1/27/25

At 4:55 PM, Nick returned to my office, visibly shaken (his hands were shaking and he would not look me in the eye at all), and handed me my phone. He avoided any explanation and simply stated that I could leave if I wanted. I immediately left the office, feeling violated and distraught. I did not confront him about what I had just witnessed due to the fact that I was still in shock about the whole situation and wanted to document it as soon as possible before forgetting any details.

After checking my phone later, I discovered further violations of my privacy. Nick not only accessed my private photos and videos but also went through my private messages and social media accounts. I noticed that certain unread messages had been opened and viewed, even though I had not accessed them myself. Also, when I received my phone back, I noticed that the photos app on my phone was opened, and it was directly opened to the Hidden folder. That proved that he was going through my private/personal content- because all my apps were closed and cleared before I handed him the phone to install an app for work. I am disgusted with his unprofessionalism and feel violated on so many levels.

As I drove home, I called my cousin to recount the incident and ask for advice because she is in the HR field herself, and I did not know how to approach this conversation to you, due to the fact that Nick's wife is our company's Director of Administration- which makes it even more uncomfortable for me. I was extremely overwhelmed with emotions that I accidentally hit a pole on my way home. I stopped driving to compose myself, but I could not stop crying.

This violation of my privacy has left me deeply shaken. I trusted Nick with my phone for the sole purpose of downloading an application to test the devices, not to go through my personal content, including private photos/videos, messages, and social media apps. Now I have no way of knowing if he saved or shared any of my personal content and it leaves me feeling extremely uneasy and very upset. As a professional colleague and close member to the CEO, this is no way to act/behave and represent the company. It is unethical and extremely disappointing.

Furthermore, I feel unsafe being around or interacting with Nick. I fear that reporting this incident will not be taken seriously, as his wife is in HR, and I am worried about potential bias. However, I must emphasize how deeply this incident has impacted me, both professionally and personally.

I kindly request a thorough investigation into this matter, including a review of any relevant camera footage. I also hope that appropriate steps will be taken to ensure my safety and protect my privacy moving forward.

Thank you for your time and understanding.

Sincerely,





https://mail.google.com/mail/u/0/?ik=9492b90914&view=pt&search=all&permthid=thread-a:r-7611291383614315667&simpl=msg-a:r-3278906247739235017                    2/3

73.    Catherine Nienhouse-Lindsey never responded in writing or orally to Plaintiff Jane Doe's January 28, 2025, email.

74.     Robert Nienhouse did not respond to Jane Doe's January 28, 2025, email until Friday, January 31, 2025.

75.     On January 31, 2025, Nienhouse  urged Plaintiff Jane Doe to conduct a Zoom interview with attorney Ross "sometime before Tuesday, February 4th."

76.     A true and accurate copy of Robert Nienhouse's January 31, 2025, email is depicted below:



**Your email of 1.28.25**
5 messages

**Bob Nienhouse** <rn@tracmonitor.com>                                    Fri, Jan 31, 2025 at 10:37 AM
To: ███████████████@cam-sys.net>
Cc: jross@mcdonaldhopkins.com

Hi ███████

As you know, we are in receipt of your January 28, 2025 email containing the allegations that you made regarding Nick Lindsey. In accordance with the Company's complaint processes and procedures, we have retained a third party to investigate your allegations. To that end, I have cced our investigator (Julia Ross) so that you can schedule a Zoom interview. We ask that you complete the interview sometime before Tuesday, February 4th. In the interim, as you discussed with David, you will not be required to work with or around Nick.

Best,
Bob



**Robert Nienhouse**
CEO

📱 (630) 348-7600   💻 tracmonitor.com
📍 200 S. Wacker Drive Suite 3100, Chicago, IL 60606

It's time for monitoring to be
**stigma-free**
BREATH • TRANSDERMAL • GPS

77.     On Friday, January 31, 2025, attorney Ross attempted to rush Plaintiff Jane Doe into an interview by asking Jane Doe whether she was available to be interviewed on "Monday morning", where Ms. Ross stated that she would need "roughly an hour for our discussion."

78.     A true and accurate copy of Ms. Ross's January 31, 2025, email is depicted

below:



79.     At 8:11 a.m. on Monday, February 3, 2025, attorney Ross sent a follow

up email to Plaintiff Jan Doe, inquiring whether Ms. Doe was available to be interviewed

on February 3rd or 4th.

80.     Plaintiff Jane Doe wrote back to attorney Ross at 8:40 a.m. on February 3,

2025, and stated as follows:

Good morning, all,

I was out of the office last Thursday and Friday. I want to reiterate that I do not feel
comfortable speaking with an attorney without my own legal representation. I kindly
request a few business days to allow my attorney to join the Zoom call.

Additionally, I want to emphasize that the incident in question occurred on January 27th.

Thank you for your understanding.

81. Plaintiff Jane Doe retained counsel and participated in a Zoom based interview with attorney Ross and her counsel on February 12, 2025.

## IV. Defendants' and Attorney Ross Conducted a Shoddy Internal Investigation to Try to Cover Up Defendant Lindsey's Misconduct

82. Defendant Lindsey, along with Defendant Nienhouse Group, Catherine Nienhouse-Lindsey and Robert Nienhouse acted in concert to protect their reputations by attempting to cause evidence of Lindsey's misconduct to be overwritten by activity logs that would normally stay on Jane Doe's iPhone for no more than thirty (30) days.

83. Defendant Lindsey, along with Defendant Nienhouse Group, Catherine Nienhouse-Lindsey and Robert Nienhouse attempted to cause evidence of Defendant Lindsey's misconduct to be overwritten by activity logs that would normally stay on Plaintiff Jane Doe's iPhone for no more than thirty (30) days by causing and/or inducing attorney Julia Ross to inform Plaintiff that her iPhone was evidence, and that attorney Ross had engaged an independent/third party forensic company to copy and examine Plaintiff Jane Doe's iPhone for proof that Defendant Lindsey had accessed Plaintiff's Private Images and Videos from her iCloud account without her consent and by forwarding and/or otherwise disseminating Plaintiff's Private Images and Videos.

84. Based upon emails composed and transmitted by Ms. Ross, Ms. Ross informed Plaintiff Jane Doe that the independent/third party forensic company would limit its review of the data on Plaintiff's iPhone to the approximate two-hour time period on January 27, 2025, where Plaintiff's iPhone was in Defendant Linsdey's possession.

85. Plaintiff Jane Doe agreed to allow an independent/third party forensic company to copy and examine Plaintiff's iPhone to locate proof that Defendant Lindsey

had accessed Plaintiff's Private Images and Videos from her iCloud account without her consent and to determine whether forwarded and/or otherwise disseminating Plaintiff's Private Images and Videos without her consent.

86.     Based upon emails composed and transmitted by Ms. Ross, Plaintiff did not *immediately* hire an independent/third party forensic company to copy and examine Plaintiff Jane Doe's iPhone for proof that Defendant Lindsey had accessed her Private Images and Videos from her iCloud account without her consent.

87.     Upon information and belief, it was *never* the intention of Defendant Lindsey, Defendant Nienhouse Group, Catherine Nienhouse-Lindsey or Robert Nienhouse to cause Plaintiff Jane Doe's iPhone to be examined by independent/third party forensic company to determine whether Defendant Lindsey had accessed Plaintiff's Private Images and Videos from her iCloud account without her consent and by forwarding and/or otherwise disseminating Plaintiff's Private Images and Videos

88.     Defendant Nienhouse Group, Defendant Nick Lindsey, Catherine Nienhouse-Lindsey and Robert Nienhouse have tried to cause evidence of Defendant Lindsey's misconduct to be overwritten to protect themselves from civil liability.

89.     Defendant Nienhouse Group, Defendant Nick Lindsey, Catherine Nienhouse-Lindsey and Robert Nienhouse acted in concert to cause evidence of Lindsey's misconduct to be overwritten to protect Lindsey from criminal liability.

90.     Defendant Nienhouse Group, Defendant Nick Lindsey, Catherine Nienhouse-Lindsey and Robert Nienhouse acted in concert to cause evidence of Lindsey's misconduct to be overwritten in a vain effort to protect their reputations.

91.     Defendant Nienhouse Group, Defendant Nick Lindsey, Catherine Nienhouse-Lindsey and Robert Nienhouse have acted in concert to cause evidence of

Defendant Lindsey's misconduct to be overwritten in a desperate and misguided effort to protect the reputation of Nienhouse Group.

92.   Upon information and belief, attorney Ross did not interview Defendant Nick Lindsey until after she interviewed Plaintiff Jane Doe.

93.   Upon information and belief, Nienhouse instructed attorney Ross to not inquire into whether any security cameras existed to help document Defendant Nick Lindsey whereabouts when he had Plaintiff Jane Doe's iPhone in his possession on January 27, 2025.

94.   Further, as detailed above and further below, Nienhouse's conduct caused Ms. Ross to conclude that she could not obtain sufficient information to determine whether Defendant Lindsey violated her privacy rights where she wrote in an email dated March 7, 2025, that "[b]ased on witness interviews and review of the Company's internal policies, I am unable to determine whether Lindsey improperly accessed [Jane Doe]'s personal cell phone, nor am I able to reach a conclusion as to whether Lindsey violated Company policies and procedures."

95.   After Plaintiff alerted Nienhouse Group, Inc., Robert Nienhouse and Catherine Nienhouse-Lindsey of Defendant Lindsey's misconduct, Plaintiff suffered retaliatory treatment in the form of unwarranted and adverse criticism from her direct report, David Torres. Further, Mr. Torres did not respect the fact that Plaintiff Jane Doe was traumatized by the way she had been treated by Defendant Lindsey.

96.   After Ms. Ross concluded her report, Robert Nienhouse and Catherine Nienhouse-Lindsey have falsely maintained that Plaintiff Jane Doe had *made up* her allegations against Defendant Lindsey.

97.     At no time have Nienhouse Group, Inc., Robert Nienhouse or Catherine Nienhouse-Lindsey apologized to Plaintiff Jane Doe for the manner in which her privacy was violated by Nick Lindsey.

98.     If Nienhouse Group, Inc., Robert Nienhouse and/or Catherine Nienhouse-Lindsey had performed a proper investigation, Plaintiff would not have been required to incur out-of-pocket expenses to prove and remedy Lindsey's misconduct

99.     For example, a costly forensic review of Plaintiff Jane Doe's iPhone has uncovered Defendant Lindsey's unlawful and unauthorized access to Plaintiff Jane Doe's Images and Videos during the short time window when Defendant Lindsey had Jane Doe's iPhone in his exclusive possession.

100.    The below screen capture depicts Meta Data related to an intimate Video that was accessed and downloaded from Plaintiff Jane Doe's iCloud by Defendant Lindsey at approximately 4:45 pm on January 27, 2025:

Cloud Sync State:Local
Chunks:1
File path:EXTRACTION_FFS.zip/root/private/var/mobile/Media/PhotoData/Mutations/DCIM/105APPLE/IMG_5034/Adjustments/FullSizeRender.mov
Hidden By User:True
Native Scene Classification:textile, jewelry, hair, polka dots, costume accessory, people, tool, housewares, beauty, equipment, human body, brassiere, woman, girl, face, adult, necklace, body part, underwear, mouth, decoration, skin, material, blond hair, lip, art, human nose, clothing, arm
Original File Path:/root/private/var/mobile/Media/DCIM/105APPLE/IMG_5034.MOV
Uid:501
Date & Time
Change time:1/27/2025 4:45:55 PM(UTC-6)
Creation time:1/27/2025 4:45:53 PM(UTC-6)
Deleted time:
Last access time:3/19/2025 1:04:36 PM(UTC-5)
Modify time:1/27/2025 4:45:55 PM(UTC-6)
Offsets
Data offset:0x16B5D4A48A
EXIF
QuickTimeMovieEnumCreated:Fri Dec 08 18:38:25 2023
QuickTimeTrackEnumCreated:Fri Dec 08 18:38:25 2023
xattr
com.apple.cscachefs:"com.apple.cscachefs" : System.Byte[]

101.    The below screen captures depict Meta Data related to an intimate Video that was accessed and downloaded from Plaintiff Jane Doe's iCloud by Defendant Lindsey at approximately 4:46 and 4:47 pm on January 27, 2025:

Cloud Sync State:Local
Chunks:1
File path:EXTRACTION_FFS.zip/root/private/var/mobile/Media/PhotoData/Mutations/DCIM/105APPLE/IMG_5035/Adjustments/FullSizeRender.mov
Hidden By User:True
Native Scene Classification:face, textile, arm, hair, brassiere, beauty, people, human body, pillow, high heel, housewares, mouth, girl, thigh, underwear, hand, equipment, bedding, tool, material, bikini, adult, body part, jewelry, woman, skin, extremities, clothing
Original File Path:/root/private/var/mobile/Media/DCIM/105APPLE/IMG_5035.MOV
Uid:501
Date & Time
Change time:1/27/2025 4:46:00 PM(UTC-6)
Creation time:1/27/2025 4:45:55 PM(UTC-6)
Deleted time:
Last access time:3/19/2025 1:04:39 PM(UTC-5)
Modify time:1/27/2025 4:46:00 PM(UTC-6)
Offsets
Data offset:0x16B678827C
EXIF
QuickTimeMovieEnumCreated:Fri Dec 08 18:32:00 2023
QuickTimeTrackEnumCreated:Fri Dec 08 18:32:00 2023
xattr
com.apple.cscachefs:"com.apple.cscachefs" : System.Byte[]

Cloud Sync State:Synced From Cloud
Chunks:1
File path:EXTRACTION_FFS.zip/root/private/var/mobile/Media/PhotoData/Mutations/PhotoData/CPLAssets/group171/38EB7723-A646-493B-9159-0FCC906F931A/Adjustments/FullSizeRender.mov
Hidden By User:True
Native Scene Classification:beauty, chair, material, pillow, brassiere, hairstyle, arm, woman, underwear, people, equipment, furniture, long hair, blond hair, eyebrow, sofa, jewelry, tool, structure, adult, armchair, girl, clothing, face, body part, hair, selfie, brown hair, layered hair, lip
Original File Path:/root/private/var/mobile/Media/PhotoData/CPLAssets/group171/38EB7723-A646-493B-9159-0FCC906F931A.MOV
Uid:501
Date & Time
Change time:1/27/2025 4:47:48 PM(UTC-6)
Creation time:1/27/2025 4:47:48 PM(UTC-6)
Deleted time:
Last access time:3/19/2025 1:08:37 PM(UTC-5)
Modify time:1/27/2025 4:47:48 PM(UTC-6)
Offsets
Data offset:0x170ADC7708
EXIF
QuickTimeMovieEnumCreated:Tue May 09 06:53:32 2023
QuickTimeTrackEnumCreated:Tue May 09 06:53:32 2023
xattr
com.apple.cscachefs:"com.apple.cscachefs" : System.Byte[]

102.    The below screen capture depicts Meta Data related to an intimate Video that was accessed and downloaded from Plaintiff Jane Doe's iCloud by Defendant Lindsey at approximately 4:43:00 pm on January 27, 2025:

Chunks:1
File path:EXTRACTION_FFS.zip/root/private/var/mobile/Media/DCIM/100APPLE/IMG_0727.MOV
Hidden By User:True
Native Scene Classification:material, woman, bedding, people, hair, face, toddler, bed, human nose, man, adult, textile, human body, head, structure, girl, clothing, arm, hand, equipment, extremities, mouth, interior room, selfie, skin, housewares, tool, body part, furniture, pillow
Uid:501
Date & Time
Change time:1/27/2025 4:43:01 PM(UTC-6)
Creation time:1/27/2025 4:43:00 PM(UTC-6)
Deleted time:
Last access time:3/19/2025 12:42:07 PM(UTC-5)
Modify time:1/27/2025 4:43:01 PM(UTC-6)
Offsets
Data offset:0x13D2005BDF
EXIF
QuickTimeMovieEnumCreated:Mon May 08 02:38:44 2023
QuickTimeTrackEnumCreated:Mon May 08 02:38:44 2023
xattr
com.apple.assetsd.addedDate:"com.apple.assetsd.addedDate" : System.Byte[]
com.apple.assetsd.assetType:"com.apple.assetsd.assetType" : System.Byte[]
com.apple.assetsd.avalanche.type:"com.apple.assetsd.avalanche.type" : System.Byte[]
com.apple.assetsd.cloudAsset.UUID:"com.apple.assetsd.cloudAsset.UUID" : System.Byte[]
com.apple.assetsd.creatorBundleID:"com.apple.assetsd.creatorBundleID" : System.Byte[]
com.apple.assetsd.currentSleetCast:"com.apple.assetsd.currentSleetCast" : System.Byte[]
com.apple.assetsd.customCreationDate:"com.apple.assetsd.customCreationDate" : System.Byte[]
com.apple.assetsd.dbRebuildUuid:"com.apple.assetsd.dbRebuildUuid" : System.Byte[]
com.apple.assetsd.deferredProcessing:"com.apple.assetsd.deferredProcessing" : System.Byte[]
com.apple.assetsd.favorite:"com.apple.assetsd.favorite" : System.Byte[]
com.apple.assetsd.hidden:"com.apple.assetsd.hidden" : System.Byte[]
com.apple.assetsd.importedBy:"com.apple.assetsd.importedBy" : System.Byte[]
com.apple.assetsd.importedByDisplayName:"com.apple.assetsd.importedByDisplayName" : System.Byte[]

103.    Each of the above screen captures reflects that each Video was "Hidden by User" and the Last access time" designation reflects when the Videos were captured by forensic software.

104.    The "Native Scene Classification" for each of the above screen captures reflects how Apple, Inc.'s software captures and categorizes the content of each Video.

105.    The "Change Time" for each of the above screen captures reflects when each Video was downloaded from Plaintiff Jane Doe's iCloud by Defendant Lindsey.

106.    In each of the above screen captures, the forensic data reflects that Defendant Lindsey downloaded the Videos from Plaintiff Jane Doe's iCloud on January

27, 2025, to allow him to review the Videos on Plaintiff Jane Doe's iPhone when it was in his sole possession.

107.   The below screen capture depicts Meta Data related to an intimate Image that was accessed and downloaded from Plaintiff Jane Doe's iCloud by Defendant Lindsey at approximately 4:42:44 pm on January 27, 2025:



108.   The below screen capture depicts Meta Data related to an intimate Image that was accessed and downloaded from Plaintiff Jane Doe's iCloud by Defendant Lindsey at approximately 4:42:53 pm on January 27, 2025:



26

109. Each of the above screen captures reflects that each Image was "Hidden by User" and the Last access time" designation reflects when the Images were captured by forensic software.

110. The "Native Scene Classification" for each of the above screen captures reflects how Apple, Inc.'s software captures and categorizes the content of each Image.

111. The "Change Time" for each of the above screen captures reflects when each Image was downloaded from Plaintiff Jane Doe's iCloud by Defendant Lindsey.

112. *If* the Images and Videos had been fully saved to Plaintiff Jane Doe's iPhone prior to Plaintiff Jane Doe handing her iPhone to Defendant Lindsey (rather than being maintained on her iPhone as mere thumbnails, Defendant Lindsey would have been able to review the Images and Videos *without* having to download the Images and Videos from Plaintiff Jane Doe's iCloud.

113. As a direct result of Defendant Lindsey's misconduct and the white-wash investigation performed by Nienhouse Group, Inc., Robert Nienhouse or Catherine Nienhouse-Lindsey, Plaintiff has suffered severe emotional distress and has incurred thousands of dollars of out-of-pocket expenses.

114. If Nienhouse Group, Inc., Robert Nienhouse and/or Catherine Nienhouse-Lindsey had allowed attorney Ross to perform a proper investigation, including a forensic examination of Plaintiff Jane Doe's iPhone and iCloud, this lawsuit may not have been necessary.

115. Upon information and belief, Defendant Nienhouse Group, Inc. has engaged the services of Ms. Ross's firm prior to hiring Ms. Ross to conduct her investigation.

116. Upon information and belief, Robert Nienhouse has engaged the services of Ms. Ross's firm prior to hiring Ms. Ross to conduct her investigation.

117. Upon information and belief, Catherine Nienhouse-Lindsey has engaged the services of Ms. Ross's firm prior to hiring Ms. Ross to conduct her investigation.

118. Upon information and belief, prior to engaging Ms. Ross to conduct her investigation, Robert Nienhouse knew or had communicated with another attorney employed by Ms. Ross's firm.

119. Upon information and belief, prior to engaging Ms. Ross to conduct her investigation, Catherine Nienhouse-Lindsey knew or had communicated with another attorney employed by Ms. Ross's firm.

120. If Nienhouse Group, Inc., Robert Nienhouse and/or Catherine Nienhouse-Lindsey attempt to utilize Ms. Ross's investigation as a shield to avoid liability, doing so will constitute a waiver of any potential privileges.

121. Simply put, upon information and belief, attorney Ross was not a fully independent investigator as Robert Nienhouse has claimed.

## V. *Respondeat Superior* Liability, Vicarious Liability and Spoilation of Evidence

122. "Under the doctrine of *respondeat superior*, an agent's wrongful conduct may be imputed to the principal." *Sperl v. Henry*, 429 Ill. Dec. 426, 126 N.E.3d 936, 943-44 (Ill. 2018).

123. "[A]n employer can be liable for the torts of an employee … that are committed within the scope of employment." *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007).

124. The acts and omissions of Defendant Lindsey are directly chargeable to Defendants Nienhouse Group, Inc. pursuant to the doctrine of *respondeat superior*.

125.    Further, the acts and omissions of Robert Nienhouse and Catherine Nienhouse-Lindsey are directly chargeable to Defendants Nienhouse Group, Inc. pursuant to the doctrine of *respondeat superior*.

126.    Finally, the acts and omissions of attorney Julia Ross are directly chargeable to Defendants Nienhouse Group, Inc. pursuant to the doctrine of *respondeat superior*.

127.    Notwithstanding the fact that a statute may "say[] nothing about vicarious liability", "it is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment". *Meyer v. Holley*, 537 U.S. 280, 285, 134 S. Ct. 824, 828-29 (2003).

128.    Defendants Nick Lindsey and Nienhouse Group, Inc., in conjunction with the acts and omissions of Julian Ross, Robert Nienhouse and Catherine Nienhouse-Lindsey, conspired to cause key evidence to be lost over the passage of time, where the individually and collectively conspired to avoid undertaking steps to preserve evidence of Defendant Nick Lindsey misconduct in relation to the company iPhone and MacBook that Nick Lindsey used when he interacted with Plaintiff Jane Doe's iPhone and iCloud account on January 27, 2025.

129.    Spoilation occurs when the destroyed or lost evidence was in the opposing party's custody or control, is relevant to the claims or defenses in the case, was destroyed for the purpose of hiding adverse information, and the opposing party had a duty to preserve the evidence. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008); *Lewis v. McLean*, 941 F.3d 886, 892 (7th Cir. 2019).

130.    As set forth above, Defendants Nick Lindsey and Nienhouse Group, Inc., along with Robert Nienhouse (as the CEO of Nienhouse Group, Inc.) and Catherine

29

Nienhouse-Lindsey (as a member of Nienhouse Group, Inc.'s human resources department), had a duty to preserve relevant data related to Plaintiff Jane Doe's claims and the misconduct of Defendant Lindsey.

131.   As set forth above, Defendants Nick Lindsey and Nienhouse Group, Inc., along with Robert Nienhouse (as the CEO of Nienhouse Group, Inc.) and Catherine Nienhouse-Lindsey (as a member of Nienhouse Group, Inc.'s human resources department), breached their duties by not taking steps to promptly copy and preserve Nick Lindsey's work-issued iPhone to prevent this iPhone from overwriting data which incriminated Defendant Lindsey.

132.   As set forth above, Defendants Nick Lindsey and Nienhouse Group, Inc., along with Robert Nienhouse (as the CEO of Nienhouse Group, Inc.) and Catherine Nienhouse-Lindsey (as a member of Nienhouse Group, Inc.'s human resources department), breached their duties by not taking steps to conduct a pre-suit forensic examination of Nick Lindsey's work-issued iPhone to prevent this device from overwriting data which incriminated Defendant Lindsey and to prevent Julia Ross from ascertaining the evidence of Defendant Lindsey's misconduct.

133.   As set forth above, Defendants Nick Lindsey and Nienhouse Group, Inc., along with Robert Nienhouse (as the CEO of Nienhouse Group, Inc.) and Catherine Nienhouse-Lindsey (as a member of Nienhouse Group, Inc.'s human resources department), breached their duties by not taking steps to promptly preserve Nick Lindsey's work-issued MacBook to prevent this MacBook from overwriting data which incriminated Defendant Lindsey.

134.   As set forth above, Defendants Nick Lindsey and Nienhouse Group, Inc., along with Robert Nienhouse (as the CEO of Nienhouse Group, Inc.) and Catherine Nienhouse-Lindsey (as a member of Nienhouse Group, Inc.'s human resources

department), breached their duties by not taking steps to conduct a pre-suit forensic examination of Nick Lindsey's work-issued MacBook to prevent this device from overwriting data which incriminated Defendant Lindsey and to prevent Julia Ross from ascertaining the evidence of Defendant Lindsey's misconduct.

## VI.  Causes of Action

135.  Plaintiffs are asserting the following causes of action against Defendants:

a.  Count I - Violations of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030;

b.  Count II –Disclosure of Intimate Images in Violation of 15 U.S.C. § 6851;

c.  Count III Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2520;

d.  Count IV –Negligent Violations of Plaintiffs' Privacy Rights;

e.  Count V – For Civil Remedies for Nonconsensual Dissemination of Private Sexual Images Act, 740 ILCS 190/1;

f.  Count V –Intrusion Upon Seclusion;

g.  Count VII –Trespass to Chattels;

h.  Count VIII – Conversion;

i.  Count IX – Defamation;

j.  Count X –Intentional Infliction of Emotional Distress;

k.  Count XI – Negligent Retention Versus Nienhouse Group; and

l.  Count XII – Negligent Preservation of Relevant Evidence.

**Count I – Versus Defendants Lindsey and Nienhouse Group, Inc.**

**Violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030**

136.  Plaintiff Jane Doe incorporates Paragraphs 1 through 134 as if fully set forth in this Count.

137.  The Computer Fraud & Abuse Act 18 U.S.C. § 1030 ("CFAA") "is best understood as an anti-intrusion statute and not as a 'misappropriation statute,'"

31

because "CFAA was enacted to prevent intentional intrusion onto someone else's computer — specifically, computer hacking." *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1000 (9th Cir. 2019)

138.    CFAA defines the term "computer" to mean "an electronic, magnetic, optical, electrochemical, or other high speed *data processing device* performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device[.]" See, 18 U.S.C. § 1030(e) (emphasis supplied).

139.    CFAA applies to iPhones and applies to Jane Doe's iPhone.[4] In particular, Jane Doe has used her iPhone to conduct work-related business, such as XXX. Further, Defendant Nick Lindsey, from time to time, has asked to use Jane Doe's iPhone to test work-based applications.

140.    Accordingly, as an employee of Nienhouse Group, Jane Doe's iPhone was used by her, Nienhouse Group and Defendant Nick Lindsey as a "protected computer" where this term is defined by 18 U.S.C. § 1030(e)(2)(B), where Nienhouse Group conducts business "in or affecting interstate ... commerce" and her iPhone was "used in [and] affect[ed] interstate ... commerce [and] communication".

141.    CFAA applies to Defendant Lindsey's unlawful access to the Images and Videos that were stored on Plaintiff Jane Doe's iCloud account where Jane Doe has used

---

[4] *See, e.g., Volpe v. Abacus Software Sys. Corp.*, 2021 U.S. Dist. LEXIS 112441, *9-*10, 2021 WL 2451968 (D. N.J. June 15, 2021); *T.H. Glennon Co. v. Monday*, 2020 U.S. Dist. LEXIS 45917, *32, 2020 WL 1270970 (D. Mass. March 17, 2020) ("The third element of the offense is access to a protected computer. All three devices owned by Glennon--the iPhone, iPad, and Lenovo computer--were network-connected computers. Glennon's Filemaker documents were stored in the 'Cloud,' an internet-based network."). *See also, Philips Med. Sys. P.R. v. Alpha Biomedical & Diagnostic Corp.*, 2020 U.S. Dist. LEXIS 16351, *7, 2020 WL 475616 (D. P.R. Jan. 29, 2020) (holding that an MRI machine was covered by the CFAA because it connects to the internet).

her iPhone to conduct work-related business and Defendant Nick Lindsey, from time to time, has asked to use Jane Doe's iPhone to test work-based applications.

142. The CFAA prohibits individuals from accessing information on another person's computerized device "without authorization" and/or by "exceeding authorized access" See, 18 U.S.C. § 1030(a)(2).

143. The CFAA also prohibits an individual from "intentionally accesses a protected computer without authorization" and "caus[ing] damage and loss" to the improperly accessed computerized device. See, 18 U.S.C. § 1030(a)(5).

144. The CFAA provides a private right of action for victims who suffer economic harm. See, 18 U.S.C. § 1030(g) ("Any person who suffers *damage or loss* by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.") (emphasis supplied).

145. Under CFAA, a loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

146. Defendant Lindsey violated CFAA when he intentionally accessed Jane Doe's hidden folder on her iPhone, which is a form of a computer, *without* her authorization.

147. Defendant Lindsey violated CFAA when he intentionally accessed Jane Doe's iCloud account which is a form of a computer, *without* her authorization.

148. Defendant Lindsey intentionally accessed Plaintiff Jane Doe's Images and Videos without her authorization, and through his conduct, Defendant Lindsey obtained

33

private and confidential information from Jane Doe's iPhone, a type of device that is protected by CFAA.

149.  Section 1030(e)(11) defines "loss" as "any reasonable cost to the victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *See, e.g., Motorola, Inc. v. Lemko Corp.*, 609 F.Supp.2d 760, 768 (N.D. Ill. 2009) (denying motion to dismiss and holding that allegations of loss "related to damage and security assessments * * * are sufficient to allege loss for purposes of the CFAA".); *Navistar, Inc. v. New Baltimore Garage, Inc.*, 2012 U.S. Dist. LEXIS 134369, *23, 2012 WL 4338816 (N.D. Ill. Sept. 20, 2012) ("Plaintiffs have stated a CFAA claim by alleging that they incurred costs in investigating an alleged CFAA offense.").

150.  Plaintiff Jane Doe suffered the type of loss enumerated by subsection (c)(4)(A)(i)(I) of the CFAA where she had to pay (out of pocket) for a forensic examination of her iPhone after Defendant Nienhouse Group (by and through Robert Nienhouse) *refused* to pay for an examination that was estimated by Nienhouse Group's attorney (Julia Ross) to cost over $5,000.

151.  The forensic examination of Jane Doe's iPhone was necessary to allow her to prove that Defendant Lindsey had violated her right of privacy, to determine which Images and Videos were improperly accessed by Defendant Lindsey and/or forwarded by Defendant Lindsey and to determine whether Defendant Lindsey had placed nefarious spyware on her iPhone or iCloud to allow him unlawful remote access to her Images and Videos.  *See, e.g., Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F.Supp.2d 1026, 1036-37 (N.D. Ill. 2008) (citing cases).

152.    Plaintiff Jane Doe also suffered out of pocket costs and an interruption in the use and enjoyment of her iPhone when she was required to mail her iPhone to the forensic examiner for imaging and analysis, which resulted in her being unable to utilize her iPhone for several days.

153.    In particular, Jane Doe's iPhone and her iCloud account were examined by an independent forensic examiner who made a forensic copy of Jane Doe's iPhone and her iCloud account for the purpose of determining what particular intimate Image and Videos Defendant Nick Lindsey viewed, downloaded and/or forwarded without Jane Doe's permission or authority, to take steps to ensure that Defendant Lindsey did not placed a nefarious spyware application on Jane Doe's iPhone for the purpose of allowing him continued or future access to her intimate Image and Videos, to determine what and to determine the full scope of Defendant Lindsey's misappropriation of Ms. Doe's confidential  intimate Image and Videos.

154.    Defendant Lindsey caused damage to Jane Doe's iPhone and Jane Doe's iCloud account by improperly downloading Ms. Doe's intimate Images and Videos to her iPhone - where this downloading event used up considerable memory on Ms. Doe's iPhone.

155.    Furthermore, it is plausible to contend that Defendant Lindsey's unlawful and non-consensual foraging through Jane Doe's iPhone and her iCloud may have caused technological damage, where Defendant Lindsey had no business  (a) viewing Jane Doe's private intimate Images and Videos, (b) downloading Jane Doe's private intimate Images and Videos (c) otherwise attempting to cover his tracks, where Defendant Lindsey had Jane Doe's iPhone in his sole possession for nearly two-hours and (d) did all of these things without Jane Doe's authorization in violation of Sections 1030(a)(2) and 1030(a)(5) of the CFAA.

156.     To recap, where Defendant Lindsey has lied about his conduct on January 27, 2025, to his wife and co-worker (Catherine Nienhouse-Lindsey), his father-in-law and CEO (Robert Nienhouse) and an outside investigator (Julia Ross), and in particular he denied viewing Jane Doe's intimate Images and Videos (which Plaintiff Jane Doe heard) and he denied accessing Plaintiff Jane Doe's hidden iPhone folder (which Jane Doe knows is a lie because her hidden folder was open when Lindsey returned her iPhone to her (where this folder was closed and locked before Jane Doe handed her iPhone to Lindsey) and Lindsey denied downloading Images and Videos (where forensic evidence says that Lindsey is lying), it was reasonable for Jane Doe's forensic vendor to review her iPhone and iCloud for spyware and to determine what other applications Defendant Lindsey may have uploaded to Jane Doe's iPhone.

157.     Further, Plaintiff Jane Doe is entitled to injunctive relief and a temporary restraining order to protect her from Defendant Lindsey's disclosure of her Images and Videos to third parties. *See, e.g., YourNetDating, LLC v. Mitchell,* 88 F. Supp. 2d 870 (N.D. Ill. 2000) (granting a TRO where the plaintiff had demonstrated that the defendant had no legitimate right to hack its website and divert clients to another website).

158.     Defendant Nienhouse Group, as Defendant Lindsey's employer, is vicariously liable for Defendant Lindsey's conduct under the doctrine of *respondeat superior* - where Defendant Lindsey committed the above described unlawful conduct within the scope of his employment, during working hours, while at the office space that he worked at along with Jane Doe, where he used a work-issued iPhone and MacBook to commit the above described unlawful acts.[5]

---

[5] "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285, 123 S. Ct. 824, 828-29 (2003) (applying common law principle of vicarious liability to Fair Housing Act claim). Against this backdrop, a corporate

159. Defendant Lindsey's conduct occurred in the normal course of his employment – where Defendant Lindsey, according to his own statement, told Jane Doe that he needed to use her iPhone for a work-related purpose – and as of this filing, Mr. Lindsey has not admitted that he viewed Jane Doe's Images and Videos on a frolic of his own.

160. To date, Defendant Nienhouse Group has not put forth any evidence to suggest that Defendant Lindsey's conduct was not related to his alleged testimony of a work-place application, where Defendant Nienhouse Group works with governmental entities and law enforcement agencies to monitor the conduct of person who are required to use and/or wear the types of electronic devices that Nienhouse Group leases and sells to governmental entities, law enforcement agencies and persons under the police power of these governmental entities and law enforcement agencies.

WHEREFORE, Plaintiff Jane Doe demands that judgment be entered in her favor and against Defendants Nick Lindsey and Nienhouse Group, Inc. for an amount to be determined, plus costs, attorney's fees and punitive damages.

**Count II – Versus Defendants Lindsey and Nienhouse Group, Inc.**

**<u>Disclosure of Intimate Images in Violation of 15 U.S.C. § 6851</u>**

161. Jane Doe and John Doe incorporate Paragraphs 1 through 134 as if fully set forth in this Count.

162. 15 U.S.C. § 6851 (hereafter referred to as the "DIIA") provides a civil action for "an individual whose *intimate visual depiction* is disclosed, in or affecting interstate … commerce or using any means or facility of interstate … commerce, without the consent of the individual, where such *disclosure* was made by a person who knows that,

---

employer may be vicariously liable for violations of the CFAA. *See, e.g., Charles Schwab & Co. v. Carter*, 2005 U.S. Dist. LEXIS 21348, *20, *22-*23, 2005 WL 2369815 (N.D. Ill. Sept. 27, 2005).

or recklessly disregards whether, the individual has not consented to such disclosure[.]" See, 15 U.S.C. § 6851(b)(1) (emphasis supplied).

163.   The DIIA defines the phrase "intimate visual depiction" "means a visual depiction, as that term is defined in section 2256(5) of title 18, that depicts — (i) the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual; or (ii) the display or transfer of bodily sexual fluids — (I) on to any part of the body of an identifiable individual; (II) from the body of an identifiable individual; or (III) an identifiable individual engaging in *sexually explicit conduct*[.]" See, 15 U.S.C. § 6851(a)(5) (emphasis supplied).

164.   The DIIA provides the phrase "sexually explicit conduct" "has the meaning of the term" as it is defined by Section 2256(2) of Title 18. See, 15 U.S.C. § 6851(a)(6).

165.   18 U.S. Code § 2256(2)(A) defines the phrase "sexually explicit conduct" "means actual or simulated — (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex" and includes the "(v) lascivious exhibition of the anus, genitals, or pubic area of any person[.]" See, 18 U.S. Code § 2256(2)(A)(i) and (v).

166.   18 U.S. Code § 2256(2)(B) also defines "sexually explicit conduct" to include "the graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited[.]" See, 18 U.S. Code § 2256(2)(B).

167.   The DIIA defines the term "disclose" to mean "to transfer, publish, distribute, or make accessible." See, 15 U.S.C. § 6851(a)(4).

168.   The Images and Videos that Defendant Lindsey downloaded from Jane Doe's iCloud fall under the scope of the DIIA because the Images and Videos involve

38

"intimate visual depiction[s]" of Jane Doe and John Doe as this phrase is defined by the DIIA.

169.    The Images and Videos that Defendant Lindsey downloaded from Jane Doe's iCloud fall under the scope of the DIIA because the Images and Videos involve private "sexually explicit conduct" involving Jane Doe and John Doe as the term "sexually explicit conduct" has been adopted by the DIIA.

170.    In violation of the DIAA, Defendant Lindsey disclosed one or more of the Images and Videos by downloading them from Plaintiff Jane Doe's iCloud account and/or by using Apple's "AirDrop" function to distribute the Images and Videos them to himself and other currently unknown third-parties.

171.    The Images and Videos that Defendant Lindsey disclosed after he downloaded the Images and Videos from Jane Doe's iCloud fall under the scope of the DIIA because the Images and Videos involve "intimate visual depiction[s]" of Jane Doe and John Doe as this phrase is defined by the DIIA.

172.    The Images and Videos that Defendant Lindsey disclosed after he downloaded the Images and Videos from Jane Doe's iCloud fall under the scope of the DIIA because the Images and Videos involve "sexually explicit conduct" involving Jane Doe and John Doe as the term "sexually explicit conduct" has been adopted by the DIIA.

173.    The Images and Videos that Defendant Lindsey Airdropped to his work-issued iPhone and/or MacBook fall under the scope of the DIIA because the Images and Videos involve "sexually explicit conduct" involving Jane Doe and John Doe as the term "sexually explicit conduct" has been adopted by the DIIA.

174.    Each of the Images and Videos disclosed by Defendant Lindsey constitutes an "intimate visual depiction" of Jane Doe and John Doe as defined in 15 U.S.C. §

39

6851(a)(5), as Jane Doe and John Doe are identifiable and depicted in a state of undress, and engaged in "sexually explicit conduct" as this term has been adopted by the DIIA.

175. Upon information and belief, without being given the entire raw data Defendant Lindsey agreed to have extracted and analyzed by a third-party vendor, see, Dkt. 43, where this vendor was suggested and retained by Nienhouse Group's lawyer, the forensic evidence examined to date demonstrates Defendant Lindsey downloaded and AirDropped the Images and Videos at issue using a means or facility of interstate commerce and did so *without* the consent of Jane Doe and John Doe. And in undertaking these unlawful and non-consensual steps, Defendant Lindsey distributed the Images and Videos in violation of the DIAA – where he took these actions while his work-based iPhone and work-based MacBook were connected to Jane Doe's iPhone. In taking these actions, Defendant Lindsey transferred, published, distributed and/or made the Images and Videos accessible to third-parties.

176. The Seventh Circuit Court of Appeals recognizes that a text message is sent through interstate commerce. *U.S. v. Baird*, 70 F.4th 390, 394 (7th Cir. 2023).

177. The Seventh Circuit Court of Appeals also recognizes that the Internet is a means of interstate commerce. *U.S. v. Chaparro*, 956 F3d. 462, 470 (7th Cir. 2020) ("The Internet is a facility of interstate commerce"). *See also, U.S v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) (holding that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce[.]").

178. At its core, telephonic communications are a form of interstate communication. *See, e.g., U.S. v. Richeson*, 338 F.3d 653, 661 (7th Cir. 2003) (telephone line is facility of interstate commerce); *FTC v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980)

(noting defendant's use of telephone constituted use of instrumentality of interstate commerce).

179.    Defendant Lindsey knew that Jane Doe and John Doe had not consented to his disclosure of their Images and Videos.

180.    Defendant Lindsey's non-consensual disclosure of Jane Doe and John Doe's Images and Videos caused substantial harm to Jane Doe and John Doe.

181.    Defendant's Lindsey's conduct violates 15 U.S.C. § 6851.

182.    As a result of Defendant's Lindsey's conduct, Jane Doe and John Doe are each entitled to recover actual damages sustained or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, and equitable relief ordering the defendant to cease display or disclosure of the visual depiction.

183.    Defendant Nienhouse Group, as Defendant Lindsey's employer, is vicariously liable for Defendant Lindsey's conduct under the doctrine of *respondeat superior* - where Defendant Lindsey committed the above described unlawful conduct within the scope of his employment, during working hours, while at the office space that he worked at along with Jane Doe, where he used a work-issued iPhone and MacBook to commit the above described unlawful acts.[6]

184.    Defendant Lindsey's conduct occurred in the normal course of his employment – where Defendant Lindsey, according to his own statement, told Jane Doe that he needed to use her iPhone for a work-related purpose – and as of this filing, Mr. Lindsey has not admitted that he viewed Jane Doe's Images and Videos on a frolic of his own.

---

[6] *See, e.g., Doe v. T-Mobile USA, Inc.*, 2024 U.S. Dist. LEXIS 72096 at *9, 2024 WL 1705925 (E.D. Wash. April 18, 2024).

185.    To date, Defendant Nienhouse Group has not put forth any evidence to suggest that Defendant Lindsey's conduct was not related to his alleged testimony of a work-place application, where Defendant Nienhouse Group works with governmental entities and law enforcement agencies to monitor the conduct of person who are required to use and/or wear the types of electronic devices that Nienhouse Group leases and sells to governmental entities, law enforcement agencies and persons under the police power of these governmental entities and law enforcement agencies.

WHEREFORE, Plaintiff Jane Doe demands that judgment be entered in her favor and against Defendants Nick Lindsey and Nienhouse Group, Inc. for an amount to be determined, plus costs, attorney's fees and punitive damages

### Count III – Versus Defendants Lindsey and Nienhouse Group, Inc.

### Violations of the Electronic Communications Privacy Act and the Stored Communications Act

186.    Plaintiff Jane Doe incorporates Paragraphs 1 through 134 as if fully set forth in this Count.

187.    Title I of the Electronic Communications Privacy Act (hereafter "ECPA"), creates a private right of action for violations of Federal Wiretap Act.

188.    In particular, the ECPA provides a cause of action when an individual or entity "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility" and "thereby obtains ... a wire or electronic communication while it is in storage in such system[.]" 18 U.S.C. § 2701(a).

189.    ECPA defines an "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

190.    In summary, a person violates the Federal Wiretap Act when they "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

191.    "Intercept" under the statute means "the ... *acquisition* of the contents of any wire, electronic, or oral communication." 18 U.S.C. § 2510(4) (emphasis supplied).

192.    Interception is "understood as the act of acquiring electronic communication in transit—rather than the acquisition of stored electronic communications, which is addressed by the Stored Communications Act." *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016).

193.    "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter [18 USCS §§ 2510 et seq.] may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

194.    Defendant Lindsey violated the Federal Wiretap Act by contemporaneously intercepting private (unopened/unread) communications sent to Plaintiff Jane Doe's Instagram account when he, without Plaintiff's consent, read Plaintiff Jane Doe's Instagram messages and other private communications when he was in possession of her iPhone on January 27, 2025, where these communications were (unopened/unread) prior to them being intercepted by Defendant Lindsey.

195.    By acting in this manner, Defendant Lindsey violated 18 U.S.C. § 2511 which prohibits the unauthorized interception of communications while they are in transit.

43

196.   Upon information and belief, Defendant Lindsey also obtained unlawful access to Plaintiff Jane Doe's previously read Instagram and Facebook messages which were stored on a third-party server, and downloaded by Defendant Lindsey.

197.   By acting in this manner, Defendant Lindsey violated the Stored Communications Act, 18 U.S.C. § 2701, which prohibits the unauthorized access of stored communications.

**Count IV – Versus Defendants Lindsey and Nienhouse Group, Inc.**

**Negligent Violations of Plaintiffs' Privacy Rights**

198.   Plaintiffs Jane Doe and John Doe incorporate Paragraphs 1 through 134 as if fully set forth in this Count.

199.   At all relevant times, the Non-Consensual Dissemination of Private Sexual Images Act ("NCDA"), 720 ILCS 5/11-23.5, was in full force and effect in the State of Illinois and prohibited the non-consensual dissemination of private sexual images of another person.

200.   The NCDA establishes a standard of care.

201.   At all relevant times, the NCDA protected Jane Doe and John Doe from being subjected to the non-consensual dissemination of their Images and Videos without their express consent.

202.   At all relevant times, Defendant Lindsey had a duty not to violate the NCDA with regard to Plaintiff's Private Images and Videos.

203.   Defendant Lindsey violated Plaintiff's rights under the Act by downloading her Private Images and Videos from her iCloud account without her consent.

204.   Upon information and belief, Defendant Lindsey violated Plaintiff's rights under the Act by downloading her Private Images and Videos from her iCloud account

without her consent and by forwarding and disseminating Plaintiff's Private Images and Videos.

205. Defendant Lindsey's violation of the standard of care set by 720 ILCS 5/11-23.5 serves as prima facie evidence of negligence.

206. Defendant Lindsey's violation of Plaintiff's rights under the Act invaded Plaintiff's statutory-based privacy rights and has caused Plaintiff to suffer extreme embarrassment, humiliation and anguish.

WHEREFORE, Plaintiffs demand that judgment be entered in their favor and against Defendant Lindsey and Nienhouse Group, Inc. for an amount in excess of $500,000.00, plus costs, attorney's fees and punitive damages.

## Count V – Versus Defendants Lindsey and Nienhouse Group, Inc.

## **Nonconsensual Dissemination of Private Sexual Images Act, 740 ILCS 190/1**

207. Plaintiffs Jane Doe and John Doe incorporate Paragraphs 1 through 134 as if fully set forth in this Count.

208. Illinois law prohibits the non-consensual dissemination of private sexual images as provided by the Nonconsensual Dissemination of Private Sexual Images Act, 740 ILCS 190/1, *et seq.* ("NDPSIA").

209. The Images and Videos downloaded by Defendant Lindsey depict a "sexual image" of Plaintiff as defined in 740 ILCS 190/5(14), as they show Jane Doe and John Doe in a state of undress and engaging in sexual activity

210. The Images and Videos downloaded by Defendant Lindsey were "private", as defined in 740 ILCS 190/5(10) as they were obtained under circumstances in which Jane Doe and John Doe had a reasonable expectation of privacy.

211. Jane Doe and John Doe are identifiable in the Images and Videos.

212.     Defendant Lindsey downloaded one or more of the Images and Videos without Jane Doe and John Doe's consent.

213.     Defendant Lindsey transferred one or more of the Images and Videos without Jane Doe and John Doe's consent by downloading one or more of the Images and Videos from Jane Doe's iCloud to Jane Doe's iPhone.

214.     Defendant Lindsey disclosed one or more of the Images and Videos without Jane Doe and John Doe's consent.

215.     Defendant Lindsey knew, or recklessly disregarded the fact that Jane Doe and John Doe had never consented to him downloading, transferring and/or disclosing any of the Images and Videos.

216.     Defendant Lindsey's actions caused substantial harm to Jane Doe and John Doe.

217.     Defendant Lindsey's violated the NDPSIA.

218.     As a result of the violation of this statute, Jane Doe and John Doe are entitled to recover actual damages sustained or statutory damages not to exceed the amount of $10,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, and equitable relief ordering the defendant to cease display or disclosure of the visual depiction. See 740 ILCS 190/25.

219.     Defendant Nienhouse Group, as Defendant Lindsey's employer, is vicariously liable for Defendant Lindsey's conduct.

WHEREFORE, Plaintiffs Jane Doe and John Doe demand that judgment be entered in their favor and against Defendants Lindsey and Nienhouse Group, Inc. in an amount to be determined, plus costs, attorney's fees and punitive damages.

**Count VI - Intrusion Upon Seclusion vs. Nick Lindsey**

220.    Plaintiffs Jane Doe and John Doe incorporate Paragraphs 1 through 134 as if fully set forth in this Count.

221.    At all relevant times, Defendant Lindsey owed Jane Doe and John Doe a duty not to intrude upon their private sexual conduct in a manner that would be highly offensive to a reasonable person.

222.    Jane Doe and John Does private Images and Videos that were stored on a passcode protected folder on Plaintiff Jane Doe's iPhone.

223.    In violation and breach of Jane Doe and John Doe right to their privacy, Defendant Lindsey violated their right of privacy by:

    a) searching Jane Doe's iPhone without her permission to locate and review highly personal and confidential photos and videos of a sexual nature;

    b) Viewing Jane Doe's and John Doe's highly personal and confidential photos and videos of a sexual nature without their permission; and

    c) Forwarding Plaintiff's highly personal and confidential photos and videos of a sexual nature to himself without her permission.

224.    Defendant Lindsey's violation of Jane Doe's and John Doe's right of privacy caused and still causes them to suffer extreme embarrassment, humiliation and anguish.

WHEREFORE, Plaintiffs Jane Doe and John Doe demand that judgment be entered in their favor and against Defendant Nick Lindsey in an amount to be determined, plus costs, attorney's fees and punitive damages.

**Count VII – Trespass to Chattels vs. Nick Lindsey**

225.    Plaintiff Jane Doe incorporates Paragraphs 1 through 134 as if fully set forth in this Count.

226.    Defendant Lindsey's intentionally interfered with Plaintiff Jane Doe's iPhone when he had her iPhone in his possession on January 27, 2025, when Defendant

Lindsey unlawfully and without permission accessed Plaintiff Jane Doe's and John Doe's Images and Videos without Jane Doe's permission.

227. Defendant Lindsey's intentionally interfered with Plaintiff Jane Doe's iPhone when he had her iPhone in his possession on January 27, 2025, when Defendant Lindsey unlawfully and without permission accessed Plaintiff Jane Doe's and John Doe's Images and Videos without Jane Doe's permission by downloading the Images and Videos from her iCloud.

228. Further, Defendant Lindsey's intentionally interfered with Plaintiff Jane Doe's iPhone when he had her iPhone in his possession on January 27, 2025, when Defendant Lindsey unlawfully and without permission accessed and read Plaintiff Jane Doe's Instagram messages.

229. Defendant Lindsey's above-described conduct resulted in a series of unlawful trespasses of Plaintiff Doe's iPhone, iCloud and her Instagram account.

230. Defendant Lindsey's conduct caused Jane Doe to suffer harm to her personal property in the form of her iPhone, her iCloud account and the Images and Videos that she stored in a hidden folder on her iPhone and in her iCloud account.

231. Defendant Lindsey had no legitimate business reason to use Jane Doe's iPhone where Defendant Lindsey had access to his own work-issued iPhone and a work issued MacBook. With these two accessible Apple based devices, Defendant Lindsey did not have a legitimate business reason to ask to use Jane Doe's iPhone to test a work-based application.

232. In asking to use Jane Doe's iPhone to test a work-based application, Defendant Lindsey engaged in an unauthorized or wrongful assumption of control over Jane Doe's iPhone and her iCloud account.

233. Further, Defendant Lindsey lied to Plaintiff about the reason he wanted access to her iPhone. While he claims that he wanted to test a work-based application, in reality, he was acting as a "peeping Tom" where the only reason he asked to use Jane Doe's iPhone was to cater to his prurient needs – where he simply wanted access to Jane Doe's hidden folder of intimate Images and Videos.

234. By taking control over Jane Doe's iPhone and iCloud under these circumstances, Jane Doe suffered damages in the form of having her intimate Images and Videos viewed by Defendant Lindsey and downloaded from her iCloud account to further his prurient needs.

235. Further, Plaintiff Jane Doe suffered damages resulting from her having to hire and pay a forensic examiner to copy and analyze her iPhone and her iCloud account to learn the extent of Defendant Lindsey's misconduct.

WHEREFORE, Plaintiff Jane Doe demand that judgment be entered in her favor and against Defendant Nick Lindsey in an amount to be determined, plus costs, attorney's fees and punitive damages.

### Count VIII – Conversion vs. Nick Lindsey

236. Plaintiff Jane Doe incorporates Paragraphs 1 through 134 as if fully set forth in this Count.

237. Defendant Lindsey's intentionally interfered with Plaintiff Jane Doe's iPhone when he had her iPhone in his possession on January 27, 2025, when Defendant Lindsey unlawfully and without permission accessed Plaintiff Jane Doe's and John Doe's Images and Videos without Jane Doe's permission.

238. Defendant Lindsey's intentionally interfered with Plaintiff Jane Doe's iPhone when he had her iPhone in his possession on January 27, 2025, when Defendant Lindsey unlawfully and without permission accessed Plaintiff Jane Doe's and John

Doe's Images and Videos without Jane Doe's permission by downloading the Images and Videos from her iCloud.

239. Defendant Lindsey's intentionally interfered with Plaintiff Jane Doe's iPhone when he had her iPhone in his possession on January 27, 2025, when Defendant Lindsey unlawfully and without permission accessed and read Plaintiff Jane Doe's Instagram messages.

240. Further, Defendant Lindsey did not immediately return Plaintiff Jane Doe's iPhone when she repeatedly asked him to return it to her. In refusing to return Jane Doe's iPhone when she asked to have it back, Defendant Lindsey committed the tort of conversion.

241. Simply put, by wrongfully possessing Plaintiff Jane Doe's iPhone for the purpose of viewing and/or downloading Jane Doe's intimate Images and Videos, Defendant Linsey did not have a lawful or legitimate basis to ask for, posses, and use Plaintiff Jane Doe's iPhone on January 27, 2025.

242. Defendant Lindsey's above-described conduct resulted in the unlawful conversion of Plaintiff Doe's iPhone, iCloud and her Instagram account.

243. Defendant Lindsey's conduct caused Jane Doe to suffer harm to her personal property in the form of her iPhone, her iCloud account and the Images and Videos that she stored in a hidden folder on her iPhone and in her iCloud account.

WHEREFORE, Plaintiff Jane Doe demands that judgment be entered in her favor and against Defendant Nick Lindsey in an amount to be determined, plus costs, attorney's fees and punitive damages.

## Count IX – Defamation vs. Nick Lindsey

244. Plaintiff Jane Doe incorporates Paragraphs 1 through 134 as if fully set forth in this Count.

245. Defendant Lindsey has denied improperly accessing Plaintiff Doe's iPhone.

246. In particular he has denied accessing her hidden Images and Videos.

247. Defendant Lindsey has also denied downloading Plaintiff Doe's hidden Images and Videos from her iCloud account.

248. Against this backdrop, when Jane Doe informed Catherine Nienhouse-Lindsey and Robert Nienhouse that she heard Defendant Lindsey watching more than one of her intimate Videos, Defendant Lindsey defamed Jane Doe when he lied to Catherine Nienhouse-Lindsey and Robert Nienhouse and stated that Jane Doe was lying about the above events that took place on January 27, 2025.

249. Defendant Lindsey did not offer his mere opinion of the above events that took place on January 27, 2025. Rather, he denied the accusations, and called Plaintiff Jane Doe a liar – where Ms. Doe told Catherine Nienhouse-Lindsey and Robert Nienhouse that she overheard Defendant Lindsey repeatedly playing her intimate Videos.

250. Defendant Lindsey, by accusing Plaintiff Jane Doe of lying, falsely accused her of a crime and accused her of lacking integrity in performing her job.

251. Defendant Lindsey's denials were made to Catherine Nienhouse-Lindsey and Robert Nienhouse outside of the outside investigation that was ordered by Robert Nienhouse where attorney Julia Ross investigated Plaintiff Jane Doe's claims.

252. Alternatively, Defendant Lindsey cannot claim that his defamatory statements were privileged, where Defendant Nienhouse Group has refused to turn over the investigation report and interview notes prepared by attorney Julia Ross – where it appears that a sham investigation took place at the direction of Catherine Nienhouse-Lindsey and Robert Nienhouse.

253.     In telling Catherine Nienhouse-Lindsey and Robert Nienhouse that Plaintiff Doe has made false statements to them about what Mr. Lindsey did on January 27, 2025, Defendant Lindsey defamed Plaintiff Doe.

254.     In telling Catherine Nienhouse-Lindsey and Robert Nienhouse that Plaintiff Doe made false statements to them about what Mr. Lindsey did on January 27, 2025, Defendant Lindsey has caused Plaintiff Doe to suffer reputational harm.

255.     In telling Catherine Nienhouse-Lindsey and Robert Nienhouse that Plaintiff Doe has made false statements to them about what Mr. Lindsey did on January 27, 2025, Defendant Lindsey has committed the tort of defamation per se because he has essentially indicated that Plaintiff has made a false statement to her employer.

256.     Further, in telling Catherine Nienhouse-Lindsey and Robert Nienhouse that Plaintiff Doe has made false statements to them about what Mr. Lindsey did on January 27, 2025, Defendant Lindsey has committed the tort of defamation per se because he has essentially indicated that Plaintiff has made a false statement to law enforcement where Catherine Nienhouse-Lindsey and Robert Nienhouse know that Plaintiff reported Defendant Lindsey's conduct to local law enforcement.

257.     WHEREFORE, Plaintiff Jane Doe demands that judgment be entered in her favor and against Defendant Nick Lindsey in an amount to be determined, plus costs, attorney's fees and punitive damages.

## Count X – Intentional Infliction of Emotional Distress

258.     Plaintiffs Jane Doe and John Doe incorporate Paragraphs 1 through 134 as if fully set forth in this Count.

259.     Defendant Lindsey's above-described conduct was extreme and outrageous.

260.    Defendant Lindsey knew that the unlawful and non-consensual review, downloading and acquisition of Jane Doe's and John Doe's sexually explicit Images and Videos would cause Jane Doe and John Doe extreme embarrassment, humiliation and mental anguish.

261.    Further, Defendant Lindsey *lied* about his non-consensual review and acquisition Jane Doe's and John Doe's sexually explicit Images and Videos.

262.    Additionally, Defendant Lindsey unlawfully and without permission accessed and read Plaintiff Jane Doe's Instagram messages.

263.    Defendant Lindsey's conduct caused Jane Doe and John Doe to suffer extreme embarrassment, humiliation and mental anguish.

264.    Defendant Nienhouse Group, as Defendant Lindsey's employer, is vicariously liable for Defendant Lindsey's conduct because Defendant Lindsey lied about his conduct, and in doing so, his lies fall within the scope of his employment, where his lies were intended to minimize Nienhouse Group's liability for his misconduct.

265.    WHEREFORE, Plaintiffs Jane Doe and John Doe demand that judgment be entered in their favor and against Defendants Nick Lindsey and Defendant Nienhouse Group, Inc. in an amount to be determined, plus costs, attorney's fees and punitive damages.

**Count XI - Negligent Retention of Nick Lindsey vs. Versus Nienhouse Group, Inc.**

266.    Plaintiff Jane Doe and John Doe incorporate Paragraphs 1 through 134 as if fully set forth in this Count.

267.    Defendant Nienhouse Group, along with Robert Nienhouse and/or Catherine Nienhouse-Lindsey, hired Defendant Lindsey as an employee of Nienhouse Group.

268. Defendant Nienhouse Group, along with Robert Nienhouse and/or Catherine Nienhouse-Lindsey, entrusted Defendant Lindsey with comprehensive access to Nienhouse Group's computer systems and provided Defendant Lindsey with a position of trust within Nienhouse Group and its affiliated businesses, including, but not limited to CAM Systems and Trac Solutions.

269. Defendant Nienhouse Group, along with Robert Nienhouse and/or Catherine Nienhouse-Lindsey, had a duty to monitor, supervise and discipline Defendant Lindsey in relation to the manner in which Defendant Lindsey performed his duties.

270. Defendant Lindsey's above-described conduct was enabled and/or sanctioned by Defendant Nienhouse Group, by and through the conduct of Robert Nienhouse and Catherine Nienhouse-Lindsey.

271. In particular, Defendant Nienhouse Group, along with Robert Nienhouse and Catherine Nienhouse-Lindsey, knew that Defendant Lindsey would use his position to cause employees like Plaintiff to trust him with their personal devices and that employees like Plaintiff would likely provide Mr. Lindsey with access to their passwords if asked to do so by Defendant Lindsey.

272. As the employer and/or supervisors of Defendant Lindsey, Defendant Nienhouse Group, along with Robert Nienhouse and/or Catherine Nienhouse-Lindsey, are responsible for the actions of Defendant Lindsey. In particular, Illinois law permits recovery from employers whose negligent hiring, supervision, or retention of their employees causes injury to other employees where joint employers know or should have known that it has hired, retained or failed to reprimand an employee who injures another employee.

273. Defendant Nienhouse Group, by and through Robert Nienhouse and/or Catherine Nienhouse-Lindsey, knew that Defendant Lindsey was unfit to hold his position as an IT specialist for Defendant Nienhouse Group.

274. As the employer and supervisors of Defendant Lindsey, Defendant Nienhouse Group, along with Robert Nienhouse and/or Catherine Nienhouse-Lindsey knew that Defendant Lindsey's prior conduct would cause Jane Doe to suffer extreme embarrassment, humiliation and mental anguish.

275. Robert Nienhouse, as the founder and CEO of Nienhouse Group had the exclusive authority to hire, fire, retain and discipline Defendant Lindsey, but has refused to take any disciplinary action against Defendant Lindsey.

276. Catherine Nienhouse-Lindsey, as an employee of Nienhouse Group (with an human resources position with Nienhouse Group) had the exclusive authority to hire, fire, retain and discipline Defendant Lindsey, but has refused to take any disciplinary action against Defendant Lindsey.

277. Simply put, Defendant Lindsey is unfit to hold any position with Nienhouse Group, where a company performing the type of work that Nienhouse Group performs should not employee an IT person who unlawfully and without consent from a co-worker accesses a co-worker's hidden cache of intimate Images and Videos.

278. Plaintiff Jane Doe has suffered trauma and emotional distress as a result of Defendant Lindsey being retained by Nienhouse Group, Robert Nienhouse and Catherine Nienhouse-Lindsey, where the evidence of his guilt is overwhelming.

WHEREFORE, Plaintiff Jane Doe demands that judgment be entered in her favor and against Defendant Nienhouse Group, Inc. for an amount in excess of $500,000.00, plus costs, attorney's fees and punitive damages.

## **Jury Trial Demanded**

Plaintiffs hereby demand a jury trial.


Respectfully submitted,

/s/ James C. Vlahakis
James C. Vlahakis
Vlahakis Law Group LLC
20 N. Clark Street
Suite 3300
Chicago, IL 60602
312-766-0511
jamesv@vlahakislaw.com


*Counsel for Plaintiffs*
*Jane Doe and John Doe*

---

[i] To the extent the Court requests the filing of a marked-up version of this First Amended Complaint, Plaintiffs are happy to file a marked-up version or provide a copy to the Court.