IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jane Doe and John Doe, | |
| Plaintiffs, | No. 25-cv-04235 |
| v. | Judge Matthew F. Kennelly |
| Nienhouse Group, Inc. and Nick Lindsey, | Magistrate Judge M. David Weisman |
| Defendants. | |

**Plaintiffs' Combined Motion (A) to Strike Defendant Nienhouse Group, Inc.'s Untimely Discovery Objections, (B) to Compel The Production Of Insurance Policies and Responsive Documents (C) to Produce a Proper Privilege Log and (D) Permit Access to Data From Defendant Lindsey's iPhone and MacBook Computer**

NOW COME the Plaintiffs, Jane Doe and John Doe ("Plaintiffs"), by and through their counsel, James C. Vlahakis, and submit this Combined Motion (A) to Strike Defendant Nienhouse Group, Inc.'s Untimely Discovery Objections, (B) to Compel The Production Of Insurance Policies and Responsive Documents, (C) to Produce a Proper Privilege Log and (D) Permit Access to Data From Defendant Nick Lindsey's iPhone and MacBook Computer:

**I. Introduction**

1. On January 27, 2025, at around 3:00 p.m., Plaintiff Jane Doe provided her iPhone to Defendant Nick Lindsey (a co-worker) of Jane Doe's after Defendant Linsdey asked to use Jane Doe's iPhone to test a work-based application that Defendant Lindsey was working on for their employer, Nienhouse Group, Inc. ("Nienhouse Group"). In assuming that Defendant Linsdey had a legitimate work-based reason to request her iPhone, Jane Doe provided Defendant Lindsey with her passcode. Shortly thereafter, Defendant Lindsey informed Plaintiff that he needed to take her iPhone into a conference room to obtain better Wi-Fi connectivity. Jane Doe did not object to Defendant Lindsey's request, because he had previously used her

1

iPhone to test workplace applications.

2. As to their prior instances, Jane Doe presumed that Defendant Lindsey was conducting himself in an appropriate manner, but this time was different - because Jane Doe's AirPods were still connected to her iPhone, and she was horrified to hear Defendant Lindsey repeatedly playing certain intimate videos that she had stored in a passcode enabled folder within her iPhone. Defendant Lindsey returned Jane Doe's iPhone just before 5:00 p.m. on January 27, 2025.

3. The next day, Jane Doe submitted a written complaint to Robert Nienhouse (the CEO and founder of Defendant Nienhouse Group) and Catherine Nienhouse-Lindsey, Defendant Lindsey's wife, which is also the daughter of Robert Nienhouse, and employee who is tasked with human resource-based functions. According to Robert Nienhouse's May 16, 2024, email to all staff, Catherine was "taking on the role of Director of Administration" where Mr. Nienhouse went on to state that [t]his position entails the management of essential services that support the day-to-day operations of our company, including human resources[.]" Mr. Nienhouse went on to state that "[Catherine] is especially enthused about tackling the improvement of employee experience as part of her human resources duties." *See also* the screen capture of Robert Nienhouse's May 16, 2024, email on the following page:



4. On January 31, 2025, Robert Nienhouse wrote to Jane Doe to inform her that he has hired an outside lawyer to conduct an investigation. Jane Doe and Defendant Lindsey were interviewed separately by Julian Ross, outside lawyer, and because Defendant Lindsey denied Jane Doe's claims, Ms. Ross issued a report on March 7, 2025, which included the following "summary conclusion":

> *Based on witness interviews and review of the Company's internal policies, I am unable to determine whether Lindsey improperly accessed Diaz's personal cell phone, nor am I able to reach a conclusion as to whether Lindsey violated Company policies and procedures.*

5. The investigation report that Ms. Ross authored was not shared with Jane Doe's counsel, where Ms. Ross wrote the following to Jane Doe's counsel: "I cannot provide you, Ms. Diaz, or Mr. Lindsey with a copy of the report as it is protected by the attorney-client privilege and the work-product doctrine." Of course, if Nienhouse Group attempts to argue that this investigation report reflect that they properly responded to Jane Doe's January 28, 2025, complaint, any potential privilege will be waived.

6. Prior to issuing her conclusions, the outside lawyer had asked Jane Doe and her counsel if they would agree to a forensic examination of Jane Doe's iPhone to

allow the lawyer to locate proof of Defendant Lindsey's misconduct. While Jane Doe and her lawyer agreed to the proposed forensic examination, on February 26, 2025, Nienhouse Group, by and through Robert Nienhouse, declined to have a forensic examination take place. This timing is suspicious – where Apple, Inc.'s activity logs tend to overwrite after 30-days. Notably, Ms. Ross did not feel that an examination of Mr. Lindsey's devices was warranted where she wrote the following email on February 14, 2025:

> I have interviewed both your client and Nick Lindsey as part of my investigation into your client's allegations. Mr. Lindsey has denied all allegations against him. My next step in the investigation is to forensically image your client's phone. You previously inquired about forensic imaging Mr. Lindsey's phone. However, forensically imaging your clients phone would show whether or not certain apps/metadata were accessed during the relevant timeframe as well as whether any videos/photos/communications were sent from her device to any other device. Please let me know as soon as possible if your client will agree to a forensic imaging of her phone (which can be done remotely).

7. Shortly after Nienhouse Group declined to undertake a forensic examination, Jane Doe and John Doe retained Crowe LLP to conduct a forensic review of Jane Doe's iPhone in order to preserve forensic evidence before Apple Inc.'s activity logs were written over with the passage of time. Notably, the forensic review uncovered that certain intimate Images and Videos were downloaded from Jane Doe's iCloud account while her iPhone was in Defendant Lindsey's sole possessions – where prior to the downloads occurring, the Images and Videos at issue appeared in Jane Doe's hidden folders as thumbnails (partial Images and Videos).

8. In March of 2025, Plaintiffs' counsel reached out to Nienhouse Group's former counsel and Defendant Nick Lindsey's current counsel to see if either party was interested in a pre-suit resolution. In particular, Jane Doe's counsel indicated that a forensic examination of Jane Doe's iPhone located proof of Defendant Lindsey's egregious misconduct. Nienhouse Group's former counsel responded by stating that

4

Jane's Doe's counsel was "bluffing" and stated that Jane Doe should apologize to Defendant Lindsey for wrongfully accusing him of misconduct.[1]

9. As a result of this exchange, this lawsuit was filed on April 17, 2025.

## II. Relief Sought by This Motion

### A. To Strike Defendant Nienhouse Group, Inc.'s Untimely Discovery Objections

10. The undersigned represents that discovery was issued to all Defendants on May 30, 2025. Nienhouse Group, however, did not answer discovery until July 18, 2025, and when it did, it was replete with boilerplate objections, and no responsive documents have been produced as of the date of this Motion. *See* **Exhibit A** (Answers to Interrogatories) and **Exhibit B** (Response to Requests For Production). When a party fails to respond to interrogatories and requests for documents by the 30-day deadlines set by FRCP 33 and FRCP 34, and fails to seek an extension of time to respond (as is the case here) untimely objections are waived. As explained by one court:

> It is apparent that the City adopted an ill-advised strategy to avoid providing any information or documentation while seeking neither an extension of time nor a protective order, by objecting to everything in order to toss the burden back on the plaintiff to obtain any real information. This gamesmanship is antithetical to the principles of discovery under the Federal Rules. The result is that the City's responses are, in fact, nonresponses. Accordingly, the City's "Legal Objections" are stricken, and the City shall answer the interrogatories and produce the requested documents by October 27, 2003.

*Hobley v. Burge*, 2003 U.S. Dist. LEXIS 18363 at *6, 2003 WL 22359520 (N.D. Ill. Oct.

---

[1] These communications are not protected from disclosure by FRE 408, where "Rule 408 *creates a narrow exclusion from admissibility* as evidence." *Polyone Corporation v. Lu*, 2015 U.S. Dist. LEXIS 172924, 2015 WL 9489915, at *4 (N.D. Ill. Dec. 30, 2015) (emphasis supplied). Further, a statement will be inadmissible under Rule 408 *only where* there is a "substantial showing that [the statement] was part of a settlement attempt" and the statement *would be used to establish a claim*. *New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1482 (7th Cir. 1990). *See also, Steele v. Lincoln Financial Group*, 2007 U.S. Dist. LEXIS 25587 at *11, 2007 WL 1052495 (N.D. Ill. April 3, 2007) ("Even under Rule 408, Federal Rules of Evidence, settlement discussions between the parties to the litigation may be admissible so long as they are not used to prove liability.") (citing *Bankcard America, Inc. v. Universal Bancard Systems, Inc.,* 203 F.3d 477, 483-484 (7th Cir. 2000)).

14, 2003). *See also, Hobley v. Burge,* 2003 U.S. Dist. LEXIS 20585 at *9 Fn2, 2003 WL 22682362 (N.D. Ill. Nov. 10, 2003) ("While Rule 34 does not contain an express provision for waiver of objections not timely made, failure to respond to a document request subjects the party to sanctions under Rule 37(d). Furthermore, courts have interpreted Rule 34 as containing an implicit waiver provision to parallel the express provision of Rule 33(b)(4) so that the discovery rules are read as an integrated mechanism.").

11. Just like in *Hobley*, Defendant Nienhouse Group allowed the applicable due dates to pass *without* seeking an extension from Plaintiffs' counsel or the court. Abd to be clear, Defendant Nienhouse Group was aware of the importance of the timing of its discovery responses, where it responded to Plaintiff Jane Doe's requests for admission on June 30, 2025.

12. The court in *Hobley* was critical of the defendant's use of generalized objections – holding as follows:

> The City objected to producing any documents relating to any internal investigation undertaken by the police department in connection with the events described in the complaint on a variety of boilerplate and generalized grounds including "irrelevant" and "not reasonably calculated to lead to discoverable evidence." (City's Resp. Doc. Req. 19.) It is well-settled that general objections are insufficient to voice a successful objection. Furthermore, the request described above appears directly calculated to lead to admissible evidence. The City's responses are replete with such generalized, boilerplate, and inapplicable objections. See, e.g., the City's objection to Interrogatory 12 seeking the identity of persons responsible for responding to plaintiff's requests for medical attention during his custody by Chicago police officers, that the interrogatory is "vague, ambiguous, overly broad, unduly burdensome, is not reasonably calculated to lead to discovery of admissible evidence and calls for a legal conclusion."
> ***
> The foregoing are only representative examples of the City's responses, the balance of which are similar. It is apparent that the City adopted an ill-advised strategy to avoid providing any information or documentation while seeking neither an extension of time nor a protective order, by objecting to everything in order to toss the burden back on the plaintiff to obtain any real information. This gamesmanship is antithetical to the principles of discovery under the Federal Rules. The result is that the City's responses are, in fact, non-

>responses. Accordingly, the City's "Legal Objections" are stricken, and the City shall answer the interrogatories and produce the requested documents by October 27, 2003.

*Hobley*, 2003 U.S. Dist. LEXIS 18363 at *4-*7 (citation omitted).

13. *Hobley* was critical of the fact that the defendant did not provide answers to certain interrogatories:

>In response to Interrogatory 1, requesting information about the persons who participated in answering the interrogatories, the City objected to identifying which person answered which interrogatory as "unduly burdensome." However, it failed to answer the interrogatory to the extent not objected. Cf. Fed. R. Civ. P. 33(b)(1): "The objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." Notwithstanding its failure to provide any answer to the interrogatory, the City closed its response to the interrogatory by stating, "This defendant reserves the right to supplement this interrogatory answer upon the discovery of additional information." The City's responses to Interrogatories 2, 3 and 13 are similar in not providing information but reserving a "right" to "supplement." The City ignores the obligation of each party to make a reasonable inquiry and answer fully in responding to discovery, as well as the fact that seasonable supplementation of discovery responses is an obligation, not a right that the City may exercise at its discretion. Fed. R. Civ. P. 37(a)(3) and 26(g)(2) and (e).

*Hobley*, 2003 U.S. Dist. LEXIS 18363 at *3-*4.

14. Defendant Nienhouse Group has taken a similar approach with its generalized objections to Interrogatory Nos. 2, 7, 8, 13 and 14 (Exhibit A), where they have failed to provide any *substantive* answers. Further, Nienhouse Group has violated clear law by stating that Plaintiffs should *depose* unnamed persons – rather than responding to the interrogatories that were propounded. See Exhibit A, Answers to Interrogatory Nos. 2, 7, 8, 13 and 14.

15. This type of non-responsive interrogatory answer is improper, where a responding party *cannot* dictate the manner in which it prefers to answers to interrogatories – by suggesting depositions are a better fit. As one court has held:

>Before the Court considers Choice's challenges to particular interrogatory responses, it must address Choice's arguments regarding the form of Contec's supplemental interrogatory responses. Specifically, Choice asks the Court to require Contec to provide narrative interrogatory responses and, if Contec

> cites documents under Federal Rule of Civil Procedure 33(d), to provide specific pin cites to business records. Choice requests such an order because Contec's responses to other interrogatories in this case include general citations to deposition transcripts or declarations.
>
> Contec does not dispute that it has responded to interrogatories in this manner. To the contrary, Contec highlights its response to Interrogatory No. 13, in which Contec incorporated by reference its response to another interrogatory, as well as certain pages of deposition testimony from two witnesses. But Contec contends that it should not be made to expressly describe this information (and other responsive information Choice obtained through different modes of discovery) in its interrogatory responses because Choice can identify this information for itself.
>
> Contec's position is unpersuasive. An interrogatory response generally should be complete in and of itself and stand on its own. That means the response should not refer to "pleadings, depositions, other documents, or other interrogatories, especially when such references make it impracticable to determine whether an adequate answer has been given without [a] cross-checking comparison of answers." Accordingly, it is improper to answer an interrogatory by incorporating by reference deposition testimony or a response to another interrogatory. In short, Choice "is entitled to discover the factual basis for [Contec's] claims through the use of interrogatories, without being referred to . . . deposition testimony [or] other discovery materials."
>
> Furthermore, Contec cannot refuse to substantively respond to an interrogatory simply because the interrogatory seeks information that has been provided elsewhere in the case through other discovery methods, such as a deposition. "It is long standing and well-settled that methods of discovery are complementary, rather than alternative or exclusive."
>
> ***
>
> Contec must supplement any interrogatory response required by this opinion and order with a narrative response; it may not incorporate by reference other interrogatory responses, deposition testimony, or documents except to the extent permitted by Rule 33(d).

*Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA, Inc.*, 2020 U.S. Dist. LEXIS 61634, 2020 WL 1701861 (N.D. Ill. April 8, 2020) (citations omitted). *See also, Restoration Specialists, LLC v. Hartford Fire Ins. Co.*, 2012 U.S. Dist. LEXIS 204129 at *4, 2012 WL 13064230, at *1 (N.D. Ill. Aug. 1, 2012) ("The objection that the interrogatory calls for a "narrative" response better left to a deposition is <u>not</u> proper".) (emphasis supplied). Similarly, the court in *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175 (7th Cir. 1987) analyzed an appeal involving the dismissal of a

complaint for failing to respond to discovery, where the attorneys for the party at issued provided the following interrogatory answers: "Objection. This question calls for a narrative response more properly the subject of a discovery deposition". *Id.* According to the court, "[w]e agree with the district court that these answers are "incomplete and evasive."

16. For these reasons, consistent with and the authorities cited by *Contec*, where Defendant Nienhouse Group has waived any objections by its untimely answers, this Honorable Court should order Nienhouse Group to fully answer Interrogatory Nos. 2, 7, 8, 13 and 14 by a date certain. Plaintiffs also as that this Court hold that until Nienhouse Group complies with its discovery obligations, it should not be entitled to issue its own discovery to Plaintiffs.

17. For the sake of clarity, Plaintiffs have scheduled a LR 37.2 conference for August 7, 2025, to cause Defendant Nienhouse Group to provide amended answers to other non-responsive interrogatories Nos. 4, 5-6, 11, 12, 15, 17 and 19 - where Plaintiffs sent a LR 37.2 letter to Defendant on July 1, 2025. Yes, it has taken *this long* for defense counsel to agree to a LR 37.2 conference to discuss the above listed interrogatories.

### B. Compelling the Production Documents and Insurance Policies

18. As of the filing of this Motion, Defendant Nienhouse Group has not produced a *single* responsive document, where many of its responses to Jane Doe's Rrequest For Production of Documents contain the same boilerplate/placeholder responses:

> Investigation continues and this defendant reserves its right to supplement this response in accordance with its review of forensic inspection materials produced.

*See* Exhibit B, Def's Response to Request For Production Nos. 1, 5, 6, 19, 20, 30, 31,

32, 33 and 43. As explained in the above discussion of the *Hobley* case, a party's use of boilerplate objections as ruse to buy more time to locate and produce responsive documents is improper. What is especially vexing is that since Defendant issued its untimely response on July 18, 2025, it has not produced a single document. This is inexplicable, where this matter was first brought to its attention on January 28, 2025.

19. Defendant Nienhouse Group has also not provided any insurance policies despite the mandatory nature of FRCP 26(a)(1)(A)(iv) and the fact that an insurance coverage dispute exists in this case[2]. Accordingly, Nienhouse Group should be ordered to immediately produce all applicable insurance policies.

### C. Defendant Privilege Log Does Not Comply With Applicable Law

20. Finally, Defendant Nienhouse Group's Privilege Log (**Exhibit C**) does not comply with the level of specificity that is required by case law, where privilege logs should be detailed enough to enable other parties to assess the applicability of the privileges asserted. *See, e.g., RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013). As explained by RBS Citizens, a privilege log should contain the following:

> a. the name and capacity of *each individual* from whom or to whom a document and any attachments were sent (including carbon copied recipients);
> b. the date of the document *and any attachments*;
> c. the *type* of document;
> d. the *Bates numbers* of the documents,
> e. the nature of the privilege asserted; and
> f. a description of the subject matter in sufficient detail to determine if legal advice was sought or revealed, or if the document constitutes work product.

---

[2] An eleven (11) page coverage letter dated June 18, 2025, was produced by counsel for Robert Nienhouse and Catherine Nienhouse-Lindsey, who are no longer defendants to this civil action. The coverage letter was addressed to Robert Nienhouse and sent to one of Nienhouse Group's offices.

21. Plaintiffs' counsel alerted Nienhouse Group's counsel of its improper privilege long on July 1, 2025, pursuant to a LR 37.2 letter. Nienhouse Group's Privilege Log does not comply with the first item listed above because no carbon copy recipients are noted, and data produced by Defendant Nick Lindsey reflects that he was a recipient of communications from Nienhouse Group's outside counsel, but his name is not listed as a recipient of any logged documents.

22. Nienhouse Group's Privilege Log does not comply with the second item listed above (bullet point b) because while the date of communications is noted, the Log does not list *any* attachments. For example, if Ms. Ross attached certain non-privileged documents in her communications with Robert Nienhouse or vice-versa, the attachment should be logged *or produced* – if the attachments themselves are no privileged. In particular, no entry identifies the production of the written report that Ms. Ross issued to Mr. Nienhouse. More on this below – where the report that Ms. Ross issued may not be entitled to any attorney-client or work product protection.

23. Nienhouse Group's Privilege Log does not comply with the third item listed above (bullet point c) because the Log does not identify the *type* of document that is being withheld.

24. Nienhouse Group's Privilege Log does not comply with the fourth item listed above (bullet point d) because the Log does not contain any Bates numbers.

25. Nienhouse Group's Privilege Log does not comply with the fifth item listed above (bullet point e) because *every* entry contains what appears to be a catch-all/boilerplate invocation of "Attorney Client Privilege and Work Product Doctrine". This catch-all/boilerplate designation is improper because it does work product designation should not apply communications *made by* Robert Nienhouse *to* attorney Julia Ross.

26. Nienhouse Group's Privilege Log does not comply with the sixth item

11

listed above (bullet point f) because the overly bare-bones nature of the Log does not contain description of the subject matter in sufficient detail to determine if legal advice was sought or revealed, or whether a document or communication constitutes work product.

27. Notably, just because Ms. Ross is an attorney does not mean that any privilege applies. Further, if the Privilege Log is updated to include communications involving attorney Julia Ross, Robert Nienhouse *and* Nick Lindsey (the person that Ms. Ross was investigating), no privileges should apply to any such communications.

28. Finally, Nienhouse Group has objected to certain interrogatory answers by invoking a spousal/marital privilege – *without logging* any such communications:

> to the extent this interrogatory seeks information relating to communications between Defendants Catherine Nienhouse-Lindsey and Nick Lindsey, any such information is protected by marital communications privilege.

Exhibit A, Ans. to Interrogatory Nos. 1, 2, 9, 16 and 19.

29. This is a misplaced objection, where Nienhouse Group has previously stated that Catherine Nienhouse-Lindsey *is a member of its human resources department*, despite it claiming in response to Interrogatory No. 16 that "Catherine is not a member of the human resources department." Catherine's status as a member of Nienhouse Group's human resources department is *disputed* - see Par. 3 of this motion.

30. While Jane Doe cannot reconcile Nienhouse Group's answer to Interrogatory No. 16 with what Robert Nienhouse wrote on May 16, 2024, *if* Catherine *is* a member of (or has a supervisory role relative to) Nienhouse Group's human resources department, and she spoke with Nick Lindsey about Jane Doe's January 28, 2025 complaint, Nienhouse Group cannot cloak her communications with her husband under the spousal privilege, where doing so would frustrate the discovery

12

process. Simply put, while Nienhouse Group *may not recognize* the inherent conflict of interest that exists under these circumstances, it should not be allowed to insulate Catherine and Nick's communications from discovery.

31. Despite repeated written requests for the submission of an updated Log on July 1, 2025, July 14, 2025, July 16, 2025, July 18, 2025, July 22, 2025, July 25, 2025, July 29, 2025, and July 30, 2025, Nienhouse Group has failed to issue a properly updated Privilege Log.

32. Nienhouse Group should be ordered to immediately produce an updated Privilege Log to cure the above noted missing information.

### D. **Permit Access to Data From Defendant Lindsey's iPhone and MacBook**

33. As this Court is aware, it entered a Forensic Protocol (Dkt. 43) which was negotiated by the parties to extract, analyze and produce forensic data from Defendant Lindsey's cellular devices that are identified in Paragraph 3 of Dkt. 43. Paragraphs 5-12, 14-16 and of Dkt. 43 describe what the vendor was required to do. To date, the raw/underlying forensic data that was extracted from Defendant Lindsey's cellular devices has not been shared with counsel for Plaintiffs. While certain data has been produced under the guise of *exculpatory* data, after a lengthy (but productive) video-based Local Rule 37.2 conference on July 23, 2025, Plaintiffs' counsel and Defendant Nick Lindsey's counsel have agree that the raw data that was extracted from Defendant Lindsey's iPhone should be shared with Plaintiffs' expert (Crowe LLP) to allow Plaintiffs' expert to analyze the this data – where certain inferences may be drawn from this data.

34. Simply put, while Plaintiffs' expert has read certain data on Jane Doe's iPhone to conclude that Defendant Lindsey accessed Jane Doe's intimate Images and Videos (consistent with what Jane Doe observed when her iPhone was in Defendant Lindsey's possession, and consistent with how her iPhone was returned to her), counsel

13

for Defendant Lindsey's counsel has denied that Mr. Lindsey viewed, AirDropped and/or otherwise downloaded any of the intimate Images and Videos from Jane Doe's iPhone.

35. Accordingly, to help resolve this issue, Plaintiffs' counsel and Defendant Nick Lindsey's counsel are in agreement that the raw data that was extracted from Defendant Lindsey's iPhone should be shared with Plaintiffs' expert. The only wrinkle is that Defendant Nick Lindsey's counsel believes that Defendant Nienhouse Group is required to approve this transfer to data – where Defendant Lindsey's iPhone is purportedly the property of Defendant Nienhouse Group.

36. Unfortunately, despite repeated requests on July 23, 2025, July 25, 2025, July 28, 2025, July 29, 2025, and July 30, 2025, counsel for Nienhouse Group has not agreed to the proposed transfer of raw data from the iPhone at issue. Consistent with FRCP 1, which provides that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding", this highly relevant and proportional data[3] should be promptly shared with Plaintiffs' expert.

37. At the same time, Plaintiffs' counsel and Defendant Lindsey's counsel are in agreement that it would help resolve the dispute over what happened to Jane Doe's iPhone when it was in Nick Lindsey's possession on January 25, 2025, if the subject MacBook[4] were to be examined by Plaintiffs' expert. Similar to Defendant Lindsey's iPhone, his counsel has indicated that Defendant Nienhouse Group needs to sign off on

---

[3] See FRCP 16(b)(1) which provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

[4] The MacBook was identified by Defendant Lindsey as part of the protocol set forth by Paragraph 4 of Dkt. 43. See Exhibit E (Declaration of Nick Lindsey dated June 20, 2025).

this tender, where the MacBook is purportedly the property of Nienhouse Group.

38. Time is of the essence, where no forensic copy of the MacBook has taken place, and with the passage of time, important and relevant data can be lost, overwritten and/or deleted.

39. Despite repeated requests, counsel for Defendant Nienhouse Group has not agreed to have the MacBook at issue examined by Plaintiffs' expert. Consistent with FRCP 1 and 26, Defendant Nienhouse Group should be ordered to turn over the MacBook to allow Plaintiffs' expert to make a forensic image of it – where the imaging would be shared with Defendants, consistent with Paragraphs 14 and 17 of Dkt. 43.

### III. Conclusion and Request For Legal Fees

40. For the reasons set forth above, Defendant Nienhouse Group to pay all legal fees incurred in drafting this motion and all other communications related to Defendant's deficient discovery responses.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an order (A) to striking Defendant Nienhouse Group, Inc.'s untimely discovery objections, (B) to compelling the immediate production of insurance policies and responsive documents, (C) to requiring Defendant Nienhouse Group to promptly produce a revised Privilege Log, (D) permitting Plaintiffs' expert access to data from Defendant Nick Lindsey's iPhone and MacBook, and (E) requiring Defendant Nienhouse Group to pay all legal fees incurred in drafting this motion and all other communications related to its deficient discovery responses and its failure to agree to turn over the data from Defendant Nick Lindsey's iPhone and allow his MacBook computer to be forensically examined.

Respectfully submitted,

/s/ James C. Vlahakis

Vlahakis Law Group LLC
20 N. Clark Street Suite 3300
Chicago, IL 60602
312-766-0511
jamesv@vlahakislaw.com

*Counsel for Plaintiffs*