IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jane Doe and John Doe,<br><br>  Plaintiffs,<br><br> v.<br><br>Nienhouse Group, Inc. and Nick Lindsey,<br><br>  Defendants. | No. 25-cv-04235<br><br>Judge Matthew F. Kennelly |

**Plaintiffs' Reply in Support of Their Motion to Permit Access to
Data From Defendant Lindsey's iPhone and MacBook Computer**

NOW COME the Plaintiffs, Jane Doe and John Doe ("Plaintiffs"), by their counsel, James C. Vlahakis, and submit this Reply in support of the Motion to Permit Access to Data From Defendant Nick Lindsey's iPhone and MacBook (Dkt. 60):

1.   Defendant Nienhouse Group, Inc. responded to Plaintiff's Motion on today's date (Aug. 5, 2025), by *agreeing* to produce the raw data related to Defendant Lindsey's work-issued iPhone. In doing so, Nienhouse Group *did not respond* to Plaintiffs' request for a forensic review of Defendant Lindsey's work-issued MacBook:



1

2. This was a curious *omission* where the above email reflects that Nienhouse Group finally *agreed* to take the following actions that were at issue in Plaintiffs' Combined Motion: (a) produce the applicable insurance policy, (b) producing a privilege log that properly complies with the type described by Plaintiffs' Combined Motion and (c) agreeing have a Local Rule 37.2 call on Friday, August 8, 2025.[1]

3. While agreeing to take these steps addresses most of the items sought by Plaintiffs' Combined Motion, the reason why Nienhouse Group flat-out ignored Plaintiffs' request that they be allowed to examine Defendant Lindsey's work-issued MacBook that became apparent a few minutes later. At 2:21 p.m., counsel for Defendant Lindsey was the first to break some rather extraordinary news – involving a vital piece of evidence that Defendant Lindsey's counsel was wiling to turn over. Defendant Lindsey's MacBook was purportedly stolen on August 4, 2025:



4. The purported theft of a relevant piece of evidence is an extraordinary development, because Defendant Lindsey's counsel has recently indicated to Plaintiffs'

---

[1] To be clear, as of this filing, Nienhouse Group has **not** responded to Plaintiffs' argument that Nienhouse Group waived all objections by not submitted timely objections, nor has Nienhouse Group indicated when it will finally start to produce responsive documents – where it has produced no documents despite being served with discovery on May 30, 205.

counsel that (a) potentially exculpatory data was located on this particular device – (b) but that Defendant Lindsey's counsel needed Nienhouse Group's permission *before* the MacBook was forensically examined by Plaintiffs' expert. The email string between counsel for Plaintiffs, Nick Lindsey and Nienhouse Group is attached as Exhibit 1.

5.   Moreover, the purported theft of a relevant piece of forensic evidence helps underscore why the Does sought prompt judicial relief from this Court where they reasonably feared that the Defendants were allowing the passage of time and circumstances beyond anyone's' control to impact the availability of relevant data. For example, during the first hearing before this Court on May 25, 2025, counsel for the Does had the following exchange with the Court – where Doe's counsel was *attempting* to express his concern that relevant data could be over-written with the passage of time:

> **THE COURT**: What are the devices that you believe need to be inspected? Aside from your own client's device, I'm talking about the ones that you're concerned that something may have been forwarded or downloaded on?
>
> **MR. VLAHAKIS**: Thank you. Mr. Lindsey's personal devices. I've been told by his counsel that he has an iPhone and either a Galaxy or a Samsung device, and if he potentially has a laptop, that's what we'd like to see because that's where he probably forwarded the items to.
>
> **THE COURT**: If he forwarded them, that's what he likely forwarded them to.
>
> **MR. VLAHAKIS**: And my clarification point was that my client already had a forensic examination of her phone.
>
> **THE COURT**: I got that from your motion.

Exhibit 2, May 25, 2025, transcript at p. 7, lines 21-24, p. 8, lines 5-14; Exhibit 3, June 10, 2025, transcript at p. 7, lines 14-25, p. 8, lines 1-16. Thereafter, the Court recognized this case involved a "fraught situation" for Jane Doe but cautioned Does' counsel "to stop freaking out." Exhibit 2 at p. 9, lines 15-23. The Court continued by saying the following to all counsel, where the Court recognized that this case appeared to be in a problematic trajectory:

3

> **THE COURT**: Part of the message that I want to get across today is everybody needs to calm down. It's a lawsuit. You all have a job to do. You're all going to do your job.
>
> But here's the other problem is that now you've all gotten my attention. It's not necessarily a good thing. Because, you know, an average judge around here has about 300 civil cases. I think I got about 275 or something like that. At any given time, there's usually three that are problems. You guys have become one of the three, and usually it takes
> like six or eight months to get on that list. I know this one is going to be a problem because I have stuff flying back and forth real fast.

Exhibit 2, May 25, 2025, transcript at p. 9, line 25, p. 10, lines 1-11.[2]

    6.    Next, the Court instructed the parties to work together on an forensic protocol, as risk of the Court taking matters into its own hands (literally):

> **THE COURT**: I'm going to put a deadline on you with coming up with an agreement, not on everything, but just on forensic inspection of the particular defendants' devices. And the deadline's going to be you have to have an agreement on that ten days from now or I'm going to impose an agreement on you. Probably what I'm going to do is tell you to bring them into court and I'm just going to grab them, and I'm going to hold on to them until you have it figured out.
>
>                                \*\*\*
>
> So ten days means basically -- what's today? – that basically means -- I'm going to say the 3rd of June. By the 3rd of June, the parties need to submit either a draft order with a protocol for forensic inspection of the defendants'
> devices at issue and you will figure out what "at issue" means or competing proposals.

Exhibit 2, May 25, 2025, transcript at p. 10, lines 12-25, p. 11, lines 1-12.

    7.    Plaintiffs' counsel heeded the Court's above admonishments by allowing the forensic review of Defendant Lindsey's three cellular devices to be imaged and examined by Nienhouse Group's chosen vendor, where Defendant Lindsey's counsel has informed Plaintiffs' counsel that the vendor at issue is one that frequently works with the defense firm that is representing Nienhouse Group.

    8.    During the June 10, 2025, hearing, the Court was informed of a dispute between Plaintiffs and Defendants where Plaintiffs wanted all devices used by Defendant

---

[2] Respectfully, Plaintiffs believe that the alleged theft of the MacBook reflects a "problem" that was not caused by Defendant Linsey and defense counsel who failed to secure this device.

4

Lindsey to be examined – where Defendants were only wiling to agree to have Defendant Lindey's cellular devices examined[3]. Here is how the dispute was summarized by the Court, with counsel providing their concurrence and commentary:

> **THE COURT**: Okay. So on the question of forensic inspection of devices, and I'm using that -- a broad term -- a vague term on purpose, if I'm understanding the redlining right, and this is on docket number 35-1, where there's some -- where there's a part that's redlined, it's just one issue, it looks like. It just has to do with whether it's the iPhone, the Android phone, and the Samsung phone, or whether it's that plus other things.
>
> **MR. VLAHAKIS**: That is correct, your Honor.
>
> **THE COURT**: There's no issue about timing of when this happens?
>
> **MR. VLAHAKIS**: No, your Honor.
>
> **THE COURT**: Okay.
>
> **MR. FRENCH**: Your Honor, may I qualify that?
>
> **THE COURT**: Yeah.
>
> **MR. FRENCH**: Yates French on behalf of Nick Lindsey. I generally agree. What I would say is while the forensic protocols have largely been agreed to, setting aside the custodial devices that we use, the scope of the collections and productions is still open.
>
> **THE COURT**: What do you mean by that?
>
> **MR. FRENCH**: I mean I've been served with 104 discovery requests, your Honor –
>
> **THE COURT**: I'm just talking about the forensic inspection.
>
> **MR. FRENCH**: In that case, I agree with opposing counsel.
>
> **THE COURT**: Okay. So it's not a question of when it's going to happen, it's not a question of the phones; it's a question of other devices. And the reason that you've got this paragraph in here, 3B, which is the redlined paragraph that has all these X, X, Xs, and then is -- you don't know what other devices there are, I take it?
>
> **MR. VLAHAKIS**: That's correct, your Honor. Technically speaking, however, paragraph 4 might be changed, depending on if you grant the relief we want, which is –
>
> ***
>
> **THE COURT**: Yeah. So how are you -- how are you proposing -- how are or were

---

[3] Notably, at the time of this hearing, counsel for Defendant Lindsey should have known what Mr. Lindsey used his company issued MacBook to interact with Jane Doe's iPhone on January 25, 2025.

5

>you proposing to figure out what other devices would be included besides the three phones?
>
>**MR. VLAHAKIS**: That is up to the defendants.
>
>**THE COURT**: No, it's actually up to me.
>
>**MR. VLAHAKIS**: Oh, correct.
>
>**THE COURT**: Just saying.
>
>**MR. VLAHAKIS**: They have not identified potentially what that universe is in D.
>
>**THE COURT**: That is my question. How are you figuring on -- how are you figuring on planning it out? Have you served a discovery request? Have you asked or -- what have you done?
>
>**MR. VLAHAKIS**: Well, because -- paragraphs 3A, B, and C, they volunteered to identify that information pursuant to the protocol we were putting together. I had asked for the identification of the other items not knowing exactly what he had.
>
>**THE COURT**: Yep.
>
>**MR. VLAHAKIS**: ==I do believe he may have a MacBook or a Chromebook==.
>
>**THE COURT**: You asked for -- there's an "and" in there somewhere, so let's get to the "and."
>
>**MR. VLAHAKIS**: ==And they did not identify those items== –
>
>**THE COURT**: So now we're back to my question. Then how were you proposing to figure out what else there is?
>
>**MR. VLAHAKIS**: ==They know, defense counsel knows== –
>
>**THE COURT**: Is it a discovery request? Is it a sharply worded letter? Is it a ask and meet -- tell them to tell you? Is what -- what is it? How are you going to find out? They're not telling you right now, so how are you going to find out? What are you going to do?
>
>**MR. VLAHAKIS**: By asking this Court because I thought, pursuant to –
>
>**THE COURT**: Okay. So you're asking me to tell them to tell -- to identify any devices –
>
>**MR. VLAHAKIS**: Yes[.]

Exhibit 3, June 10, 2025, transcript at p. 3, lines 20-25, p. 4, lines 1-25, p. 5, lines 1-25, p. 6, lines 1-6 (emphasis supplied). Despite mentioning the existence of a MacBook,

6

defense counsel did not confirm or deny that this device was relevant to this case.

9. In a later exchange, the Court and Plaintiffs' counsel had the following exchange, where Plaintiff's counsel explained why the identification and examination of the additional devices used by Defendant Lindsey (in addition to his cellular phones was essential to preserve relevant data:

> **THE COURT**: Okay. I have a second question. I'm going to ask everybody, but you can answer first. Apologies for my ignorance here. When somebody does a forensic inspection of, let's say, an iPhone, if they – file has been -- if a file has downloaded on the iPhone, let's say a picture, and then sent somewhere, does the forensic inspection tell you that?
>
> **MR. VLAHAKIS**: Not necessarily, and here's why if you'd like me to explain why.
>
> There are activities logs in an iPhone that can get overwritten over time. What had happened in this case is when this event took place on January 27 –
> **THE COURT**: If this is going to go into a discussion of the defendants or the Princes of Darkness, let's skip over that, and let's just get to the -- let's just get to the answer of my question.
>
> **MR. VLAHAKIS**: It's not.
>
> **THE COURT**: Okay.
>
> **MR. VLAHAKIS**: I would like to be -- have this information secured as soon as possible to prevent anything from being overwritten pursuant to either software updates –
>
> **THE COURT**: Okay. So the concern is -- so the answer to my question, forensic inspection, yes, theoretically does identify whether a file has been sent from this device to some other device, but it's possible that the log of that could be overwritten over time.
>
> **MR. VLAHAKIS**: Correct. The longer we wait, the bigger chance that information -- vital information is lost.

<u>Exhibit 3</u>, June 10, 2025, transcript at p. 7, lines 14-25, p. 8, lines 1-16.

10. Next, the Court had the following exchange with Defendant Lindsey's counsel – who generally agreed with Plaintiffs' counsel's concerns over lost data:

> **THE COURT**: Do you agree or disagree?
>
> **MR. FRENCH**: Yes.
>
> **THE COURT**: Okay. That's a fair answer.

7

Exhibit 3, June 10, 2025, transcript at p. 8, lines 17-19.

11. Lindsey's counsel also conceded that "[i]t's easy to refer to a MacBook". *Id.* at p. 8, line 22.

12. In light of the Court's above-quoted comments, it appears Defendant Lindsey's counsel recognized the importance of the preservation of Mr. Lindsey's cellular phones where he indicated on the record that two of the devices were powered off on stored at his office. See Exhibit 3, June 10, 2025, transcript at p. 9, lines 6-15.

13. Ultimately, Defendant Lindsey's counsel stated that he had promptly secured two of the three cellular devices used by Defendant Lindsey, *but that he had yet to secure Mr. Lindsey's work-issued MacBook* (which was allegedly stolen on Aug. 5th):

> **MR. FRENCH**: I'm a hundred percent buttoned up on the iPhone and the Samsung phone he had at the time of the alleged conduct.
>
> My understanding is the third mobile device is a Samsung phone, which was acquired afterwards in part so that he would have something to use while his other devices sat in my office. And I have -- I'm able to confirm that with my client.
>
> But with the two most key devices, they're turned off. They're sitting in a locked drawer in my office.
>
> That is not the case for his personal iPad, his MacBook.

See Exhibit 3, June 10, 2025, transcript at p. 10, lines 3-13 (emphasis supplied).

14. Defendant Lindsey's counsel recognized (as was later confirmed by Lindsey's other counsel – Jim Scales) that the inspection of Defendant Lindsey's devices may point to other devices that should be examined – such as the MacBook – which was identified by Mr. Scales as a relevant piece of evidence by Defendants vendor:

> **MR. FRENCH**: In my opinion, discovery works best when there's an order of operations dictating the sequence. Let's start with the low hanging fruit. Let's see what's on the phones. *Let's see if it gives any good-faith basis to identify other devices*, starting at the finish line and saying every device in his possession of any type has to be forensically examined. It's costly. It's burdensome.

8

See Exhibit 3, June 10, 2025, transcript at p. 12, lines 2-9 (emphasis supplied). Despite being in a perfect position to *know* that Defendant Lindsey used his work-issued MacBook when he interacted with Jane Doe's iPhone on January 27, 2025, defense counsel attempted to downplay this knowledge by suggesting that it was up to Plaintiffs' counsel to make a case for examining this device.

15. The Court responded to Lindsey's counsel's comments by ordering Defendants to identify Lindsey's other devices by a date certain – where – as discussed in Paragraphs 8, 11, 13, 16 and 17 of this Reply, *Lindsey's counsel knew that the MacBook was highly relevant to a forensic examination*:

> **THE COURT**: Okay. That's not a bad point. So but why shouldn't I tell you that you've got to identify everything he's had from January the 27th of 2025 to now?
>
> **MR. FRENCH**: I don't object to that, your Honor.
>
> **THE COURT**: How quick can you do it?
>
> **MR. FRENCH**: I don't know, but I anticipate quickly; within a -- certainly less than a week.
>
> **THE COURT**: Something like that. Yeah. Okay.

See Exhibit 3, June 10, 2025, transcript at p. 12, lines 9-16.

16. Thereafter, the Court indicated that it was not requiring a forensic examination of the MacBook that was identified in Paragraph 3-D of Dkt. 35-1, where Plaintiffs' proposed redline included a reference to Defendant Lindsey's MacBook. Ex. 3, June 10, 2025, trans. at p. 12, lines 17-25, p. 13, lines 1-7, 25, p. 14, lines 1-5.

17. To be clear, Lindsey's use of the MacBook was known to counsel for Defendant Lindsey when the Court ordered Defendants to identify his non-cellular devices – by a date certain:

> **MR. FRENCH**: On the record, I'd just like to – ==I assume that opposing counsel and I will be able to reasonably figure this out==. For example, I don't plan on asking if he was playing his PlayStation at the time, right?

9

***

I've had MacBook, work computer, personal computer. I get that. I'm sure we'll be able to figure that out.

**THE COURT**: What I'm talking about are phones, handhelds, tablets, laptops, desktops, mainframes.

Ex. 3, June 10, 2025, trans. at p. 14, lines 19-25, p. 15, lines 1-7 (emphasis supplied).

18. Because defense counsel knew about his use of a MacBook, they should have taken steps to preserve it and avoid spoilation, sanctions and a potential default judgment as provided by FRCP 37(e). A party's duty to preserve data arises when "the party controlling the documents has notice of those documents' relevance." *In re Old Banc One Shareholders Sec. Litig.*, 2005 U.S. Dist. LEXIS 32154, 2005 WL 3372783, at *3 (N.D. Ill. Dec. 8, 2005). "[A] party is required to keep relevant evidence over which it had control and reasonably knew or could foresee was material to the litigation." *Id.* "If the court finds that another party was prejudiced from the loss of the ESI [electronically stored information], the court may order measures no greater than necessary to cure the prejudice." *Snider v. Danfoss, LLC,* 2017 U.S. Dist. LEXIS 107591 at *10, 2017 WL 2973464 (N.D. Ill. July 12, 2017). "[I]t is difficult for the party that failed to preserve the ESI to show the absence of prejudice, again because the ESI was lost. Of course, this party is inclined to minimize the prejudice and importance of the lost ESI. And similarly, it is difficult for the party that seeks the ESI to establish prejudice because it does not know what was contained in the ESI. *Id.* at *10-*11. "[T]he court may impose the harsher sanctions available, including presuming that lost ESI was unfavorable, instructing the jury that it may or must presume the information was unfavorable, or entering default or dismissal." *Id.* at *10.

19. Rather prophetically, the Court recognized that it was possible to "screw it up" when Plaintiffs' counsel expressed his concern that Defendants should have

already know the universe of devices that Lindsey had access to on January 27, 2025:

> **MR. VLAHAKIS**: The only question I've got in terms of timing, because of the investigation that took place, these items should have been identified, and there should have been a known universe back in January, so I don't know why there needs to be seven days to identify this. That's just more time to –
>
> **THE COURT**: Just to make sure that people don't screw it up.
>
> **MR. VLAHAKIS**: Fair enough.
>
> **THE COURT**: Okay? That's why. You try to do things too fast, sometimes you screw them up.

Exhibit 3, June 10, 2025, transcript at p. 15, lines 11-20 (emphasis supplied). Here, there was no good reason to explain why the MacBook was not properly secured, where the Forensic Protocol specifically contemplated that all relevant devices would be copied for data preservation. See Dkt. 43 at Paragraphs 6, 10, 12.

20. <u>Before this lawsuit was filed</u>, Nienhouse Group hired lawyer Julia Ross to investigate Jane Doe's claims, and on February 19, 2025, Ms. Ross recognized that work-issued laptops existed. The below email string describes the communication between Ms. Ross and Jane Doe's counsel, after Robert Nienhouse informed Jane Doe's manager that there was a litigation hold on her work-issued laptop[4]:

> **From:** Ross, Julia <jross@mcdonaldhopkins.com>
> **Sent:** Wednesday, February 19, 2025 1:24 PM
> **To:** James Vlahakis <jamesv@vlahakislaw.com>
> **Subject:** RE: Forensic Imaging of ▮▮▮▮ Phone
>
> Thanks, James. Can you also please confirm whether Ms. Diaz has any other personal cell phones?
>
> ___
>
> **From:** James Vlahakis <jamesv@vlahakislaw.com>
> **Sent:** Wednesday, February 19, 2025 2:42 PM
> **To:** Ross, Julia <jross@mcdonaldhopkins.com>
> **Subject:** [External] RE: Forensic Imaging of ▮▮▮▮ Phone
>
> Julia, I am checking on this right now.

---

[4] To save space, Plaintiffs have removed the address and signature lines of each attorney. Otherwise, the emails are true and accurate.

See the below screenshot. My client wrote to Mr. Torres to inform him that her laptop has been lagging and proposed to update it – see the top message. I just want to make sure all of us on the same page. While I'm happy to instruct my client that there is a "legal hold" on her work laptop, that was not something we have discussed, where I would think that Nick is the one who should be having a litigation hold applied to his work and personal laptops, as well as any personal and work-based smart phones.



**From:** Ross, Julia <jross@mcdonaldhopkins.com>
**Sent:** Wednesday, February 19, 2025 1:53 PM
**To:** James Vlahakis <jamesv@vlahakislaw.com>
**Subject:** RE: Forensic Imaging of ███ Phone

Thanks, James.

I clarified the "legal hold" laptop issue with Mr. Nienhouse, who I believe should be looping in Mr. Torres. As I explained to him, I do not currently have a reason/basis to image Ms. ███'s computer,

12

nor do I plan on doing so. There may have been confusion based off of my instruction to Ms. ▮ not to update her cell phone prior to imaging. She, of course, should not be deleting or destroying any potentially relevant information/data/files but I do not believe an update would do so.

If this is a work laptop, rather than a personal laptop, what is done with it and its software is ultimately at the Company's discretion. However, as I also explained to Mr. Nienhouse, that is beyond the scope of my investigation.

___

**From:** James Vlahakis <jamesv@vlahakislaw.com>
**Sent:** Wednesday, February 19, 2025 3:00 PM
**To:** Ross, Julia <jross@mcdonaldhopkins.com>
**Subject:** [External] RE: Forensic Imaging of ▮ Phone

Julia

Thank you for clarifying.

1. To be clear, my client was instructed to preserve everything on her iPhone.
2. And to clarify, is the legal hold applying to the *personal* smart phones of Nick, Catherine and Mr. Nienhouse or *just* their work-based phones and/or laptops?

___

**From:** Ross, Julia <jross@mcdonaldhopkins.com>
**Sent:** Wednesday, February 19, 2025 2:29 PM
**To:** James Vlahakis <jamesv@vlahakislaw.com>
**Subject:** RE: Forensic Imaging of ▮ Phone

They were instructed not to delete/destroy/modify any potentially relevant information/data/etc. This is not restricted by device.

21. The above exchange reflects a strong understanding that Defendant Lindsey's work-issued MacBook should be preserved.

22. While the forthcoming forensic review of Defendant Lindsey's iPhone by Plaintiffs' expert will help answer which side is correct regarding the existence of overwritten data, the parties are in a totally different position relative to the potential spoliation of the MacBook which was reportedly stolen from Defendant Lindsey's car on August 4, 2025.

23. But despite the self-admitted relevance of Defendant Lindsey's work-issued MacBook by his own counsel, Defendant Lindsey left the MacBook unattended in his vehicle – where – he *claims* it was stolen. Unfortunately, despite the self-admitted

13

relevance of Defendant Lindsey's work-issued MacBook by his own counsel, no forensic copy of the MacBook has been made, not all of the data is backed up, and to date, Nienhouse Group has refused to own up to this spoliation of evidence by even suggesting – that it will pay the expert fees incurred by the Does where they hope that their expert can extract relevant data from any cloud-based back ups.

24. As for potential back up data, Mr. Lindsey's counsel responded (in part) to series of questions posed by counsel for the Does:

> **From:** Jim W. Scales <jscales@rathjelaw.com>
> **Sent:** Tuesday, August 5, 2025 4:46 PM
> **To:** James Vlahakis <jamesv@vlahakislaw.com>
> **Cc:** Jonathon J. Ibarra <JIbarra@wshblaw.com>; Yates French <yfrench@rathjelaw.com>; Christopher J. Seusing <CSeusing@wshblaw.com>; Ryan M. Neri <RNeri@wshblaw.com>; Peter J. Scheyer <PScheyer@wshblaw.com>
> **Subject:** RE: Does v. Nienhouse - MacBook Status
>
> James,
>
> I believe most of these are answered by our pleading and the declaration. I will follow up with my client about the iCloud backup. I do not believe all of the computer was backed up on iCloud.
>
> Thanks,
>
> **Jim Scales | Attorney | Rathje Woodward LLC**
> _____
>
> **From:** James Vlahakis <jamesv@vlahakislaw.com>
> **Sent:** Tuesday, August 5, 2025 2:33 PM
> **To:** Jim W. Scales <jscales@rathjelaw.com>
> **Cc:** Jonathon J. Ibarra <JIbarra@wshblaw.com>; Yates French <yfrench@rathjelaw.com>; Christopher J. Seusing <CSeusing@wshblaw.com>; Ryan M. Neri <RNeri@wshblaw.com>; Peter J. Scheyer <PScheyer@wshblaw.com>
> **Subject:** Re: Does v. Nienhouse - MacBook Status
>
> Jim
>
> Thank you for letting me know. Did this happen at his house or at the worksite. Depending on where he parked his car, I believe there's a ring camera at his residence and there should be security camera footage at the workspace. Please do whatever steps are necessary to preserve the security and ring camera footage. If you need me to issue a subpoena to the office complex. I will happily do so within minutes.
>
> Also, please let me know if there is an ability to track the MacBook.
>
> I guess this is a cautionary tale about why we shouldn't hesitate to have relevant computers imaged. As a reminder, you told me that it would be important for Crowe to examine this device. I know you're just a messenger, but this is profoundly disappointing. Simply said, the MacBook as a relevant piece of data should not have been left in a car. Aside from potential heat damage, there's always theft to consider.
>
> **In light of all these issues, please determine whether there is an iCloud back up of this**

**computer.**

James C. Vlahakis

25. As of the time of filing of this Reply, counsel for Nienhouse Group who have appearances on file (Jonathon J. Ibarra and Ryan M. Neri), have not responded with more details regarding *how* the MacBook was not secured in light of its relevance to this case, nor have they explained when they first learned that the MacBook was purportedly stolen – where the email from August 5, 2025 did not even address whether they would agree to have the MacBook forensically examined.

**WHEREFORE**, Plaintiffs respectfully request that this Court issue an order (**A**) requiring Defendants to work with Plaintiffs' expert to secure cloud and hard drive based back-ups of the subject MacBook, (**B**) issuing a rule to show cause why Defendants should not be sanctioned pursuant to FRCP 37(e)(1) by convening a hearing, (**C**) requiring Defendants to pay all legal fees incurred in drafting their underlying motion and reply and (**D**) requiring Defendants to reimburse Plaintiffs for the cost of examining the raw data from Defendant Lindsey's iPhone – where the raw data was never shared with Plaintiffs' expert -despite the fact that this data should have been shared consistent with Paragraphs 5, 6, 7, 14 and 17 of Dkt. 43 (where Plaintiffs have shared relevant forensic data with Defendants).

/s/ *James C. Vlahakis*
Vlahakis Law Group LLC
20 N. Clark Street Suite 3300
Chicago, IL 60602
312-766-0511
jamesv@vlahakislaw.com
*Counsel for Plaintiffs*