## James Vlahakis

| | |
|---|---|
| **From:** | Jonathon J. Ibarra <JIbarra@wshblaw.com> |
| **Sent:** | Tuesday, August 5, 2025 2:05 PM |
| **To:** | James Vlahakis |
| **Cc:** | Ryan M. Neri; Christopher J. Seusing; Peter J. Scheyer; Jim W. Scales; Yates French |
| **Subject:** | RE: Does v. Nienhouse - Forensic Data per the Protocol |

Hi James,

I received authorization from my client to allow you, as Plaintiff's counsel, access to the raw data extracted from Defendant Nick Lindsey's iPhone, and for you to share said data with your expert, Crowe LLP, for independent analysis.

Additionally, I have requested that my client produce the applicable insurance policy, which you addressed in your Motion to Compel. I renewed that request this morning and hope to have it soon.

I am also in the process of updating the privilege log previously tendered. While I do not anticipate having the revised version ready before tomorrow's hearing, I wanted to keep you informed that I am actively working on the items raised in your motion.

Lastly, I don't believe we confirmed a date and time for our discovery conference. I am available this Friday, August 8, 2025, between 11:00 a.m. and 3:00 p.m. Please let me know if that works for you.

Sincerely,

**Jonathon J. Ibarra**
Senior Associate
**WOOD SMITH HENNING & BERMAN LLP**

A 222 South Riverside Plaza, Suite 640, Chicago, IL 60606
D 312.766.4457 M 815.238.5995
E jibarra@wshblaw.com W www.wshblaw.com

**Personal Bio** · **LinkedIn** · **Facebook** · **X**

**From:** James Vlahakis <jamesv@vlahakislaw.com>
**Sent:** Wednesday, July 30, 2025 5:59 PM
**To:** Jonathon J. Ibarra <JIbarra@wshblaw.com>
**Cc:** Ryan M. Neri <RNeri@wshblaw.com>; Christopher J. Seusing <CSeusing@wshblaw.com>; Peter J. Scheyer <PScheyer@wshblaw.com>; Jim W. Scales <jscales@rathjelaw.com>; Yates French <yfrench@rathjelaw.com>
**Subject:** [EXTERNAL] RE: Does v. Nienhouse - Forensic Data per the Protocol

Hello Jonathon – *It looks like our emails have crossed paths.*

*I have removed Patrick and Zach* since their clients have been ==terminated== from the case per Dkt. 59. I'm also not sure why they were added, given the fact that you're able to communicate with Robert Nienhouse as Nienhouse Group's counsel. I am fine with you including Jim and Yates, as I'm sure they can chime in to reflect that they would like to get this case moving forward relative to having my experts look at the iPhone data that your/their Vendor has been sitting on for a few weeks.

1

**Notice of Electronic Filing**

The following transaction was entered by Vlahakis, James on 7/29/2025 at 6:58 PM CDT and filed on 7/29/2025

| | |
|---|---|
| **Case Name:** | Doe et al v. Nienhouse Group, Inc. et al |
| **Case Number:** | 1:25-cv-04235 |
| **Filer:** | John Doe |
| | Jane Doe |
| **Document Number:** 59 | |

**Docket Text:**
***First*** **AMENDED complaint by John Doe, Jane Doe against CAM Systems, Nick Lindsey, Nienhouse Group, Inc. and** terminating Robert Nienhouse and Catherine Nienhouse-Lindsey **(Vlahakis, James)**

I'm happy to set up a LR 37.2 call on either of the dates you've proposed (let's block out 1.5 hours). Let me know what times work best for you.
I won't have a court reporter present for this video call, but if I get push-back in the form of the type of defense dark arts that certain firms have amped up in recent years, I'll terminate the call and ask the court to order both sides to use court reporters going forward. Truth be told, I have a VERY productive video chat the other day with Jim Scales with a reporter present.
To be clear, you should be poised to issue a revised privilege log without use having to engage in LR 37.2, and I don't think we need to engage in a LR 37.2 process for you to produce the insurance policy.

If you do not agree to turn over the iPhone raw data and/or agree to turn over the MacBook pro by the COB tomorrow, I'll file a motion to compel, as I think the iPhone data should have been produced to use ages ago, Nicks' lawyer is in favor of this, and we have a protective order in place. As to the MacBook, I have engaged Nick's lawyer in the process set forth by Para. 4 of Dkt. 43. Unless you have objections that you want to place in writing, I think there's no need to debate this matter any further.

In closing, the LR 37.2 conference will go over Nienhouse Group's discovery responses and not the iPhone and MacBook production, as these matters fall within the scope of Dkt. 43.

We look forward to resolving this case, but Nienhouse Group needs to move this matter from the back burner in short order. In closing, if there is data which you believe debunks my clients' claims, we are patiently awaiting the production of this data – where we are confident that another MTD is not going to knock this case into state court.

Have a good night.

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)

---

**From:** Jonathon J. Ibarra <JIbarra@wshblaw.com>
**Sent:** Wednesday, July 30, 2025 5:40 PM
**To:** James Vlahakis <jamesv@vlahakislaw.com>
**Cc:** Ryan M. Neri <RNeri@wshblaw.com>; Christopher J. Seusing <CSeusing@wshblaw.com>; Peter J. Scheyer <PScheyer@wshblaw.com>; Jim W. Scales <jscales@rathjelaw.com>; Yates French <yfrench@rathjelaw.com>; Patrick

Ruberry <ruberry@litchfieldcavo.com>; Zachary Stillman <stillman@litchfieldcavo.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

Hi James,

I want to respond to several points raised in your recent correspondences from Monday and Tuesday and provide clarification regarding the status of your various requests.

First, I want to correct your assertion that I've ignored you. On the evening of July 24, 2025, at 7:32 p.m., you emailed me outlining your discussions with Mr. Lindsey's counsel and requesting production of the raw FFSE data from Nick Lindsey's iPhone, as well as access to the MacBook, both of which you acknowledged required Nienhouse Group's authorization. In the same email, you also raised a multi-condition proposal for mediation.

Despite that email arriving outside of what I would define as business hours, I responded less than five hours later at 12:06 a.m. on July 25, seeking clarification on the precise iPhone data requested, confirming the model and serial number of the MacBook (which to date has still not been provided), correcting a typographical error in your email, and inquiring as to the cost of a proposed JAMS mediation, which, to be clear, demonstrates good faith interest in discussing alternative dispute resolution.

While I understand and respect that you had other matters on your calendar Friday, your email providing the mediation fee schedule did not arrive until 4:12 p.m., near the end of the business day. Additionally, your most recent demand, which I also sought clarification on, is of course a critical data point in assessing mediation or settlement discussions. So, respectfully, your claim that "it's been almost a week" since I addressed these issues is inaccurate, and your conclusion that I am ignoring you is unfounded.

To be clear, I do not make unilateral decisions. I have communicated your requests regarding (1) production of the iPhone FFSE raw data, (2) inspection of the MacBook, (3) production of the applicable insurance policy, and (4) mediation or settlement conference participation to my client. **I hope to have their positions finalized soon.** These decisions require analysis, internal consultation, and coordination. As a former defense attorney yourself, I trust you appreciate that this process cannot be reduced to an immediate turnaround.

You suggested that in an ideal world, I could "tell a few partners and clients that [I] have a fire to put out." While I understand the sentiment, I believe you know that real case strategy and client advisement deserve more measured deliberation, especially when it involves potential implications for discovery, privilege, and settlement posture.

Also, I'd point out that I previously acknowledged the volume and complexity of your communications. Just last Wednesday, I emailed you specifically to confirm that I was not ignoring your correspondence but that your most recent message totaled 7,810 words, which translates to approximately 21 pages in 12-point Times New Roman font. I welcome thorough communications, but you must also allow me a reasonable opportunity to review and process that lengthy information.

Finally, with regard to your request for a Rule 37.2 conference, I am available on August 7 or 8 to meet and confer. However, I will not agree to participate with a court reporter present. I've reviewed your rationale for wanting a transcript, and I don't believe there's a need to revisit that in your reply.

I will provide additional updates regarding your pending requests as soon as I am able.

Sincerely,

**Jonathon J. Ibarra**
Senior Associate
**WOOD SMITH HENNING & BERMAN LLP**

**A** 222 South Riverside Plaza, Suite 640, Chicago, IL 60606
**D** 312.766.4457 **M** 815.238.5995
**E** jibarra@wshblaw.com ‧ www.wshblaw.com

**Personal Bio** ‧ **LinkedIn** ‧ **Facebook** ‧ **X**

---

**From:** James Vlahakis <jamesv@vlahakislaw.com>
**Sent:** Tuesday, July 29, 2025 6:39 PM
**To:** Jonathon J. Ibarra <JIbarra@wshblaw.com>
**Cc:** Ryan M. Neri <RNeri@wshblaw.com>; Christopher J. Seusing <CSeusing@wshblaw.com>; Peter J. Scheyer <PScheyer@wshblaw.com>
**Subject:** [EXTERNAL] RE: Does v. Nienhouse - Forensic Data per the Protocol
**Importance:** High

Good evening Jonathon

It's been almost a week since your below message. At this point in time, I reasonable outside observer could easily conclude that you are in fact ignoring me. Please let me know when you can schedule a video based LR 37.2 call where I plan on having a court reporter take down what we say. While this conversation won't be under oath, in other cases, I've found that a transcript requires both sides to stay professional and focused on applying the law to the facts, where many purported objections are withdrawn and full discovery answers are provided. I'm more than happy to alert the court that you're too busy to speak with me or respond to my emails. If that's the case, I'm not required to expend any further effort to try to set up a LR conference.

If I don't hear back from you tomorrow, I'll take the next step and file a motion for require you to provide a proper privilege log, as the court to require you to produce documents without any objections, where all objections were previously waived. I am mindful of the fact that we have many other cases to deal with, but at the end of day, where there is proof of Nick Lindsey's misconduct, this case should have settled months ago.

I will also ask the court to order you to produce the underlying insurance policy and produce the raw data that was captured by your firm's chosen vendor (relative to Nick's iPhone) and require Nienhouse Group to turn over the MacBook that Nick Lindsey used on January 27, 2025. If Nick did nothing wrong, wouldn't you be happy to turn over the raw data relative to Nick's iPhone and allow for a forensic examination of the MacBook. As a friendly reminder, Nick's counsel claims that there's no proof of the alleged misconduct. But data matters more than words, we we'd like to confirm what the data reflects. Thank you in advance for your time.

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)

---

**From:** Jonathon J. Ibarra <JIbarra@wshblaw.com>
**Sent:** Wednesday, July 23, 2025 2:57 PM

**To:** James Vlahakis <jamesv@vlahakislaw.com>
**Cc:** Ryan M. Neri <RNeri@wshblaw.com>; Christopher J. Seusing <CSeusing@wshblaw.com>; Peter J. Scheyer
<PScheyer@wshblaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

James,

Just a quick note to let you know I'm not ignoring you. What you've forwarded totals approximately 7,810 words—
roughly 21 pages in Times New Roman, 12-point font. I don't have time at the moment to review and respond
thoroughly, but I will give this the attention it deserves as soon as I'm able. As I'm sure you can appreciate, this isn't the
only matter on my plate at the moment.

Thank you for your patience.

Sincerely,


**Jonathon J. Ibarra**
Senior Associate
**WOOD SMITH HENNING & BERMAN LLP**

A 222 South Riverside Plaza, Suite 640, Chicago, IL 60606
D 312.766.4457 M 815.238.5995
E jibarra@wshblaw.com W www.wshblaw.com

**Personal Bio** · **LinkedIn** · **Facebook** · **X**

---

**From:** James Vlahakis <jamesv@vlahakislaw.com>
**Sent:** Wednesday, July 23, 2025 2:42 PM
**To:** Jonathon J. Ibarra <JIbarra@wshblaw.com>
**Cc:** Ryan M. Neri <RNeri@wshblaw.com>; Christopher J. Seusing <CSeusing@wshblaw.com>; Peter J. Scheyer
<PScheyer@wshblaw.com>
**Subject:** [EXTERNAL] FW: Does v. Nienhouse - Forensic Data per the Protocol

Jonathan – I'm just trying to keep you in the loop in case you have a different point of view relative to the approach
Jim is taking for Nick.

Have you received raw data from the Vendor to allow your firm and/or a trusted vendor that your firm uses to
review the raw data?

I guess I can't force you to answer this question, but if we end up in court, the Judge may ask the question or
require you to answer – if I raise this issue.

Simply put, I feel like I was mislead by what Chris said during our first phone call, and in light of what's occurring
below, I will likely tell the court what took place during that initial conversation. Since then I've been met with
silence.  Right or wrong, I expected more for you and Chris.

Have a good day.

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602

jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)

**From:** James Vlahakis
**Sent:** Wednesday, July 23, 2025 2:37 PM
**To:** Jim W. Scales <jscales@rathjelaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

Thanks Jim

The amended pleading will identify the Airdrop, where we both know that Nick has not been honest about what data he accessed on my client's iPhone. Further, this issues does not boil down to Nick's words to you. Rather, Crowe can analyze the raw data to find important evidence that is only on Nick's iPhone. But from what you're saying, it looks like the airdrop event will be resolved by dueling experts – not by Nick's words alone.

The Forensic Stipulation requires the exchange of the raw data. See Paras. 2-3, 6-8, 10-11, 14-18. In particular, no "findings" have been provided to us pursuant to Paragraphs 14-16, where Plaintiff turned over forensic data regarding Nick's access to my client's Images and Videos. More than happy to explain this on the call and via a motion. But if Nick truly is innocent, you'd think that you would be willing to prove this point by producing the raw data without court intervention. Further, as I'm sure you're aware, unlike the vast majority of federal causes of action, 15 U.S.C. § 6851(b)(3)(A) provides for broad injunctive relief: "The court may, in addition to any other relief available at law, order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction." *Id*.

To be clear, consistent with the above cited paragraphs of the stipulation, we are asking for the mirror images of Nick's iPhone that your Vendor extracted for January 27, 2025 and for January 27, 2025 to the time the phone was given to your firm. To be clear, we are asking you to provide us with the data obtained from the FFSE that was performed by your vendor.

I understand all of our obligations, but please note that certain representations were made to the court relative to the purpose of the forensic examination, and I don't think that the court is going to side with your position that the raw data can be held by your Vendor and not shared with Plaintiffs. See the May 23, 2025 transcript:

> THE COURT: What do you want to do? That's my
> question. What you -- what you want to do is you want to get
> these devices and inspect them, right?
>
> MR. VLAHAKIS: Correct, your Honor.
>
> THE COURT: What gets you closer to that is filing a motion saying,
> please make them turn over these devices so we can do an
> inspection. But you haven't filed it.
>
> MR. VLAHAKIS: I tried to do it with their
> cooperation, and at a certain point, they have just not wanted
> to do anything.
>
> MR. VLAHAKIS: had a conversation with
> Mr. Lindsey's counsel that I thought went well about what they

agreed to do except –

THE COURT: Agreed to do with respect to what?

MR. VLAHAKIS: To having the forensic examination of the phones.

THE COURT: Okay.

THE COURT: Now that you know you're not getting cooperation, which you've known for a few days now, when are you planning to file the motion asking me to compel a forensic inspection of whatever devices it is that are at issue at this point? When?

MR. VLAHAKIS: I can file it as early as next week.

THE COURT: When are you planning to file it?

MR. VLAHAKIS: Tuesday. I think today, though, opposing counsel will reflect that we have close to an agreement. We should be able to work this thing out. When I got pushback last night that nobody wanted to try to put together a simple status report to the Court, that's when I said I have to file what I'm going to file.

THE COURT: Okay. Who wants to talk on this side?

MR. IBARRA: I'll go first, your Honor. I'll be very brief. I mean, I think we are all in agreement that we are going to work on all of these things.

***
I think we're fighting over something small. We're all in agreement that we're going to work towards ESI and the special protocol. But we can't turn this over so quickly, and I don't see the rush on it.

THE COURT: What are the devices that you believe need to be inspected? Aside from your own client's device, I'm talking about the ones that you're concerned that something may have been forwarded or downloaded on?

MR. VLAHAKIS: Thank you. Mr. Lindsey's personal devices. I've been told by his counsel that he has an iPhone and either a Galaxy or a Samsung device, and if he potentially has a laptop, that's what we'd like to see because that's where he probably forwarded the items to.

THE COURT: If he forwarded them, that's what he likely forwarded them to.

MR. VLAHAKIS: And my clarification point was that my

7

client already had a forensic examination of her phone.

THE COURT: I got that from your motion.

***

I'm going to put a deadline on you with coming up with an agreement, not on everything, but just on forensic inspection of the particular defendants' devices. And the deadline's going to be you have to have an agreement on that ten days from now or I'm going to impose an agreement on you. Probably what I'm going to do is tell you to bring them into court and I'm just going to grab them, and I'm going to hold on to them until you have it figured out.

See also the June 10, 2025 transcript:

THE COURT: Okay. So on the question of forensic inspection of devices, and I'm using that -- a broad term -- a vague term on purpose, if I'm understanding the redlining right, and this is on docket number 35-1, where there's some -- where there's a part that's redlined, it's just one issue, it looks like. It just has to do with whether it's the iPhone, the Android phone, and the Samsung phone, or whether it's that plus other things.

MR. VLAHAKIS: That is correct, your Honor.

THE COURT: There's no issue about timing of when this happens?

MR. VLAHAKIS: No, your Honor.

THE COURT: Okay.

MR. FRENCH: Yates French on behalf of Nick Lindsey. I generally agree.

What I would say is while the forensic protocols have largely been agreed to, setting aside the custodial devices that we use, the scope of the collections and productions is still open.
I –

THE COURT: What do you mean by that?

MR. FRENCH: I mean I've been served with 104 discovery requests, your Honor –

THE COURT: I'm just talking about the forensic inspection.

MR. FRENCH: In that case, I agree with opposing counsel.

**THE COURT: Okay. So it's not a question of when it's going to happen, it's not a question of the phones; it's a question of other devices.**

THE COURT: That is my question. How are you figuring on -- how are you figuring on planning it out? Have you served a discovery request? Have you asked or -- what have you done?

MR. VLAHAKIS: Well, because -- paragraphs 3A, B, and C, they volunteered to identify that information pursuant to the protocol we were putting together. I had asked for the identification of the other items not knowing exactly what he had.

THE COURT: Yep.

MR. VLAHAKIS: I do believe he may have a MacBook or a Chromebook.

THE COURT: You asked for -- there's an "and" in there somewhere, so let's get to the "and."

MR. VLAHAKIS: And they did not identify those items --

THE COURT: So now we're back to my question. Then how were you proposing to figure out what else there is?

MR. VLAHAKIS: They know, defense counsel knows --

THE COURT: Is it a discovery request? Is it a sharply worded letter? Is it a ask and meet -- tell them to tell you? Is what -- what is it?
How are you going to find out? They're not telling you right now, so how are you going to find out? What are you going to do?

MR. VLAHAKIS: By asking this Court because I thought, pursuant to --

THE COURT: Okay. So you're asking me to tell them to tell -- to identify any devices --

MR. VLAHAKIS: Yes, because I thought the last time we were in --

THE COURT: From what period of time? From when to when? Devices that he had or has had from -- what's the start date and what's the end date?

MR. VLAHAKIS: The date that we're seeking the

information from would be January 27th. So if he had that item
--

THE COURT: January 27th of this year?

MR. VLAHAKIS: Of this year, correct.

THE COURT: Okay.

MR. VLAHAKIS: That he may have done something with
those devices relative to forwarding, saving, transmitting the
information.

THE COURT: Okay. I have a second question. I'm
going to ask everybody, but you can answer first.
Apologies for my ignorance here. When somebody does a
forensic inspection of, let's say, an iPhone, if they -- file
has been -- if a file has downloaded on the iPhone, let's say a
picture, and then sent somewhere, does the forensic inspection
tell you that?

MR. VLAHAKIS: Not necessarily, and here's why if
you'd like me to explain why.
There are activities logs in an iPhone that can get
overwritten over time. What had happened in this case is when
this event took place on January 27 –

MR. VLAHAKIS: I would like to be -- have this
information secured as soon as possible to prevent anything
from being overwritten pursuant to either software updates --

THE COURT: Okay. So the concern is -- so the answer
to my question, forensic inspection, yes, theoretically does
identify whether a file has been sent from this device to some
other device, but it's possible that the log of that could be
overwritten over time.

MR. VLAHAKIS: Correct. The longer we wait, the
bigger chance that information -- vital information is lost.

THE COURT: Do you agree or disagree?

MR. FRENCH: Yes.

THE COURT: Okay. That's a fair answer.

MR. FRENCH: And it turns out -- it turns on which
devices we're referring to. And "devices" is a broad and vague
word, your Honor. It's easy to refer to a MacBook. Does it
include cloud servers for Gmail, right, his Facebook account?
You can get into complexity and breadth very quickly, which is
why my position is let's start with the mobile devices.

10

MR. FRENCH: Let's talk about his mobile devices.

THE COURT: Yeah.

MR. FRENCH: An iPhone and a Samsung device, both of which were in his possession at the time -- the relevant time period. Those have been secured pre-litigation. They're sitting in my office. They're turned off. They're not going to have automatic status updates.
I disagree that the passage of time is likely to lead to spoliation or destruction of evidence for those devices. With respect to other devices –

THE COURT: I'm not too -- so is it all three of the phones or just two? You said two, I thought.

MR. FRENCH: The third phone, my understanding –

THE COURT: Which is the third phone?

MR. FRENCH: I believe it's a Samsung, your Honor.

THE COURT: Okay.

THE COURT: All right. So who on the defense side would like to give me your position as to why I should not include the redlined paragraph 3D?

MR. FRENCH: I'm happy to give you my position on behalf of Mr. Lindsey, your Honor.

THE COURT: Go ahead.

MR. FRENCH: It goes towards proportionality, timing, and scope, right?
The mobile devices, in my opinion, are clearly relevant. They're the low-hanging fruit. Let's begin that. In the interim, like I said, I have 104 discovery responses -- requests to respond to. I'm going to object to some of them. I think it makes sense to let the meet-and-confer process play out with that.

THE COURT: But, I mean -- look, here's the deal. Whether the case is here or at the other end of Dearborn Street, you're going to have the same question. There's going to be a case. There's going to be discovery requests. There's going to be something. So I'm not too worried about that. So why don't you get to your next point.

MR. FRENCH: In my opinion, discovery works best when there's an order of operations dictating the sequence. Let's start with the low hanging fruit. Let's see

==what's on the phones.== Let's see if it gives any good-faith
basis to identify other devices, starting at the finish line
and saying every device in his possession of any type has to be
forensically examined. It's costly. It's burdensome.

THE COURT: Okay. That's not a bad point. So but why
shouldn't I tell you that you've got to identify everything
he's had from January the 27th of 2025 to now?

MR. FRENCH: I don't object to that, your Honor.

THE COURT: Something like that. Yeah. Okay.
So I think what I'm inclined to do is to -- as to --
is to take D out of paragraph 3 for now; in other words, not
require the immediate forensic inspection but have another
paragraph added to this which would require Mr. Lindsey to
identify within seven days any other -- you can figure out how
to divide devices so somebody doesn't come back -- or how to
define devices so somebody doesn't come back and say it's vague
any other devices that Mr. Lindsey has had or has had access to
to get those identified within the next, you know, seven to ten
days. And then we can -- and then, you know, the next step is
going to be getting control of them. Because the difference,
of course, between those devices and the two that are sitting
in your office is those two are sitting in your office and the
others are not and we don't know what's going on with them.
So I think that's what I'd like to do. So just
rewrite it that way.

*Please note that I have cut out certain portions of the transcripts for the sake of brevity.*
In light of what was said on the record, I don't think the Court is going to accept your position that you're not
required to turn over the raw data to allow Crowe to review whether your Vendor performed a proper analysis of
the data. Put another way, I don't think that the court walked off the bench thinking, Nick Lindsey's counsel can
pick and chose what data they turn over – where the court ordered Nick's 3 Devices to be forensically
examined.  While you appear to be suggesting that the Images and Videos are were not *found* on any of the three
devices, this does not mean that Nick did not forward them to his iPhone and deleted them once he got called out
by my client's January 28, 2025, email.

**To be clear, please confirm in writing if it is your position that none of the identified Images and Videos have
been found on any of the three devices.**

As for discovery requests, do I truly need to point you to them?  See Request Nos. 30, 31, 32 and 33. You are
obligated to answer these requests truthfully.  See also Request for Production Nos. 5-6, which seek the
production of information related to:

> 5. If any Defendant denies that Defendant Nick Lindsey did not view the Images and Videos on Plaintiff Jane
> Doe's iPhone on January 27, 2025, and/or denies downloading the Images and Videos, identify all facts,
> witnesses, Data and Documents which support any denial.
> 6. If any Defendant denies that Defendant Nick Lindsey did not download one or more of the Images and
> Videos on Plaintiff Jane Doe's iPhone on January 27, 2025, identify all facts, witnesses, Data and
> Documents which support any such denial or denials.

Further, even if Nick deleted any Images and Videos that he acquired, you're obligated to look for deleted data. See Request No. 21-22.

Finally, don't forget to FRCP 26(a)(1)(iii) mandates the disclosure of evidence that you intend to use to support Nick's defenses. If you're going to rely on some analysis of the data on his iPhone to claim that he did not view, download or otherwise AirDrop the Images and Videos to his iPhone, you need to disclose the data and allow it to be inspected.

In closing, I must say that this entire exchange has been disappointed, where I was lulled into thinking that we were fashioning a collaborative protocol to streamline this case consistent with FRCP 1 and FRCP 26 (as to proportionality). I would never have agreed to have my client's pay for a portion of the examination if I new you were going to hold the data hostage. And this is especially true where I've provided a lot more data to your side (with the production of Crowe's Cellebrite data. With that said, I think you really need to sit down with Yate and Jonathan's team to see if you want to head back to court and say "no your honor, we never intended to share this data with Mr. Vlahakis, despite him paying for ¼ of the cost. And on that note, my clients are more than happy to pay Crowe to analyze that data. One more thing. I think it would help to have your Vendor speak with Crowe where they can better discuss the type of data that they both know exist and both know can be analyzed. I'm saying this because I won't want to have you come back later and say "it's my understanding that" or that you're "confused" by what I'm asking for.

Worse case scenario, we can have the court appoint an expert to examine the data for both sides and share the costs.

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)

**From:** Jim W. Scales <jscales@rathjelaw.com>
**Sent:** Wednesday, July 23, 2025 1:14 PM
**To:** James Vlahakis <jamesv@vlahakislaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

James,

I look forward to discussing these issues in our call tomorrow.

I have requested that our vendor search for metadata that would indicate if an air drop occurred on the relevant date. They informed me this morning that they did not find any air drop data within the metadata for January 27, 2025 documents. They are preparing a report to that extent.

Based on my client interview about this topic, you are not correct that the reason this contact appears on your client's phone is the result of an "Air Drop event." Nor has it ever been alleged in any pleading that this was the case. However, it is not appropriate for us to litigate these matters via email, outside of the bounds of discovery.

If you could please clarify:

1. What data, exactly, you are requesting in terms of date range, format etc.?
2. What provision of the stipulation requires this raw data to be provided?
3. What discovery request requires this raw data to be provided?

Please consider my obligations to both my client as well as the rules of civil procedure.

Thanks,


**Jim Scales | Attorney | Rathje Woodward LLC**
300 E. Roosevelt Road, Suite 220 | Wheaton, IL 60187 |
Direct Dial Telephone: 630-510-4911| Fax: 630-668-9218

**\*\*\*This email is from Rathje Woodward LLC, a law firm, and may contain information that is confidential or privileged.  If you are not the intended recipient, do not read, copy, or distribute the email or any attachments.  Instead, please notify the sender and delete the e-mail and any attachments.  Thank you.\*\*\***

---

**From:** James Vlahakis <jamesv@vlahakislaw.com>
**Sent:** Wednesday, July 23, 2025 10:23 AM
**To:** Jim W. Scales <jscales@rathjelaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

Morning Jim

In order to help prepare for tomorrow's call, please confirm that your Vendor has been alerted to the fact that Nick's iPhone contact information was captured as part of an AirDrop related event.  See the below image, which identifies Nick's unique UUID, which lines up with his Apple ID.  I don't think this question is objectionable, as I want to make sure we are on all the same page relative to expeditiously resolving this case via both sides' vendors. I don't want a situation to evolve where *after* tomorrow's call you relay this information to your Vendor for *further* analysis – which would result in us kicking the can further down the street, leading to motion practice.  Rather, if your Vendor is qualified to do this work, *it should have seen this data*, along with the data reflecting that Nick downloaded Images and Videos from the hidden folder when

Long story short, why are we even having a debate about you sharing the raw data that your Vendor received as set forth by the Protocol. Technically speaking, I should not be asking you to share this data, as the data you provided to me from your Vendor was incomplete, where the data we shared with you was complete.

Maybe there is some delay on your end, where your Vendor has not yet analyzed all of the relevant data, but a well-qualified vendor should have told your team that there's forensic proof to demonstrate Nick's misconduct. If this has happened, it is possible that your marching orders are to do what you can do delay the production/sharing of relevant discovery. To be fair, I don't know your or Yates, but I don't think you're both trying to "hide the ball", but other factors and players could be in the mix, and that they are directing what should or should not be shared.

I'm very close to losing my patience with everyone, where Crowe is telling me that any good vendor should have alerted you guys to what the data shows. Maybe this will become a war of attrition, which I'm more than willing to fight for my clients.

In closing, I am trying to reach out to you to avoid further motion practice, where I hope this email serves to emphasize six (6) things:

- That the data confirms what my client heard;
- The data that you have provided to me is incomplete;
- One could argue that the data that you provided to me was purposefully incomplete;
- That I am trying to be cooperative with you (and patient);
- There is no reason why this case should not be settled; and
- If the data is not turned over, I'm more than willing to take this to the judge, where I have the resources to push back against a three-fronted wall of delay and obfuscation, which may soon approach the point of contumacious conduct.

I do not like to send these types of emails, but as a former defense attorney, I know how some firms choose to practice the Dark Arts of delay and obfuscation and I'm not going sit idle and allow the current production of forensic data to stand.

Bottom line, if you think Nick did not do what he's accused of doing and you think that the forensic data supports Nick's defenses, then turn over the data? What do you have to lose under this scenario? But if you won't agree to turn over this data, then it looks like you are hiding something. At the end of the day, we are both busy and smart lawyers. Do we even need to have a call to discuss this matter? Please turn over both databases that were created relative to Nick's iPhone (the January 27, 2025 data and the full data (post Jan. 27) that was collected – which will allow us to see what Nick did with the Images and Videos after he AirDropped them.

Thank you in advance.



James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)

**From:** Jim W. Scales <jscales@rathjelaw.com>
**Sent:** Tuesday, July 22, 2025 4:51 PM

**To:** James Vlahakis <jamesv@vlahakislaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

No problem, 4:00 PM works but, if we go until 6:00 PM,  I am going to send you my uber eats receipt.

**Jim Scales | Attorney | Rathje Woodward LLC**
300 E. Roosevelt Road, Suite 220 | Wheaton, IL 60187 |
Direct Dial Telephone: 630-510-4911| Fax: 630-668-9218

**\*\*\*This email is from Rathje Woodward LLC, a law firm, and may contain information that is confidential or privileged.  If you are not the intended recipient, do not read, copy, or distribute the email or any attachments.  Instead, please notify the sender and delete the e-mail and any attachments.  Thank you.\*\*\***

---

**From:** James Vlahakis <jamesv@vlahakislaw.com>
**Sent:** Tuesday, July 22, 2025 4:48 PM
**To:** Jim W. Scales <jscales@rathjelaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

Thanks – Any chance you could do 4 pm? My deposition on the 24th got pushed back by an hour.  If that doesn't work, I'll make 3 work. Thank you!

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)

---

**From:** Jim W. Scales <jscales@rathjelaw.com>
**Sent:** Tuesday, July 22, 2025 4:47 PM
**To:** James Vlahakis <jamesv@vlahakislaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

James,

Let's lock in 3:00 PM. Thank you for the spreadsheet and information about Air Dropping.

Thanks,

**Jim Scales | Attorney | Rathje Woodward LLC**
300 E. Roosevelt Road, Suite 220 | Wheaton, IL 60187 |
Direct Dial Telephone: 630-510-4911| Fax: 630-668-9218

**\*\*\*This email is from Rathje Woodward LLC, a law firm, and may contain information that is confidential or privileged.  If you are not the intended recipient, do not read, copy, or distribute the email or any attachments.  Instead, please notify the sender and delete the e-mail and any attachments.  Thank you.\*\*\***

---

**From:** James Vlahakis <jamesv@vlahakislaw.com>
**Sent:** Tuesday, July 22, 2025 11:13 AM
**To:** Jim W. Scales <jscales@rathjelaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

Thanks Jim – The 24th works for me.
Are you saying your entire day is open starting at 1130 am? If that's the case, I'd like to lock in a call at 3 p.m.

As for your below question, I presume you're familiar with the Contacts tab?  See the attached Excel "Report" which I exported from the Cellebrite data we provided to you. This is basically a portion of an Apple Database log showing the universally unique identifier (UUID) and Apple ID associated with Nick:  A134E105-A526-461A-928F-06DE4EF23AFE. If you want to get a better understanding of how AirDrop works, go to https://support.apple.com/guide/security/airdrop-security-sec2261183f4/1/web/1 See also, https://support.apple.com/en-us/119857  If you want an even more detailed explanation of how this process works, go to https://www.usenix.org/system/files/sec21-heinrich.pdf  In particular, page 3578-9 helps explain how "hash contact identifiers" are used in conjunction with account-specific UUIDs. In short, Nick's contact information was essentially captured by my client's iPhone when he initiated an AirDrop from my client's iPhone to his iPhone. This is part of the authentication process that is used by Apple to ensure that only authorized individuals are allowed to AirDrop items.  The issue we all face is different than the typical AirDrop scenario where I might receive an AirDrop of photos from a friend or family member. In this scenario, a friend or family would initiate an AirDrop to me, my iPhone would recognize the person as a known contact. I would then "accept" the drop on my iPhone.  Here, Nick had two Apple devices in his possession (and my client's passcode) so he could act our both roles – as the sender and recipient.

Apple does not keep long term/accessible data of what types of items are sent from a particular iPhone. However, the particular Images and Videos that Nick sent to himself should show up on any iPhone (unless deleted) in a utility folder called "Imports". In order to see which particular Images and Videos Nick sent to himself via AirDrop, Crowe needs access the data collected by your Vendor. This request is a result of the fact that Apple automatically includes certain metadata into *the recipient's iPhone* when a recipient receives an AirDrop. If Nick is unwilling to allow Crowe to have access to the data that your Vendor has obtained, we will ask Judge Kennelly to order the transfer of data to take place.

To recap, the facts which support the relief we will seek are as follows:
1. On January 27, 2025, Nick asked to borrow Jane Doe's iPhone to test a workplace application. This fact is undisputed.

2. Before handing the iPhone to Nick, my client closed out all of her applications, including her photograph folder.

3. The iPhone was in Nick's sole possession between approximately 3:00 p.m. and 4:55 p.m. This fact is undisputed as we have not heard any argument from you that Nick somehow misplaced my client's iPhone and that a nefarious third party found the iPhone with the screen open. The screen should have locked if the passcode was not entered.

4. Nick took the iPhone into the conference room after he claimed that the internet was failing* to connect from my client's office. This fact is undisputed.

5. Jane Doe's headphones were still connected to her iPhone and this allowed her to hear Nick repeatedly playing certain intimate Videos. While Nick has turned this into a "she said he denies" type scenario, to date, we have heard nothing from you relative to explain how this event took place. This disputed event creates a question of fact.

6. We have also produced data to you which reflects that certain Images and Videos were downloaded from my client's iCloud account when the phone was in Nick's possession. This data is indisputable, and to date, we have heard nothing from you relative to explain how this event took place. *While Nick can continue to deny downloading the Image and Videos, this disputed event creates another question of fact.*

7. We also know that it is indisputable that Nick's contact information was captured by my client's iPhone as a result of AirDrop data. *Nick can deny this fact, but the data does not lie.*

8. When Nick returned the iPhone to my client, the hidden folder was open. While Nick can continue to protest his innocence, this disputed event creates yet another question of fact.

9. *I should also add that the data that Crowe has analyzed does not support Nick's statement that the internet connection was failing. See the Crowe data "Locations" and "Network Connections".

10. While not relevant to the above timeline, we all know that Robert Nienhouse (for whatever reason or reasons) did not authorize a forensic review of my client's iPhone – where a timely review would have provided attorney Ross with even more evidence. *To date, we have yet to receive an explanation from Mr. Nienhouse as to why he did not authorize a forensic review.*

11. In summary, we need access to the data that your Vendor has reviewed, where it does not appear that your Vendor has complied with all of the steps it was required to complete as part of its Forensic examination. See my below email.

Let me know your position in advance of our call on the 24th. If necessary for your review, we could also agree to provide you with an entire AirDrop Database called "AirDropHashDB.airdrop_dbv4". This database contains Nick's UUID along with other UUIDs. Given the sensitive nature of UUIDs, we may need to consider any production subject to attorney's eyes only.

Also, FWIW, I was involved in some class action litigation involving Apple several years ago, and if necessary, I'm going to nudge my contacts to see if they can be of assistance in seeing if Apple will share information with me relative to how we can determine (from my client's iPhone) which particular Images and Videos were sent by Nick to his iPhone.

Thank you in advance for your anticipated cooperation. While we are adversaries, I'd like to think that we both want to get to the bottom of what happened, where doing so (sooner rather than later) may induce the insurance company to fund a settlement. If this gets dragged out and more evidence of Nick's misconduct comes to light, that may lead to a flat-out denial of coverage, and a worse outcome for Nick, his wife, father-in-law, and Nienhouse Group.

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)

**From:** Jim W. Scales <jscales@rathjelaw.com>
**Sent:** Monday, July 21, 2025 5:14 PM
**To:** James Vlahakis <jamesv@vlahakislaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

James,

I am available after 11:30 on the 24th. I have gone through what you produced from Crowe, I did not see any of the "data reflecting that Nick used AirDrop to forward the Images and Videos" that you have repeatedly referenced. Can you point me in the right direction or provide it to me?

Thanks,


**Jim Scales | Attorney | Rathje Woodward LLC**
300 E. Roosevelt Road, Suite 220 | Wheaton, IL 60187 |
Direct Dial Telephone: 630-510-4911| Fax: 630-668-9218

**\*\*\*This email is from Rathje Woodward LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy, or distribute the email or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.\*\*\***

**From:** James Vlahakis <jamesv@vlahakislaw.com>
**Sent:** Monday, July 21, 2025 5:05 PM
**To:** Jim W. Scales <jscales@rathjelaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** RE: Does v. Nienhouse - Forensic Data per the Protocol

Hello Jim – What time works best for you on the 24th.

Also, I would like to have my vendor (Crowe) examine the mirror image of Nick's iPhone to determine what he did with the Images and Videos after he Airdropped them to his iPhone. I recognize that you might be in a difficult position relative to your client where it is possible that he did not *volunteer* to you that his email address was captured by my client's iPhone as a result of him using Airdrop to transmit the Images and Videos to his iPhone.

To avoid any objection to this request being intrusive or otherwise disproportional, I think it would be possible for your Vendor to transmit the mirror image where the Vendor creates and confirms the transmission of a subset of data from (a) January 27, 2025 until (b) the time when the iPhone was given to your firm for safekeeping. This tender

of data will allow Crowe to locate remnants of the Images and Videos that (no offense intended) your Vendor may not have a vested interest in obtaining – pursuant to Paragraphs 6, 7, 10, 14, 15, 16 and 17 of the Protocol (Dkt. 43). To recap, Para. 7 states that:

> "Vendor will be asked to perform a Full File System Extraction (FFSE) using Cellebrite forensic software, to examine data relevant to determining whether, when, and to what extent Defendant Lindsey allegedly saved, forwarded, screen-captured, or otherwise obtained and/or distributed certain Images and Videos from Plaintiff Jane Doe's iPhone."

On this point, while we trust that the Vendor used Cellebrite forensic software, we have not received any data from the Vendor which uses the Cellebrite platform to create a searchable database/dashboard (which we have provided to you via Crowe). This is what we contemplated would happen relative to Paras. 14 and 17 of the Protocol.

And as a reminder, Para. 9 states that "Plaintiff Jane Doe's expert will be asked to assist the Vendor, as necessary, by identifying the specific Images and Videos from Jane Doe's iPhone 13, serial number CR93FNRYPX, operating system iOS version 18.2.1 that were allegedly accessed by Defendant Lindsey during the Time Period." Crowe stands ready to assist the Vendor.

Further, Para. 10 of the Protocol states that "[t]he Vendor will be asked to determine if mobile or computer-based backups exist on Defendant Lindsey's Devices identified in Paragraph 3 and any potential Additional Devices identified in Paragraph 4 (which will be subject to a Forensic Inspection by the agreement of the parties or by order of court)." We have not heard from you relative to whether any "mobile or computer-based backups exist on Defendant Lindsey's Devices identified in Paragraph 3." Para. 10 goes on to state:

> If such backups exist, the Vendor will be asked to examine them to determine whether, when, and to what extent Defendant Lindsey allegedly saved, forwarded, screen-captured, or otherwise obtained and/or distributed certain Images and Videos from Plaintiff Jane Doe's iPhone.

It is not clear whether the Vendor has started to comply with Para. 15 of the Protocol, which reads:

> Specifically, the Vendor will be asked to examine Defendant Lindsey's applications (e.g., Meta Messenger, Instagram, Signal, etc.), photographic/video-based applications and photographic/video-based storage repositories (related to the Devices identified in Paragraph 3 and any potential Additional Devices identified in Paragraph 4 (which will be subject to a Forensic Inspection by the agreement of the parties or by order of court)) and text messages from identified telephone numbers to determine whether, when, and to what extent Defendant Lindsey allegedly saved, forwarded, screen-captured, or otherwise obtained and/or distributed Images and Videos from Plaintiff Jane Doe's iPhone.

To recap, while it appears that the Vendor "examine[d] Defendant Lindsey's **emails** from nicklindsey507@gmail.com, to determine whether, when, and to what extent Defendant Lindsey allegedly saved, forwarded, screen captured or otherwise obtained and/or distributed certain Images and Videos from Plaintiff Jane Doe's iPhone" (emphasis supplied), the Vendor's analysis of Nick's above identified email did not uncover that Nick used AirDrop (associated with his email) to send the Images and Vidoes to his iPhone. I'm not sure why the Vendor missed this point, where Crowe took note of the fact that Nick's email was captured as a result of an AirDrop which was initiated when my client's iPhone was in Nick's possession.

Pursuant to Para. 21 of the Protocol, please provide me with a bill for the services completed to date by the Vendor. Please be mindful that we should not be charged for any analysis that your Vendor may provide relative to the data we sent to you from Crowe's analysis of my client's iPhone. At the same time, pursuant to the last sentence of Para. 21, we'd like to speak with you about sharing costs relative to an examination of Nick's Space

Grey 16-inch MacBook Pro, where it is possible that Nick could have AirDropped the Images and Videos to that device.

One final issue. Since Nick has admitted to using my client's iPhone on numerous occasions to test a work-based application, our served discovery requests should be understood to look for other Images and/or Videos that Nick may have sent to himself via email or AirDrop prior to January 27, 2025.

I recognize that you may argue that this is beyond the scope of the four corners of the Complaint. See also, Para. 11 of the Protocol. Either way, consistent with Rule 11, we'll be amending the Complaint to identify prior unlawful acquisitions of Images and Videos – where we have a good faith basis to assert these allegations where (a) it makes no sense for Nick to have used my client's iPhone to test a workplace application where Nick has his own iPhone and (b) Nienhouse Group should have an iPhone for this purpose. Back to Para. 11, we trust that the Vendor captured data prior to January 27, 2025, when it made a FFSE of Nick's iPhone even if its analysis was focused on January 27, 2025, to the present.

In closing, we are at the start of this case – where it is only going to get more expensive as we all move forward.  But what's important to note is that I recognize that you may have a difficult client to deal with where (a) he previously denied viewing my client's Videos (despite what my client heard and saw when her iPhone was returned to her), (b) he has denied viewing the Images and Videos (despite the data in the Complaint showing how and when certain Images and Videos were downloaded from my client's iPhone when it was in Nick's possession and (c) where Nick has denied any wrongdoing, where Crowe was able to extract data reflecting that Nick used AirDrop to forward the Images and Videos – an event that your Vendor may have ignored in its analysis or it simply did not look for AirDrop metadata.

I appreciate your continued professionalism, but unfortunately this case is going to heat up considerably *if* we can't have a productive discussion regarding the type of analysis that has been performed by your Vendor. My preference is to receive a dashboard type production from the Vendor (ASAP) along with you confirming whether the Vendor originally looked at AirDrop metadata.  If it did not originally do so, it should not take the vendor all that long to look actually look for an analyze AirDrop metadata.  Of course, Crowe is more than willing to help your Vendor.

Thanks in advance for your cooperation!

*-James*

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)

---

**From:** James Vlahakis
**Sent:** Wednesday, July 16, 2025 11:29 PM
**To:** Jim W. Scales <jscales@rathjelaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** Re: Para. 2 of Nick's Declaration compared to Dkt. 43 Para. 3.

Good evening Jim

The 24th works for me.

James

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)


On Jul 16, 2025, at 8:53 PM, Jim W. Scales <jscales@rathjelaw.com> wrote:


James,

To answer your question about the phones, it is my understanding the Android Pixel 6 Pro is the Samsung phone, I will confirm the serial numbers. The Pixel 4 pro was not used until after Nick turned his primary phone over to us.

As for the meet and confer, I have two hearings and a deposition next week. Right now, the only slot I can offer (with sufficient time to have a productive discussion) is the afternoon of the 24th. Let me know if this will work.

We are in the midst of our document review, I will follow up with the other attorney assisting in review.

Thanks,


**Jim Scales | Attorney | Rathje Woodward LLC**
300 E. Roosevelt Road, Suite 220 | Wheaton, IL 60187 |
Direct Dial Telephone: 630-510-4911| Fax: 630-668-9218

**\*\*\*This email is from Rathje Woodward LLC, a law firm, and may contain information that is confidential or privileged.  If you are not the intended recipient, do not read, copy, or distribute the email or any attachments.  Instead, please notify the sender and delete the e-mail and any attachments.  Thank you.\*\*\***

**From:** James Vlahakis <jamesv@vlahakislaw.com>
**Sent:** Wednesday, July 16, 2025 8:46 PM
**To:** Jim W. Scales <jscales@rathjelaw.com>
**Cc:** Yates French <yfrench@rathjelaw.com>
**Subject:** Re: Para. 2 of Nick's Declaration compared to Dkt. 43 Para. 3.

Good evening Jim

Please let me know when you anticipate responding to the below email. And if you are declining to response, please let me know.

We would also like to set up a video call with you next week to discuss your position relative to the discovery that we issued.

Also, when do you plan on producing response of documents and a privilege log?

James

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)


> On Jul 10, 2025, at 1:17 PM, James Vlahakis <jamesv@vlahakislaw.com> wrote:
>
>
> Hello Jim
>
> Para. 3 of Dkt. 43 identifies the following devices:
>
> > a. Apple iPhone (model number MT8U2LL/A, serial number G0NZKEZ7KPFP, current operating system 17.6.1);
> > b. Android phone (model number Pixel 8 Pro, serial number 355522573566332, current operating system 15); and
> > c. Samsung phone (model number mpi1.0 (2021, serial number 1C161FDEE0098B, current operating system AP41.240823.009)
>
> Para. 2 of Nick's declaration identifies the following devices:
>
> > •Android Pixel 6 Pro
> > •iPhone Xs
> > • Android Pixel 8 pro
>
> It appears that the above identified iPhone Xs is the *same* as the iPhone identified in Para. 3(a) of Dkt. 43.
> It also appears that the above identified Android Pixel 8 Pro is the device noted in Para. 3(b) of Dkt. 43.
> However ,is not clear if the above identified Android Pixel 6 Pro is the same devices as the so-called "Samsung phone (model number mpi1.0 (2021, serial number

1C161FDEE0098B, current operating system AP41.240823.009)" that's identified in Para. 3(c) of Dkt. 43.

Please explain if the if the above identified Android Pixel 6 Pro is the same device that's identified in Para. 3(c) of Dkt. 43.

Also, we are confused by Nick's references to an "Android Pixel 4 pro", where Nick' declaration goes on to state "(Only after turning over the aforementioned devices)". Please clarify this statement if Nick intended to say that he did not use the Android Pixel 4 pro on January 24, 2025. From what the declaration says and what you've mentioned previously (see the 6.10.25 transcript at pages 8, 9 and 10), it appears that Nick only started to use the Android Pixel 4 pro AFTER you instructed him to turn over the three devices identified in Para. 3 of Dkt. 43.

Thank you,

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)

WSHB CONFIDENTIALITY NOTICE: This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you receive this transmission in error, please notify the sender by reply email and delete this message and any attachments.