1

2                    IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
3                           EASTERN DIVISION

4    JANE DOE,                              )  Case No. 25 C 4235
                                            )
5                           Plaintiff,      )
                                            )
6                vs.                        )
                                            )
7    NIENHOUSE GROUP, INC., et al.,         )  Chicago, Illinois
                                            )  May 23, 2025
8                           Defendants.     )  9:43 a.m.
                                            )
9

                      TRANSCRIPT OF PROCEEDINGS - MOTION
10            BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
     APPEARANCES:
12

13   For the Plaintiff:      VLAHAKIS LAW GROUP LLC
                             BY:  MR. JAMES C. VLAHAKIS
14                           20 N. Clark Street, Suite 3300
                             Chicago, Illinois 60602
15

16

17

18

19

20   Court Reporter:         CAROLYN R. COX, RPR, F/CRR
                             Official Court Reporter
21                           219 S. Dearborn Street, Suite 2102
                             Chicago, Illinois  60604
22                           (312) 435-5639
                             Carolyn_Cox@ilnd.uscourts.gov
23

24                              * * * * *
25                   PROCEEDINGS REPORTED BY STENOTYPE
        TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

```
 1   APPEARANCES (Cont'd):

 2
     For Defendants
 3   Catherine Nienhouse-Lindsey
     And Robert Nienhouse: LITCHFIELD AND CAVO, LLP
 4                         BY:  MR. PATRICK JOHN RUBERRY
                           303 W. Madison Street, Suite 300
 5                         Chicago, Illinois 60606

 6
     For Defendant
 7   Nick Lindsey:         RATHJE WOODWARD LLC
                           BY:  MR. JAMES W. SCALES
 8                         300 E. Roosevelt Road, Suite 300
                           Wheaton, Illinois 60187
 9

10   For Defendant
     Nienhouse Group, Inc.:WOOD SMITH HENNING & BERMAN, LLP
11                         BY:  MR. JONATHON JAY IBARRA
                           222 S. Riverside Plaza, Suite 640
12                         Chicago, Illinois 60606

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1            (Proceedings heard in open court:)

2                 THE CLERK:  Case 25 C-4235, Doe v. Nienhouse Group.

3                 MR. VLAHAKIS:  Good morning, your Honor.  James

4       Vlahakis, V-L-A-H-A-K-I-S, on behalf of the Jane and John Doe

5       plaintiffs.

6                 MR. RUBERRY:  Good morning, your Honor.  Patrick J.

7       Ruberry appearing on behalf of Robert Nienhouse and

8       Ms. Lindsey.

9                 MR. IBARRA:  Good morning, your Honor.  Jonathan

10      Ibarra on behalf of defendant Nienhouse Group, Inc.

11                MR. SCALES:  Good morning, your Honor.  Jim Scales on

12      behalf of defendant Nick Lindsey.

13                THE COURT:  That means all the defendants are

14      represented, right?

15                MR. SCALES:  Yes, your Honor.

16                MR. IBARRA:  Yes, your Honor.

17                MR. RUBERRY:  Yes, your Honor.

18                THE COURT:  So this kind of seemed like it was --

19      although it may have started out on the rails, it got off very

20      fast because it's not terribly common to get objections to

21      motions for extension of time, and I'm trying to figure out

22      what the mad rush is on the protective order.  It's just kind

23      of a standard protective order.  Okay?  And I get that you want

24      to start serving discovery or you want to make this motion for

25      a forensic inspection of whatever devices the one particular

4

1    defendant had or maybe some other stuff.  What's the -- I'm

2    going to enter the protective order.  I'm going to give people

3    a chance to -- it's a pretty standard protective order, but

4    what's the mad rush?  I mean, why wasn't the motion that you

5    filed a motion saying, I want to start doing discovery?  Don't

6    make us have a Rule 26(f) conference.

7              MR. VLAHAKIS:  The issue we've had is we've been in

8    constant communication with counsel, and I feel there's been

9    putting the head in the sand and not --

10             THE COURT:  What do you want to do?  That's my

11   question.  What you -- what you want to do is you want to get

12   these devices and inspect them, right?

13             MR. VLAHAKIS:  Correct, your Honor.

14             THE COURT:  So objecting to their extension of time to

15   answer doesn't get you any closer to that.  Having a protective

16   order in place doesn't get you any closer to that.  You'll have

17   to do it at some point, but it doesn't get you any closer to

18   that.  What gets you closer to that is filing a motion saying,

19   please make them turn over these devices so we can do an

20   inspection.  But you haven't filed it.

21             MR. VLAHAKIS:  I tried to do it with their

22   cooperation, and at a certain point, they have just not wanted

23   to do anything.  And I feel that --

24             THE COURT:  Okay.  But you were fully capable of

25   objecting to two motions for extension of time and getting the

1     motion for protective order.  Paper doesn't refuse ink.  You

2     could have filed another motion too.

3          MR. VLAHAKIS:  I reached out yesterday and had two

4     telephone conversations with opposing counsel, one of which I

5     thought went very well with the newly appearing counsel for

6     Nienhouse Group.  Mr. Ruberry does have an appearance for

7     Nienhouse Group.  He was not privy to that call.  Those

8     attorneys, we had a discussion of let's hit these bullet

9     points.  I basically started out by saying, I think the judge

10    would appreciate us working through some of these things to

11    have a bullet point of what we can agree to, present that to

12    the Court in a joint status report.  And I come from the

13    old-school approach where if we have to get something done

14    after hours, roll up our sleeves, get it done.  I submitted

15    what I didn't think was a too detailed report.

16         In between that time period, I had a conversation with

17    Mr. Lindsey's counsel that I thought went well about what they

18    agreed to do except --

19         THE COURT:  Agreed to do with respect to what?

20         MR. VLAHAKIS:  To having the forensic examination of

21    the phones.

22         THE COURT:  Okay.

23         MR. VLAHAKIS:  To agree to a protective order, to

24    start to initiate discovery.  And then I'm being told, well,

25    let's get two weeks to kick out to create an ESI protocol.  I

1    don't have time to review your status report you wanted to

2    provide to the Court.  To me, I'm like that's not this

3    difficult.  Let's get it done.  Why drag it out another two

4    weeks.

5         THE COURT:  Now that you know you're not getting

6    cooperation, which you've known for a few days now, when are

7    you planning to file the motion asking me to compel a forensic

8    inspection of whatever devices it is that are at issue at this

9    point?  When?

10        MR. VLAHAKIS:  I can file it as early as next week.

11        THE COURT:  When are you planning to file it?

12        MR. VLAHAKIS:  Tuesday.  I think today, though,

13   opposing counsel will reflect that we have close to an

14   agreement.  We should be able to work this thing out.  When I

15   got pushback last night that nobody wanted to try to put

16   together a simple status report to the Court, that's when I

17   said I have to file what I'm going to file.

18        THE COURT:  Okay.  Who wants to talk on this side?

19        MR. IBARRA:  I'll go first, your Honor.  I'll be very

20   brief.  I mean, I think we are all in agreement that we are

21   going to work on all of these things.  But I just want to push

22   back on the sense that we weren't cooperating as of last night

23   because I woke up to maybe like 30 emails with regards to

24   trying to produce to you a --

25        THE COURT:  Did you say three or did you say 30?

1          MR. IBARRA:  30 emails, your Honor.  I was not looking

2     at my phone after 7:00 p.m. last night when all of these emails

3     were being circulated about tendering to you a status report

4     about getting all of this done.  I think we're fighting over

5     something small.  We're all in agreement that we're going to

6     work towards ESI and the special protocol.  But we can't turn

7     this over so quickly, and I don't see the rush on it.

8          THE COURT:  I'm sorry.  You can't turn what over so

9     quickly?  When you say "this," what was the "this"?  That's my

10    question.

11         MR. IBARRA:  The ESI, the inspection protocol and the

12    confidentiality agreements.

13         THE COURT:  Okay.

14         MR. IBARRA:  We all intend to work towards that.

15         THE COURT:  By confidentiality agreements, you mean

16    the protective order?

17         MR. IBARRA:  Yes, sir.

18         THE COURT:  You're going to walk out of the room with

19    a protective order, literally.  We're going to get to that in a

20    second.

21         What are the devices that you believe need to be

22    inspected?  Aside from your own client's device, I'm talking

23    about the ones that you're concerned that something may have

24    been forwarded or downloaded on?

25         MR. VLAHAKIS:  Yes.  To be clear, one thing I want to

1    make --

2            THE COURT:  No, no.  What you want to do is you want

3    to answer my question first.  Make a note on the other stuff

4    you're going to say later.

5            MR. VLAHAKIS:  Thank you.  Mr. Lindsey's personal

6    devices.  I've been told by his counsel that he has an iPhone

7    and either a Galaxy or a Samsung device, and if he potentially

8    has a laptop, that's what we'd like to see because that's where

9    he probably forwarded the items to.

10           THE COURT:  If he forwarded them, that's what he

11   likely forwarded them to.

12           MR. VLAHAKIS:  And my clarification point was that my

13   client already had a forensic examination of her phone.

14           THE COURT:  I got that from your motion.

15           MR. VLAHAKIS:  Correct.  That's what's weird.  And

16   with your indulgence, they seem to not have understood that

17   until yesterday.

18           THE COURT:  Did you actually send 30 emails to him?

19           MR. VLAHAKIS:  No, absolutely not.  That's ridiculous.

20           THE COURT:  Here's what I know right now.  Okay?

21   Somebody's lying.

22           MR. IBARRA:  I was talking about returns.  In regards

23   to the --

24           THE COURT:  Somebody's lying to me.  I woke up, I got

25   30 emails.  I could do a visual inspection, non-forensic, of

1    your phones and see who is lying to me.

2              MR. IBARRA:  Your Honor, if I represented to the Court

3    that it was --

4              THE COURT:  There's no if.  There's no if.

5              MR. IBARRA:  I'm talking --

6              THE COURT:  When I represented to the Court, yeah,

7    okay.

8              MR. IBARRA:  I meant in regards --

9              THE COURT:  Were you here before when I told the

10   lawyer when you're in a hole, rule number one, stop digging,

11   put the shovel down?

12             MR. IBARRA:  Yes, your Honor.

13             THE COURT:  Don't exaggerate.

14             MR. IBARRA:  I wasn't exaggerating, your Honor.

15             THE COURT:  Here's the big deal.  Here's the big thing

16   on this case.  I get that for a person in your client's

17   situation, Mr. Vlahakis, who, you know, had something on her

18   phone that somebody else looked at, she says, without her

19   authority, I get that that's a very fraught situation.  I would

20   not be surprised, having been in some situations like that

21   myself many years ago before anybody had iPhones that you could

22   do stuff like this on that she's freaking out.  You got to stop

23   freaking out.

24             MR. VLAHAKIS:  Understood.

25             THE COURT:  Part of the message that I want to get

1    across today is everybody needs to calm down.  It's a lawsuit.

2    You all have a job to do.  You're all going to do your job.

3           But here's the other problem is that now you've all

4    gotten my attention.  It's not necessarily a good thing.

5    Because, you know, an average judge around here has about 300

6    civil cases.  I think I got about 275 or something like that.

7    At any given time, there's usually three that are problems.

8    You guys have become one of the three, and usually it takes

9    like six or eight months to get on that list.  I know this one

10   is going to be a problem because I have stuff flying back and

11   forth real fast.

12          Here's the deal.  I'm just going to go ahead and enter

13   the draft protective order that I got.  It's pretty standard.

14   There was a little language added to it from the standard.  I'm

15   just going to go ahead and enter it.  If we need to fix it

16   later, it will be fixed later.  That's going to be in place.

17   That's going to be in place.  I'm going to take the thing that

18   Mr. Vlahakis sent me, I'll accept the changes on it, I'll get

19   it entered today.

20          I'm going to put a deadline on you with coming up with

21   an agreement, not on everything, but just on forensic

22   inspection of the particular defendants' devices.  And the

23   deadline's going to be you have to have an agreement on that

24   ten days from now or I'm going to impose an agreement on you.

25   Probably what I'm going to do is tell you to bring them into

1     court and I'm just going to grab them, and I'm going to hold on

2     to them until you have it figured out.  Don't make me do that

3     because I'm in Zagel's old chambers.  There's actually a safe

4     in there.  I'm going to put them in the safe.  I'm not sure

5     I'll be able to get them out, because the combination works

6     half the time.

7             So ten days means basically -- what's today? -- that

8     basically means -- I'm going to say the 3rd of June.  By the

9     3rd of June, the parties need to submit either a draft order

10    with a protocol for forensic inspection of the defendants'

11    devices at issue and you will figure out what "at issue" means

12    or competing proposals.

13            The way I need it is I need a Word version to my

14    proposed order email address.  If you want to explain your

15    thing, file something along with it and just file that on the

16    docket.  Okay?

17            What's the date that you're looking for for responses

18    to the complaint?  It's June 24th or something like that?

19            MR. SCALES:  That's correct, your Honor.

20            MR. IBARRA:  Yes, your Honor.

21            THE COURT:  That's granted.  You have until June 24th

22    to respond to the complaint.  But I'm going to forego the

23    requirement of Rule 26(f) because we've got you talking about

24    discovery.  We're going to say that today was the 16(b)

25    conference and the 26(f) conference and people can -- you know,

1  you don't have to wait the 14 days or the 21 days or whatever

2  the dates are in Rule 26(f).  That doesn't mean go back to your

3  office and start, you know, floor it and hit the discovery

4  request generator.

5          Okay.  So just to make sure I covered everything.  So

6  I had -- one sec.  I had -- there was a motion for extension of

7  time.  That was docket 22, Melissa.  That's granted.

8          There were two motions to join in that.  That's

9  dockets numbers 26 and 28.  That's granted.

10          The extension of time is the one to the 24th of June

11  to respond to the complaint.

12          The motion for protective order is granted.  That's

13  docket number 20.  I'll get that entered today.

14          Then we've got the deadline in ten days for the other

15  thing.

16          And I'd like to have a phone call with you.  So I'm

17  going to be out most of that week.  I want to have a phone call

18  with you the following week.  I'll be out, but I'll be able to

19  enter whatever protocol you have because I'll be seeing stuff.

20  I just won't be in the building.

21          I'd like to do a phone call with you on the 11th of

22  June, if that's okay, at let's say 8:45 in the morning.  No,

23  I'm sorry.  That's a mistake on my part.  Let's say

24  9:00 o'clock in the morning on the 11th of June.  Does that

25  work okay for everybody?

1          MR. VLAHAKIS:  Yes, your Honor.

2          MR. RUBERRY:  Yes, your Honor.

3          THE COURT:  Anything else we should cover that anybody

4    can think of?

5          MR. SCALES:  I apologize.  We may need another day.

6    We have a deposition in Indiana that day.

7          THE COURT:  How about 8:45, which will get you before

8    most of the cases on the next day, the 12th?  Does that work

9    for everybody?

10         MR. SCALES:  That works for us, your Honor.  Thank

11   you.

12         THE COURT:  Let's go with that.  The call-in number

13   will be in the order.

14         Anything else we should be talking about this morning?

15         MR. VLAHAKIS:  One quick thing, your Honor.  I think

16   there was -- is agreement that I can issue a subpoena to

17   Verizon to obtain data on my client's --

18         THE COURT:  It's okay with me if you do that.  That's

19   why I got rid of the 26(f) thing.

20         MR. VLAHAKIS:  Thank you.  I just wanted to make sure.

21         THE COURT:  Anything else anybody's got?

22         MR. SCALES:  I just have one brief question.  We

23   looked on your website and the magistrate's website.  We didn't

24   see a standard ESI.  You don't have one.

25         THE COURT:  Don't have one.  You either have to wing

1    it or borrow something from somebody else.  I thought about

2    doing that at one point in time, but stuff changes so much over

3    time.  And if you look at my web page, what you see on there is

4    there's a lot of stale stuff on it, so I preferred not to have

5    to constantly update it.  You're on your own.

6              MR. SCALES:  Thank you.

7              THE COURT:  Thanks for coming in.

8              MR. VLAHAKIS:  Thank you, your Honor.

9              MR. RUBERRY:  Thanks, your Honor.

10             MR. IBARRA:  Thank you, your Honor.

11       (Proceedings concluded at 9:56 a.m.)

12       I certify that the foregoing is a correct transcript of the
     record of proceedings in the above-entitled matter.

13
     /s/ Carolyn R. Cox_____          June 13, 2025
14   Carolyn R. Cox, RPR, F/CRR
     Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25