```
                   IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION


  JANE DOE,                              )   Case No. 25 C 4235
                                         )
                        Plaintiff,       )
                                         )
             vs.                         )
                                         )
  NIENHOUSE GROUP, INC., et al.,         )   Chicago, Illinois
                                         )   June 10, 2025
                        Defendants.      )   10:46 a.m.
                                         )

              TRANSCRIPT OF PROCEEDINGS - MOTION
            BEFORE THE HONORABLE MATTHEW F. KENNELLY


  APPEARANCES:


  For the Plaintiff:      VLAHAKIS LAW GROUP LLC
                          BY:  MR. JAMES C. VLAHAKIS
                          20 N. Clark Street, Suite 3300
                          Chicago, Illinois 60602







  Court Reporter:         CAROLYN R. COX, RPR, F/CRR
                          Official Court Reporter
                          219 S. Dearborn Street, Suite 2102
                          Chicago, Illinois  60604
                          (312) 435-5639
                          Carolyn_Cox@ilnd.uscourts.gov


                              *  *  *  *  *
                 PROCEEDINGS REPORTED BY STENOTYPE
      TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

```
 1   APPEARANCES (Cont'd):

 2
     For Defendants
 3   Catherine Nienhouse-Lindsey
     And Robert Nienhouse: LITCHFIELD AND CAVO, LLP
 4                        BY:  MR. PATRICK JOHN RUBERRY
                          303 W. Madison Street, Suite 300
 5                        Chicago, Illinois 60606

 6
     For Defendant
 7   Nick Lindsey:        RATHJE WOODWARD LLC
                          BY:  MR. YATES FRENCH
 8                        300 E. Roosevelt Road, Suite 300
                          Wheaton, Illinois 60187
 9

10   For Defendant
     Nienhouse Group, Inc.:WOOD SMITH HENNING & BERMAN, LLP
11                        BY:  MR. JONATHON JAY IBARRA
                          222 S. Riverside Plaza, Suite 640
12                        Chicago, Illinois 60606

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        (Proceedings heard in open court:)
2            THE CLERK:  Case 25 C 4235, Doe v. Nienhouse Group.
3            THE COURT:  Good morning.
4            MR. VLAHAKIS:  Good morning, your Honor.  James
5    Vlahakis, V-L-A-H-A-K-I-S, on behalf of Jane Doe and John Doe,
6    plaintiffs.
7            MR. RUBERRY:  Good morning, your Honor.  Patrick J.
8    Ruberry appearing on behalf of Catherine Nienhouse-Lindsey and
9    Robert Nienhouse.
10           MR. FRENCH:  Good morning.  Yates French on behalf of
11   Nick Lindsey, defendant.
12           MR. IBARRA:  Good morning, your Honor.  Jonathon
13   Ibarra on behalf of defendant Nienhouse Group --
14           THE COURT:  Apologies for making you wait.
15           So I want to make sure I'm understanding this
16   correctly.  So give me just a second here.  I thought I brought
17   out everything I needed, but there's one I have to pull up, so
18   bear with me one second.
19           There we go.
20           Okay.  So on the question of forensic inspection of
21   devices, and I'm using that -- a broad term -- a vague term on
22   purpose, if I'm understanding the redlining right, and this is
23   on docket number 35-1, where there's some -- where there's a
24   part that's redlined, it's just one issue, it looks like.  It
25   just has to do with whether it's the iPhone, the Android phone,

1  and the Samsung phone, or whether it's that plus other things.
2          MR. VLAHAKIS:  That is correct, your Honor.
3          THE COURT:  There's no issue about timing of when this
4  happens?
5          MR. VLAHAKIS:  No, your Honor.
6          THE COURT:  Okay.
7          MR. FRENCH:  Your Honor, may I qualify that?
8          THE COURT:  Yeah.
9          MR. FRENCH:  Yates French on behalf of Nick Lindsey.
10 I generally agree.
11         What I would say is while the forensic protocols have
12 largely been agreed to, setting aside the custodial devices
13 that we use, the scope of the collections and productions is
14 still open.
15         I --
16         THE COURT:  What do you mean by that?
17         MR. FRENCH:  I mean I've been served with 104
18 discovery requests, your Honor --
19         THE COURT:  I'm just talking about the forensic
20 inspection.
21         MR. FRENCH:  In that case, I agree with opposing
22 counsel.
23         THE COURT:  Okay.  So it's not a question of when it's
24 going to happen, it's not a question of the phones; it's a
25 question of other devices.  And the reason that you've got this

1  paragraph in here, 3B, which is the redlined paragraph that has
2  all these X, X, Xs, and then is -- you don't know what other
3  devices there are, I take it?
4          MR. VLAHAKIS:  That's correct, your Honor.
5          Technically speaking, however, paragraph 4 might be
6  changed, depending on if you grant the relief we want, which
7  is --
8          THE COURT:  Well, the 10th is today.  That's going to
9  be kind of hard to do, so --
10         MR. VLAHAKIS:  Yes.  I just want to be -- make sure
11 that's clear.
12         THE COURT:  Yeah.
13         So how are you -- how are you proposing -- how are or
14 were you proposing to figure out what other devices would be
15 included besides the three phones?
16         MR. VLAHAKIS:  That is up to the defendants.
17         THE COURT:  No, it's actually up to me.
18         MR. VLAHAKIS:  Oh, correct.
19         THE COURT:  Just saying.
20         MR. VLAHAKIS:  They have not identified potentially
21 what that universe is in D.
22         THE COURT:  That is my question. How are you figuring
23 on -- how are you figuring on planning it out?  Have you served
24 a discovery request?  Have you asked or -- what have you done?
25         MR. VLAHAKIS:  Well, because -- paragraphs 3A, B,

1   and C, they volunteered to identify that information pursuant
2   to the protocol we were putting together. I had asked for the
3   identification of the other items not knowing exactly what he
4   had.
5           THE COURT: Yep.
6           MR. VLAHAKIS: I do believe he may have a MacBook or a
7   Chromebook.
8           THE COURT: You asked for -- there's an "and" in there
9   somewhere, so let's get to the "and."
10          MR. VLAHAKIS: And they did not identify those
11  items --
12          THE COURT: So now we're back to my question. Then
13  how were you proposing to figure out what else there is?
14          MR. VLAHAKIS: They know, defense counsel knows --
15          THE COURT: Is it a discovery request? Is it a
16  sharply worded letter? Is it a ask and meet -- tell them to
17  tell you? Is what -- what is it?
18          How are you going to find out? They're not telling
19  you right now, so how are you going to find out? What are you
20  going to do?
21          MR. VLAHAKIS: By asking this Court because I thought,
22  pursuant to --
23          THE COURT: Okay. So you're asking me to tell them to
24  tell -- to identify any devices --
25          MR. VLAHAKIS: Yes, because I thought the last time we

1 were in --

2 THE COURT: From what period of time? From when to
3 when? Devices that he had or has had from -- what's the start
4 date and what's the end date?

5 MR. VLAHAKIS: The date that we're seeking the
6 information from would be January 27th. So if he had that item
7 --

8 THE COURT: January 27th of this year?

9 MR. VLAHAKIS: Of this year, correct.

10 THE COURT: Okay.

11 MR. VLAHAKIS: That he may have done something with
12 those devices relative to forwarding, saving, transmitting the
13 information.

14 THE COURT: Okay. I have a second question. I'm
15 going to ask everybody, but you can answer first.

16 Apologies for my ignorance here. When somebody does a
17 forensic inspection of, let's say, an iPhone, if they -- file
18 has been -- if a file has downloaded on the iPhone, let's say a
19 picture, and then sent somewhere, does the forensic inspection
20 tell you that?

21 MR. VLAHAKIS: Not necessarily, and here's why if
22 you'd like me to explain why.

23 There are activities logs in an iPhone that can get
24 overwritten over time. What had happened in this case is when
25 this event took place on January 27 --

1   THE COURT: If this is going to go into a discussion
2   of the defendants or the Princes of Darkness, let's skip over
3   that, and let's just get to the -- let's just get to the answer
4   of my question.
5   MR. VLAHAKIS: It's not.
6   THE COURT: Okay.
7   MR. VLAHAKIS: I would like to be -- have this
8   information secured as soon as possible to prevent anything
9   from being overwritten pursuant to either software updates --
10  THE COURT: Okay. So the concern is -- so the answer
11  to my question, forensic inspection, yes, theoretically does
12  identify whether a file has been sent from this device to some
13  other device, but it's possible that the log of that could be
14  overwritten over time.
15  MR. VLAHAKIS: Correct. The longer we wait, the
16  bigger chance that information -- vital information is lost.
17  THE COURT: Do you agree or disagree?
18  MR. FRENCH: Yes.
19  THE COURT: Okay. That's a fair answer.
20  MR. FRENCH: And it turns out -- it turns on which
21  devices we're referring to. And "devices" is a broad and vague
22  word, your Honor. It's easy to refer to a MacBook. Does it
23  include cloud servers for Gmail, right, his Facebook account?
24  You can get into complexity and breadth very quickly, which is
25  why my position is let's start with the mobile devices.

```
1                Starting with --
2                THE COURT:  My guess is is that somebody sent a
3    subpoena to Google asking for Gmail logs.  There's this little
4    thing called the Stored Communications Act, which would
5    probably get in the way.
6                So we're talking about -- don't tell me "devices" is a
7    vague term.  We're talking about devices that an individual
8    defendant had at some point in time.
9                MR. FRENCH:  Let's talk about his mobile devices.
10               THE COURT:  Yeah.
11               MR. FRENCH:  An iPhone and a Samsung device, both of
12   which were in his possession at the time -- the relevant time
13   period.  Those have been secured pre-litigation.  They're
14   sitting in my office.  They're turned off.  They're not going
15   to have automatic status updates.
16               I disagree that the passage of time is likely to lead
17   to spoliation or destruction of evidence for those devices.
18               With respect to other devices --
19               THE COURT:  I'm not too -- so is it all three of the
20   phones or just two?  You said two, I thought.
21               MR. FRENCH:  The third phone, my understanding --
22               THE COURT:  Which is the third phone?
23               MR. FRENCH:  I believe it's a Samsung, your Honor.
24               THE COURT:  Okay.
25               MR. FRENCH:  I can -- I'm a hundred --
```

1         THE COURT: You were about to say your understanding
2 is what?
3         MR. FRENCH: I'm a hundred percent buttoned up on the
4 iPhone and the Samsung phone he had at the time of the alleged
5 conduct.
6         My understanding is the third mobile device is a
7 Samsung phone, which was acquired afterwards in part so that he
8 would have something to use while his other devices sat in my
9 office. And I have -- I'm able to confirm that with my client.
10         But with the two most key devices, they're turned off.
11 They're sitting in a locked drawer in my office.
12         That is not the case for his personal iPad, his
13 MacBook.
14         THE COURT: All right. So who on the defense side
15 would like to give me your position as to why I should not
16 include the redlined paragraph 3D?
17         MR. FRENCH: I'm happy to give you my position on
18 behalf of Mr. Lindsey, your Honor.
19         THE COURT: Go ahead.
20         MR. FRENCH: It goes towards proportionality, timing,
21 and scope, right?
22         The mobile devices, in my opinion, are clearly
23 relevant. They're the low-hanging fruit. Let's begin that.
24         In the interim, like I said, I have 104 discovery
25 responses -- requests to respond to. I'm going to object to

1   some of them.  I think it makes sense to let the
2   meet-and-confer process play out with that.
3          This -- I don't want to get ahead of myself, I'm
4   cautious about the next thing I'm going to say, but it's not
5   clear at all to me that this case is likely to stay in federal
6   court.  I have a responsive pleading coming up on June 24th.  I
7   anticipate filing a Rule 12(b)(6) motion on certainly some of
8   the federal causes of action.  I don't know yet whether I will
9   also file a motion to dismiss for lack of subject matter
10  jurisdiction if I --
11         THE COURT:  Do you believe you might?
12         MR. FRENCH:  If all --
13         THE COURT:  What would the subject matter jurisdiction
14  motion be?  There's no more federal claims.  Just send it over
15  to -- just -- okay.  There's not an issue about whether there's
16  -- whether there's federal question now.  It's a question about
17  whether the federal case -- claims stay in the case.
18         MR. FRENCH:  Precisely.
19         THE COURT:  Yeah.  Okay.
20         MR. FRENCH:  But I believe it makes sense --
21         THE COURT:  But, I mean -- look, here's the deal.
22  Whether the case is here or at the other end of Dearborn
23  Street, you're going to have the same question.  There's going
24  to be a case.  There's going to be discovery requests.  There's
25  going to be something.  So I'm not too worried about that.

1                So why don't you get to your next point.

2                MR. FRENCH:  In my opinion, discovery works best when

3    there's an order of operations dictating the sequence.

4                Let's start with the low hanging fruit.  Let's see

5    what's on the phones.  Let's see if it gives any good-faith

6    basis to identify other devices, starting at the finish line

7    and saying every device in his possession of any type has to be

8    forensically examined.  It's costly.  It's burdensome.

9                THE COURT:  Okay.  That's not a bad point.  So but why

10   shouldn't I tell you that you've got to identify everything

11   he's had from January the 27th of 2025 to now?

12               MR. FRENCH:  I don't object to that, your Honor.

13               THE COURT:  How quick can you do it?

14               MR. FRENCH:  I don't know, but I anticipate quickly;

15   within a -- certainly less than a week.

16               THE COURT:  Something like that.  Yeah.  Okay.

17               So I think what I'm inclined to do is to -- as to --

18   is to take D out of paragraph 3 for now; in other words, not

19   require the immediate forensic inspection but have another

20   paragraph added to this which would require Mr. Lindsey to

21   identify within seven days any other -- you can figure out how

22   to divide devices so somebody doesn't come back -- or how to

23   define devices so somebody doesn't come back and say it's vague

24   any other devices that Mr. Lindsey has had or has had access to

25   to get those identified within the next, you know, seven to ten

1  days.  And then we can -- and then, you know, the next step is
2  going to be getting control of them.  Because the difference,
3  of course, between those devices and the two that are sitting
4  in your office is those two are sitting in your office and the
5  others are not and we don't know what's going on with them.
6          So I think that's what I'd like to do.  So just
7  rewrite it that way.
8          MR. FRENCH:  Thank you.
9          THE COURT:  And then change the -- obviously, you're
10 not going to deliver the stuff -- the three phones today, make
11 it, you know, a couple of days from now or something like that.
12 Get me a revised order, send a Word version to my proposed
13 order email address, and I'll get it entered today, if you get
14 me one today.
15         And it didn't look like there were any real issues
16 that I had to adjudicate on the ESI thing; am I right?
17         MR. FRENCH:  That's correct, your Honor.
18         THE COURT:  We had the protocols all in place?
19         So send -- so what you're going to send me then is
20 you're going to send me two orders in Word.  You don't have to
21 put Judge Weisman's name on it.  I usually X that off anyway.
22 You're attributing something to him, but he's not signed it, so
23 --
24         MR. FRENCH:  Sure.
25         THE COURT:  So a revised version of the forensic

1 inspection order that includes -- that doesn't include the
2 not-yet-known devices as being inspected immediately but
3 requires Mr. Lindsey to identify them, things he's had access
4 to.  So, in other words, not just owned; if he used somebody
5 else's computer, he has to tell us that too.
6      And you're going to get me that today.
7      So what else do we need to talk about, if anything?
8      MR. VLAHAKIS:  And to be clear, I was -- devices he
9 may have access to, not just --
10      THE COURT:  Devices he had access to.
11      MR. VLAHAKIS:  Correct.
12      THE COURT:  Yeah.
13      MR. VLAHAKIS:  And would you want that within seven
14 days?
15      THE COUR:  Let's say 10.  It's like a week from
16 Friday.
17      MR. FRENCH:  I -- your Honor, may I speak?
18      THE COURT:  Yeah.
19      MR. FRENCH:  On the record, I'd just like to -- I
20 assume that opposing counsel and I will be able to reasonably
21 figure this out.  For example, I don't plan on asking if he was
22 playing his PlayStation at the time, right?
23      THE COURT:  We now know from Sony Interactive that,
24 apparently, we can find out what he was doing and what his
25 score was, probably.

1           MR. FRENCH: Certainly. I've had MacBook, work
2    computer, personal computer. I get that. I'm sure we'll be
3    able to figure that out.
4           THE COURT: What I'm talking about are phones,
5    handhelds, tablets, laptops, desktops, mainframes.
6           I'm not talking about the Google iCloud server, okay?
7           MR. FRENCH: Thank you, your Honor.
8           THE COURT: He doesn't have that. It's sitting in a
9    warehouse out in California somewhere.
10          So what else do we need to talk about today?
11          MR. VLAHAKIS: The only question I've got in terms of
12   timing, because of the investigation that took place, these
13   items should have been identified, and there should have been a
14   known universe back in January, so I don't know why there needs
15   to be seven days to identify this. That's just more time to --
16          THE COURT: Just to make sure that people don't screw
17   it up.
18          MR. VLAHAKIS: Fair enough.
19          THE COURT: Okay? That's why. You try to do things
20   too fast, sometimes you screw them up.
21          MR. VLAHAKIS: Understood.
22          THE COURT: So he's going to have to go back to his
23   client, and he's going say, okay, give us everything. It's
24   like, it's got to be really anything. Think about, did you,
25   you know, use somebody else's computer at the office, or

```
 1   something like that?
 2              So there you go.  That's why.
 3              MR. VLAHAKIS:  Makes sense.
 4              THE COURT:  What else?
 5              MR. IBARRA:  Your Honor, should we keep the June 24
 6   date, answer to the complaint, in place?
 7              THE COURT:  Yeah, we should.
 8              And -- or -- and then I'm going to -- do we have
 9   another status date, or was this the status date?
10              MR. RUBERRY:  We have one Thursday.  You moved it, I
11   think.
12              THE COURT:  That's vacated.  We don't need to have
13   two.
14              All right.  You said June 24th --
15              MR. IBARRA:  June 24th is the current answer to the
16   complaint.
17              THE COURT:  So I'm going to set you for a phone status
18   a week after that.  So let's say July the 1st, if it's okay, at
19   10 after 9:00 by phone.
20              And if any motions to dismiss or anything have gotten
21   filed, we'll talk about those then.
22              MR. IBARRA:  Did you say July 9th?
23              THE COURT:  1st.
24              MR. IBARRA:  1st.
25              Your Honor, I won't be here.  Can I -- another
```

```
1    attorney that's --
2            THE COURT:  Nobody will be here.  It's a phone call.
3    But it's okay for somebody else to do the phone call.
4            I'll be here, but you won't be here.
5            MR. VLAHAKIS:  And so there's no dispute here, how
6    soon can you get the phones to the examiner?
7            MR. FRENCH:  The two in my possession?
8            MR. VLAHAKIS:  Which one is not --
9            THE COURT:  So make it the 12th.
10           MR. FRENCH:  Right.  I'm glad I asked.
11           So two in your possession, which one is not?  Because
12   the --
13           THE COURT:  It's the Samsung.  He told me that a
14   second ago.  He's got the Apple and the -- he's got the iPhone
15   and the --
16           MR. VLAHAKIS:  Okay.  3B refers to an Android, not a
17   Samsung.
18           MR. IBARRA:  I may have misspoken.  My apologies if I
19   did.
20           So is the Android the one that you don't have?
21           THE COURT:  Okay.  I tell you what.  You are having
22   this conversation on somebody else's time.  Bye.
23           MR. VLAHAKIS:  Thank you, your Honor.
24           MR. FRENCH:  Thank you, Judge.
25       (Proceedings concluded at 11:09 a.m.)
```

1    I certify that the foregoing is a correct transcript of
the record of proceedings in the above-entitled matter.
2
   /s/ *Carolyn R. Cox*                    June 12, 2025
3  Carolyn R. Cox, RPR, F/CRR
   Official Court Reporter